UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RIVERKEEPER, INC.,

                          Plaintiff,

v.                                                     1:20-CV-1025
                                                       (GTS/CFH)
COEYMANS RECYCLING CENTER, LLC;
and COEYMANS RECYCLING CENTER II, LLC,

                          Defendants.
_____

APPEARANCES:                          OF COUNSEL:

SUPER LAW GROUP, LLP
  Counsel for Plaintiff              EDAN ROTENBERG, ESQ.
110 Wall Street                      JULIA KATHRYN MUENCH, ESQ.
New York, NY 10005

YOUNG SOMMER, LLC
  Counsel for Defendants             JOSEPH F. CASTIGLIONE, ESQ.
Executive Woods
Five Palisades Drive
Albany, NY 12205

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this citizen's suit under the Clean Water Act filed by

Riverkeeper, Inc. ("Plaintiff") against Coeymans Recycling Center, LLC, and Coeymans

Recycling Center II, LLC ("Defendants"), are the following three motions: (1) Defendants'

motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to Fed. R.

Civ. P. 12(b)(1) and, in the alternative, motion for judgment on the pleadings pursuant to Fed. R.

Civ. P. 12(c); (2) Plaintiff's cross-motion for partial summary judgment on one of its eight

claims under Fed. R. Civ. P. 56; and (3) Plaintiff's motion to strike portions of an affirmation submitted in support of Defendants' motion to dismiss and/or for judgment on the pleadings, pursuant to Local Rule 7.1 of the District's Local Rules of Practice and Fed. R. Civ. P. 56(c)(4). (Dkt. Nos. 47, 49, 50.)  For the reasons set forth below, Defendants' motion is denied, Plaintiff's cross-motion for partial summary judgment is denied, and Plaintiff's motion to strike is denied.

## I.   RELEVANT BACKGROUND

### A.   Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint, filed on September 1, 2020, alleges that Defendants discharged polluted industrial stormwater from the industrial park they own and operate in the Village of Ravena and the Town of Coeymans into Coeymans Creek in violation of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*. (the "Clean Water Act" or "CWA") and the New York State Department of Environmental Conservation ("DEC") State Pollutant Discharge Elimination System ("SPDES") Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity ("General Permit").  (Dkt. No. 1.)

More specifically, Plaintiff alleges that Defendant' wrongdoing came in five forms. First, Plaintiff alleges that, although Defendants sought coverage under the General Permit to discharge polluted industrial stormwater at certain locations, they discharged polluted industrial stormwater at other locations (not allowed by the General Permit).  (*Id.*)  Second, Plaintiff alleges that Defendants also failed to implement an adequate Stormwater Pollution Prevention Plan ("SWPPP") required by the joint New York State and federal permitting scheme, including Stormwater Pollution Control Measures required by the General Permit.  (*Id.*)  Third, Plaintiff alleges that Defendants failed to comply with the monitoring, recordkeeping, and reporting

requirements of the permitting scheme, including providing to Plaintiff, upon request, a copy of the SWPPP in effect on May 12, 2020. (*Id.*) Fourth, Plaintiff alleges that Defendants failed to conduct adequate site inspections and take appropriate corrective actions required by the General Permit. (*Id.*) Fifth and finally, Plaintiff alleges Defendant also failed to comply with the terms of the SPDES General Permit for Stormwater Discharges from Construction Activity (the "Construction Permit") by failing to implement adequate control measures. (*Id.*) Attached to Plaintiff's 43-page Complaint are Plaintiff's 20-page Notice of Violation & Intent to Sue Letter ("Notice Letter"), a 10-page table of precipitation data, and a 13-page document entitled "Physiochemical Characteristics of Runoff and Surface Waters of Lower Coeymans Creek," which was created by Jeremy Dietrich (the "Third-Party Report"). (*Id.*)

Based on these factual allegations, Plaintiff's Complaint asserts eight claims: (1) a claim of unlawful discharge of pollutants in violation of 33 U.S.C. §§ 1311 and 1342; (2) a claim of failure to implement the best available and best conventional treatment technologies under the General Permit, in violation of 33 U.S.C. §§ 1311 and 1342; (3) a claim of failure to develop, implement, and make available an adequate storm water pollution prevention plan in accordance with the General Permit, in violation of 33 U.S.C. §§ 1311 and 1342; (4) a claim of failure to conduct routine site inspections and comply with general monitoring, recordkeeping, and reporting requirements under the General Permit, in violation of 33 U.S.C. § 1311 and 1342; (5) a claim of failure to implement the best available and best conventional treatment technologies under the Construction Permit, in violation of 33 U.S.C. §§ 1311 and 1342; (6) a claim of failure to develop, implement, and make available an adequate storm water pollution prevention plan in accordance with the Construction Permit, in violation of 33 U.S.C. §§ 1311 and 1342; (7) a claim

3

of violations of water quality standards, under 33 U.S.C. §§ 1311 and 1342; and (8) a claim of

violations of effluent standard of limitation, under 33 U.S.C. §§ 1311 and 1342, by failing to

make a copy of the SWPPP available to the public within 14 days of receipt of a written request

for it.  (*Id.*)

 Familiarity with Plaintiff's claims, and the factual allegations supporting them, is

assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

**B.** **Undisputed Material Facts on Plaintiff's Cross-Motion for Partial Summary Judgment**

 Generally, the following facts were asserted by Plaintiff in support of its cross-motion for

partial summary judgment and either expressly admitted or denied without an adequate citation

to admissible record evidence by Defendants in their response thereto.  (*Compare* Dkt. No. 48,

Attach. 2 *with* Dkt. No. 54, Attach. 3.)

 1. Since at least May 12, 2020, Defendants have been authorized by the New York

State DEC to discharge stormwater associated with industrial activities from certain outfalls at

Defendants' industrial park ("Industrial Park") in accordance with the terms of the DEC's

SPDES General Permit, Permit No. GP-0-17-004.

 2. Authorization to discharge was sought and obtained under SPDES permit ID

NYR00F372.  The authorized permittee is Coeymans Recycling Center, LLC.

 3. Part III.C.2. of the General Permit states the following about a permittee's

obligation to make a copy of its stormwater pollution prevention plan ("SWPPP") publicly

available:

> The owner or operator must make a copy of the SWPPP available to the public
> within fourteen (14) days of receipt of a written request. Copying of documents
> will be done at the requester's expense. (Note: A facility may withhold justifiable

4

portions of the SWPPP from public review that contain trade secrets, confidential commercial information or critical infrastructure information in accordance with 6 NYCRR 616.7 and 750-1.22).

4.      Plaintiff's Notice Letter was dated May 12, 2020, and stated as follows: "Riverkeeper requests CRC to send a copy of its SWPPP to the undersigned attorney."  The footnote to this sentence reads, "Note that under Part III.C.2 of the General Permit, the owner or operator of a facility 'must make a copy of the SWPPP available to the public within 14 days of receipt of a written request.'"

5.      Defendants received Plaintiff's Notice Letter on or about May 15, 2020.[1]

6.      Defendants did not provide to Plaintiff a copy of the SWPPP within 14 days of receiving Plaintiff's Notice Letter.

7.      Defendants did not provide a copy of a SWPPP to Plaintiff until December 11, 2020, when they uploaded the July 2020 SWPPP to the Court's CM/ECF system as an attachment to Defendants' Answer.

8.      The July 2020 SWPPP provided on December 11, 2020, was a "native electronic document," meaning an electronic document stored in the electric format in which it was originally created by a word-processing program.

9.      The July 2020 SWPPP had been prepared initially on August 19, 2013, and then

---

[1]      Defendants assert that the Notice Letter did not comply with the General Permit because it (purportedly) requested that a hard copy of the SWPPP be mailed without accompanying that request with reimbursement.  Defendants also assert that Plaintiff did not state in its May 2020 Notice Letter the fact that Defendants had violated the General Permit by not providing to Plaintiff a copy of its SWPPP in effect at the time (but merely requesting that SWPPP).  Finally, Defendants assert that Plaintiff failed to issue a new Notice Letter regarding the failure to provide a copy of the SWPPP in effect on May 12, 2020, at least 60 days before the filing of the Complaint on September 1, 2020.

revised multiple times, including by July 8, 2020.

10.     At the time Defendants received Plaintiff's Notice Letter on or about May 15,

2020, Defendants had a SWPPP in effect.[2]

11.     It appears that, at the time Plaintiff's Notice Letter was received, the SWPPP was

available in the form of an electronic document.[3]

12.     In their motion, Defendants refer to the most-current version of their SWPPP as

the "September 2021 SWPPP."  Defendants did not provide a copy of the September 2021

SWPPP to Plaintiff until they attached a copy to their motion to dismiss on February 25,

2022.[4]

### C.     Parties' Briefing on Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and/or for Judgment on the Pleadings

Generally, in support of their motion to dismiss for lack of subject-matter jurisdiction

(specifically, lack of standing), Defendants assert two arguments: (1) Plaintiff's Complaint

alleges facts plausibly suggesting only a conjectural or hypothetical injury, because (a) when

Plaintiff filed its Complaint on September 1, 2020, the SWPPP required by the General Permit

was the July 2020 SWPPP, and (b) the Complaint acknowledges that Plaintiff failed to review

---

[2]     This SWPPP was the November 2018 SWPPP.  (Dkt. No. 48, Attach. 1, at 10-11, 26; Dkt. No. 54, at 9, 29-30.)

[3]     Defendant's response to this assertion is both immaterial and factually unsupported. (Dkt. 54, Attach. 3, ¶ 11.)  Plaintiff's Notice Letter stated merely, "Riverkeeper requests CRC to *send* a copy of its SWPPP to the undersigned attorney."  (Dkt. No. 1, at 63 [emphasis added].) The Notice Letter contained not only the attorneys' mailing address but their telephone number, fax number and website (where their email addresses could be found).  (*Id*. at 45, 64.)

[4]     Defendants assert that Plaintiff never expressly requested a copy of "the September 2021 SWPPP."

the July 2020 SWPPP before filing its Complaint, ignoring the fact that the alleged violations had therefore ceased; and (2) all of Plaintiff's eight claims are moot and not likely to reoccur because (a) before filing them, Plaintiff had not reviewed the July 2020 SWPPP, which Defendants instituted after receiving Plaintiff's Notice Letter of May 12, 2020, and (b) as to Plaintiff's Eighth Claim, Plaintiff's request for the SWPPP then-in effect was defective in that it failed to contain advanced payment, or an offer to pay, for the production of the SWPPP, and in any event the SWPPP was subsequently provided with Defendants' Answer.  (*See generally* Dkt. No. 47, Attach. 1, at Part I [Defs.' Memo. of Law].)

        In support of their alternative motion for judgment on the pleadings, Defendants assert three arguments: (1) Plaintiff cannot allege facts plausibly suggesting a claim for relief because it did not review the July 2020 SWPPP before it filed its Complaint on September 1, 2020, and therefore could not know whether the alleged violations were ongoing at the time; (2) the allegations in Plaintiff's Complaint were made in bad faith because Plaintiff's counsel has acknowledged Plaintiff's failure to review the July 2020 SWPPP before filing the Complaint, and because Plaintiff has filed a separate lawsuit alleging that the pollution in Coeymans Creek alleged in this lawsuit was caused by another party located within the geographic area of the Industrial Park (i.e., TCI of NY, LLC); and (3) as to Plaintiff's Eighth Claim, Plaintiff's request for a SWPPP was defective in that it failed to contain advanced payment, or an offer to pay, for the production of the SWPPP.  (*See generally* Dkt. No. 47, Attach. 1, at Part II [Defs.' Memo. of Law].)

        Generally, in response to Defendants' motion to dismiss for lack of subject-matter jurisdiction, Plaintiff essentially asserts two arguments: (1) Defendants' motion to dismiss for

lack of subject-matter jurisdiction is actually a motion for summary judgment, which asks this Court to decide the merits of this case, and which should be denied as premature and in any event is without merit (especially given the Third Party Report attached to the Complaint); (2) even if this motion were truly one for lack of subject-matter jurisdiction, it should be denied because (a) Plaintiff has sufficiently alleged a right to relief arising under federal law, (b) Plaintiff has sufficiently alleged that it possesses constitutional standing to bring its claims, (c) Plaintiff has sufficiently supported it claims that Defendants are violating the Clean Water Act; and (d) Plaintiff made its allegations in good faith, after a reasonable inquiry.  (*See generally* Dkt. No. 48, Attach. 1 [Plf.'s Opp'n Memo. of Law].)  Generally, in response to Defendants' alternative motion for judgment on the pleadings, Plaintiff essentially asserts two arguments: (1) Defendants' motion for judgment on the pleadings is actually a motion for summary judgment, which (again) asks this Court to decide the merits of this case, and should be denied as premature and in any event as without merit (especially given the Third Party Report attached to the Complaint); and (2) even if this motion were truly a motion for judgment on the pleadings, the Court should deny it because the Complaint's factual allegations—including those contained in the Third Party Report—plausibly suggest claims entitling them to relief.  (*See generally* Dkt. No. 48, Attach. 1 [Plf.'s Opp'n Memo. of Law].)

Generally, in their reply, Defendants assert five arguments: (1) their motion to dismiss for lack of subject-matter jurisdiction does not ask the Court to render a decision on the merits, but rather argues the Court cannot rule in Plaintiff's favor because Plaintiff has not suffered actual harm; (2) Plaintiff's Complaint does not allege facts but legal conclusions; (3) the Third-Party Report attached to, and referenced in, Plaintiff's Complaint is impermissible hearsay, which the

Court should ignore; (4) Plaintiff has raised new issues about salt storage, a potential settlement agreement, Discharge Monitoring Reports, Defendants' 2021 SWPPP removing 11.8 acres from coverage, and general questions from Plaintiff's consultant in the Declarations of Edan Rotenberg (Dkt. No. 48, Attach. 3), Christina Falk (Dkt. No. 48, Attach. 4), and Barbara Heinzen (Dkt. No. 48, Attach. 5), for which new Notice of Intent to Sue Letters should have been issued to meet the 60-day notice requirement of the General Permit; and (5) the new issue regarding salt storage is precluded by the Clean Water Act because the EPA previously took administrative action on it.  (*See generally* Dkt. No. 54 [Defs.' Reply Memo. of Law].)

Generally, in its sur-reply, filed with prior leave of the Court, Plaintiff asserts three arguments: (1) the EPA's prior administrative enforcement action regarding salt storage does not bar Plaintiff's claim for injunctive relief; (2) Plaintiff has continued to obtain new evidence about the Clean Water Act violations regarding salt storage on Defendants' property, and is not raising new issues; and (3) Plaintiff gave Defendants adequate notice of their ongoing violations.  (Dkt. No. 58.)

### D.  Parties' Briefing on Plaintiff's Cross-Motion for Summary Judgment

Generally, in its cross-motion for summary judgment, Plaintiff argues that it should be granted judgment as a matter of law on its Eighth Claim for two reasons: (1) Defendants failed to make a copy of the controlling SWPPP available within 14 days of Plaintiff's request for it in its Notice Letter of May 12, 2020, a violation of the General Permit, which contains no requirement that a public request include an explicit offer to pay costs (especially up-front costs); and (2) Defendants have no defense to this violation of the General Permit, because they could have fulfilled their duty to provide the SWPPP three ways but did not do so (i.e., email it as an

electronic attachment at no cost to themselves, make it available for copying by Plaintiff at a specific time and place, or mail a copy with an invoice for costs).  (Dkt. No. 48, Attach. 1.)

Generally, in their reply, Defendants assert three arguments: (1) Plaintiff's request for the SWPPP in effect on May 12, 2020, was null and void because it did not arrange to pay for the production of the document before, or at the time of, requesting it; (2) the SWPPP in effect on May 12, 2020 (which was the November 2018 SWPPP) was publicly available from the New York State DEC (and which indeed had already been obtained by Plaintiff when it made its request on May 12, 2020); and (3) Plaintiff failed to provide the required 60-day notice of Defendants' alleged failure to provide the SWPPP in effect on May 12, 2020, in violation of both the General Permit and 33 U.S.C. § 1365.  (Dkt. No. 54.)

> **E.** **Parties' Briefing on Plaintiff's Motion to Strike**

Generally, in its motion to strike portions of Defendants' "Castiglione Affirmation In Support of Defendant's Motion to Dismiss" (Dkt. No. 47, Attach. 2), Plaintiff asserts two arguments: (1) the Castiglione Affirmation contains Attorney Castiglione's opinion on the sufficiency of Defendants' July 2020 SWPPP without setting forth his qualifications to render such an opinion, in violation of Fed. R. Civ. P. 56(c)(4); and (2) portions of Attorney Castiglione Affirmation contain legal arguments and conclusions in violation of Local Rule 7.1(b)(2) of the District's Local Rules of Practice, and improperly exceed the 25-page limit set forth in Local Rule 7.1(b)(1) when they are considered together with Defendants' memorandum of law.  (Dkt. No. 49, Attach. 1.)

In their opposition to this motion, Defendants assert two arguments: (1) the Castiglione Affirmation does not contain opinions on the sufficiency of Defendants' SWPPP, but rather

quotes from and summaries of the relevant documents; and (2) the Castiglione Affirmation

contains only "factual arguments."  (Dkt. No. 54, Attach. 4.)

## II.      RELEVANT LEGAL STANDARDS

### A.      Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen*

*Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be

properly dismissed for lack of subject-matter jurisdiction where a district court lacks

constitutional or statutory power to adjudicate it.  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.

2000).  A district court may look to evidence outside of the pleadings when resolving a motion to

dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.  The plaintiff bears

the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  *Id.* (citing

*Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a court evaluates a motion to dismiss

for lack of subject-matter jurisdiction, all ambiguities must be resolved, and inferences drawn in

favor of the plaintiff.  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir.

2005) (citing *Makarova*, 201 F.3d at 113).

Where a defendant proffers evidence beyond the pleadings in challenging subject-matter

jurisdiction, that plaintiff is said to have made a fact-based challenge.  *Carter v. HealthPort*

*Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).  "A court reviewing a Rule 12(b)(1) motion . . . can

look to evidence outside the pleadings, including affidavits, to resolve disputed *jurisdictional*

facts*." Glob. Art Exhibitions, Inc. v. Kuhn & Bulow Italia Versicherungsmakler GmbH*,  20-CV-

1395, 2022 WL 2159823, at *3 (S.D.N.Y. June 15, 2022) (emphasis added) (citing *Tandon v.*

*Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 [2d Cir. 2014]).

**B.      Legal Standard Governing Motions for Judgment on the Pleadings**

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).  In evaluating such motions, district courts must accept all allegations in the complaint as true and draw all reasonable inferences in the Plaintiff's favor.  *Patel*, 259 F.3d at 126 (citing *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 [2d Cir. 1998]).

For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[5]

---

[5]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the

### C.     Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[6]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

---

complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[6]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[7] Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[7]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[8]

> ### D.    Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Memorandum-Decision and Order, which (again) is intended primarily for review by the parties.  (*See generally* Dkt. No. 47 [Defs.' Memo. of Law]; Dkt. No. 48 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 54 [Defs.' Reply Memo. of Law]; Dkt. No. 58 [Plf.'s Sur-Reply].)

## III.    ANALYSIS

> ### A.    Whether Plaintiff's Complaint Should Be Dismissed for Lack of Subject-Matter Jurisdiction

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law and sur-reply.  (Dkt. No. 48, Attach. 1 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 58 [Plf.'s Sur-Reply].)  To those reasons, the Court adds four points.

First, Defendants argue that Plaintiff's Complaint alleges only conjectural or hypothetical injury, because, by the time that Plaintiff filed its Complaint, the violations alleged in the Complaint had ceased (as indicated in Defendants' July 2020 SWPPP).  This argument requires the Court to make findings of fact as to whether the alleged violations in fact exist and/or are

---

[8]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

ongoing. *See Carter*, 822 F.3d at 57 ("If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing."). This argument thus "essentially collapse[s] the standing inquiry into the merits." *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003); *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020); *Lerman v. Bd. of Elections*, 232 F.3d 135, 143 n.9 (2d Cir. 2000). At the pleading stage, the ultimate question of whether the defendants committed the violations alleged in the plaintiff's complaint is premature. *Baur*, 352 F.3d at 642, *see also Fair Hous. in Huntington Comm., Inc. v. Town of Huntington*, 316 F.3d 357, 361 (2d Cir. 2003).

Second, Defendants relatedly argue that Plaintiff's claims are moot, because, before filing its Complaint, Plaintiff did not review the July 2020 SWPPP that Defendants had created to resolve the issues alleged in Plaintiff's Notice Letter. For the sake of brevity, the Court will not linger on the fact that Defendants have acknowledged that they received, but did not respond to, Plaintiff's request for the SWPPP in effect on May 12, 2020. (Dkt. No. 19, at ¶ 7; Dkt. No. 54, Attach. 3, at ¶ 6.) Nor did Defendants (either before or after the expiration of the 60-day period following their receipt of Plaintiff's Notice Letter on May 15, 2020) advise Plaintiff of their issuance of the July 2020 SWPPP. More important is the fact that, again, this argument requires the Court to make findings of fact as to whether the July 2020 SWPPP (which totals 279 pages) indeed resolved all of the issues alleged in the 20-page Notice Letter (and the 88-page Complaint). Moreover, Plaintiff has alleged violations of the Clean Water Act that are "ongoing" and "continuous." (Dkt. No. 1, at ¶¶ 144, 153, 166, 175, 183, 195, 209.) Therefore, Defendants have a "heavy burden" to show it is "clear the allegedly wrongful behavior could not reasonably be expected to recur." *Patterson v. Barden & Robeson Corp.*, 04-CV-0803, 2007

WL 542016, at *6 (W.D.N.Y. Feb. 16, 2007) (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66-67 (1987)).  Defendants have failed to meet this heavy burden.[9]

Third, to the extent Defendants rely on the inadmissibility of the Third-Party Report (the "Dietrich Report") in support of their motion to dismiss for lack of subject-matter jurisdiction, the Court must reject that reliance.  Granted, in ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).  Moreover, "[a]s a rule, expert reports are hearsay." *In re Quigley Co., Inc.*, 437 B.R. 102, 151 (Bankr. S.D.N.Y. 2010) (compiling cases).  However, here, Plaintiff's Third-Party report is not "beyond the pleadings," but has been attached to Plaintiff's Complaint: it constitutes factual allegations that may be considered on Defendants' jurisdictional motion.

Fourth, and finally, Defendants argue that Plaintiff's written request for a SWPPP was defective in that it failed to contain payment for the production of the SWPPP.  For the reasons stated below in Part III.C. of this Decision and Order, the Court rejects this argument.  Furthermore, Defendants' argument that the SWPPP was subsequently provided with Defendants' Answer does nothing to negate the fact (and indeed implicitly concedes the fact)

---

[9]     The Court notes that, even if this Court did agree with Defendants that the claim for injunctive relief was moot, "the claim for civil penalties would still persist." *Patterson*, 2007 WL 542016, at n.6.

that Defendants failed to provide it within 14 days.

For all of these reasons, Plaintiff's Complaint survives Defendants' motion to dismiss for lack of subject-matter jurisdiction.

### B.      Whether Defendants Are Entitled to Judgment on the Pleadings

After carefully considering the matter, the Court answers this question also in the negative for the reasons stated in Plaintiff's opposition memorandum of law and sur-reply.  (Dkt. No. 48, Attach. 1 [Plf.'s Opp'n Memo. of Law], Dkt. No. 58 [Plf.'s Sur-Reply].)  To these reasons, the Court adds four points.

First, Defendants argue that Plaintiff's claims are both implausible and made in bad faith, because Plaintiff did not review the July 2020 SWPPP before filing its Complaint on September 1, 2020.  Again, at no point before Plaintiff filed its Complaint on September 1, 2020, did Defendants respond to Plaintiff's request of May 12, 2020, with a statement that the SWPPP in effect was the November 2018 SWPPP (or later the July 2020 SWPPP).  As a result, if there was bad faith here, it does not appear to have been on behalf of Plaintiff.  Moreover, the Court has trouble finding that, in deciding Defendants' motion for judgment on the pleadings, it may consider the July 2020 SWPPP that was attached to Defendants' Answer.

Granted, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).  Moreover, on a motion for judgment on the pleadings, a court may "rely on the complaint, the answer, [and] any written documents attached to them" (as well as "any matter of which the court can take judicial notice for the factual background of the case").  *See Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) ("Because this matter comes to us on appeal from a judgment on the pleadings, we rely on the

complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.").  However, the July 2020 SWPPP was not part of any counterclaims asserted by Defendants in their Answer; nor was it a document of which Plaintiff had notice when it filed its Complaint (which would be necessary to render the document "integral" to that Complaint).  *Cf. L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("There is no question that the email exhibits were 'attached' to Old Navy's Answer, even if they were only 'part of' Old Navy's Counterclaims. . . .  Moreover, these emails—of which L-7 had notice well before Old Navy attached them to its Answer (because L–7 sent or received them)—were 'integral' to the negotiation exchange that L–7 identified as the basis for its Complaint.").

In any event, even if the Court were to consider the July 2020 SWPPP in evaluating whether Plaintiff's Complaint states a claim upon which relief may be granted, the Court would be unable to find that the July 2020 SWPPP renders implausible the factual allegations supporting any of Plaintiff's claims.  Even setting aside the fact that Plaintiff's Complaint alleges violations of the CWA that are "continuous" and "ongoing," the Complaint's allegations are so numerous and varied (spanning 88 pages), and the July 2020 SWPPP so lengthy (totaling 279 pages), that Defendants face a heavy burden in showing that all of the factual allegations have been undermined.  Defendants have not met this burden.  (*See generally* Dkt. No. 47, Attach. 1; Dkt. No. 54.)

Second, Defendants argue in their reply memorandum that Plaintiffs are precluded by the Clean Water Act from raising new issues about salt storage, a potential settlement agreement, Discharge Monitoring Reports, the Defendants' 2021 SWPPP removing 11.8 acres from

coverage, and general questions from Plaintiff's consultant in the Declarations of Edan Rotenberg (Dkt. No. 48, Attach. 3), Christina Falk (Dkt. No. 48, Attach. 4), and Barbara Heinzen (Dkt. No. 48, Attach. 5).  (Dkt. No. 54.)  More specifically, Defendants argue that all the new issues fail to meet the 60-day notice requirement of the Clean Water Act, and that the issue regarding salt storage is precluded because administrative action has been taken on that issue. (*Id.*)  These arguments are unavailing.  Plaintiffs are not required to issue a new Notice of Intent to Sue Letter for each new allegation in the Complaint provided that the original Letter contains the substance of those allegations (as it does here).  *See Riverkeeper, Inc. v. TCI of NY, LLC*, 20-CV-1023, 2021 WL860578, at *11 (N.D.N.Y. Mar. 8, 2021) (D'Agostino, J.) (holding that a plaintiff was not required by the CWA to issue a new Notice Letter to a defendant who, relying on an earlier Letter, issued a new SWPPP that plaintiff alleged did not cure the issues raised in the Letter, provided that the substance of the still-existing violations was present in the initial Letter).  Moreover, Plaintiff's claim for *injunctive relief* is not precluded by EPA's prior administrative action on the issue of salt storage at Defendants' facilities.  *Coal. for a Liveable Westside, Inc. v. N.Y.C Dep't of Env't Prot.*, 830 F. Supp. 194, 196-97 (S.D.N.Y. 1993); *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 155-56 (S.D.N.Y. 2010).  Finally, and most importantly, in ruling on a motion for judgment on the pleadings, a court may look only to the allegations on the face of the complaint (with certain exceptions not present here).  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  Therefore, issues raised in affidavits attached to a motion are not subject to the Court's consideration.

Third, to the extent that Defendants rely on the inadmissibility of Plaintiff's Third-Party Report (the "Dietrich Report") in support of their motion for judgment on the pleadings, the

Court must reject that reliance. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123-24 (2d Cir. 1991) ("[E]videntiary flaws in documents described in a pleading are not a basis for dismissal for failure to state a claim.").

Fourth, and finally, regarding Plaintiff's Eighth Cause of Action, Defendants argue that Plaintiff's request for a SWPPP was defective in that it failed to contain payment for the production of the SWPPP. Again, for the reasons stated below in Part III.C. of this Decision and Order, the Court rejects this argument.

For these reasons, Plaintiff's Complaint survives Defendants' motion for judgment on the pleadings.

**C.   Whether Plaintiff's Cross-Motion for Summary Judgment on Its Eighth Claim Should Be Granted**

After carefully considering the matter, the Court answers this question in the negative.

Defendants argue that the request was "null and void" because Plaintiff did not "pay the expenses for reproduction of a requested SWPPP." (Dkt. No. 47.) The relevant General Permit provision states as follows: "The owner or operator must make a copy of the SWPPP available to the public within fourteen (14) days of receipt of a written request. Copying of documents will be done at the requester's expense." (Dkt. No. 48, Attach. 3, at 33.) Plaintiff's Notice Letter requested that "Riverkeeper requests CRC to send a copy of its SWPPP to the undersigned attorney," but did not contain an express offer to pay for the cost of copying the SWPPP. (Dkt. No. 1, Exhibit A, at 64-65.)

Defendants never asked Plaintiff to pay the costs associated with producing the SWPPP (or even acknowledged receipt of the request). (Dkt. No. 48, Attach. 3, at ¶ 14.) The Court rejects Defendants' argument that Plaintiff specifically requested that they mail a hard copy of

the 279-page document to Plaintiff's attorney: as stated above, Plaintiff merely requested that Defendants "*send* a copy of its SWPPP to the undersigned attorney." (Dkt. No. 1, Exhibit A, at 64-65 [emphasis added].) Moreover, the Notice Letter contained not only the attorneys' mailing address but their telephone number, fax number and website (where their email addresses could be found). (*Id*. at 45, 64.) As a result, Defendants could have (1) sent an invoice for the cost of copying the SWPPP, (2) faxed it (lengthy as it was), (3) offered to make it available for copying by Plaintiff, or (4) emailed an electronic version of the SWPPP at no or little cost to themselves (after visiting the attorneys' website, or simply telephoning them, to learn their email address). (Dkt. No. 48.)[10] Defendants did none of these things. Accordingly, no genuine dispute of material fact exists as to whether Plaintiff's written request for the SWPPP then-in effect was complied with (it was not), only a legal issue regarding whether Plaintiff was required to pay or offer to pay the cost of copying the SWPPP when it requested the production.

The General Permit does not expressly require the requestor of a SWPPP to either pay or offer to pay the cost of copying the SWPPP in its written request for that SWPPP. By analogy, where cost-shifting is appropriate in the discovery phase of federal litigation, courts require that the non-moving party first produce the requested information, then provide the court with an

---

[10] Assuming Defendants stored this document digitally, which is true of most documents today, there is little reason to believe they would have incurred any quantifiable cost in sending a copy of the file to Plaintiff by email. *See Sexton v. Lecavalier*, 11 F. Supp. 3d 439, 443 (S.D.N.Y. 2014) (holding that a party could have "easily, and at little cost" provided requested documents via email to obviate the need for a court proceeding); Soon Chul Huh, "Invasion of Privacy v. Commercial Speech: Regulation of Spam with A Comparative Constitutional Point of View," 70 *Alb. L. Rev.* 181, 187 (2006) ("The cost of sending an e-mail is extremely low or close to nothing."). Furthermore, even if Defendants only had a hard copy of the SWPPP, scanners which quickly and cheaply create Portable Document Format copies of paper files are nearly ubiquitous today.

affidavit detailing the costs of production.  *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 324 (S.D.N.Y. 2003).  Of course, the current request for information was not made during discovery—it was made before a complaint had been filed (and thus before Plaintiff and Defendants had become parties to this litigation).  (Dkt. No. 1, Exhibit A, at 64.)  This Court could find only one example of a requiring pre-payment of the cost of producing information requested of a non-party to a litigation.  *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 669 F.2d 620, 623-24 (10th Cir. 1982).  However, in reaching its decision in *Petroleum Products*, the Tenth Circuit reasoned that the non-party would not benefit from producing the requested information precisely because it would not have had to produce the information absent the subpoena; so preemptive cost shifting was appropriate.  *Petroleum Products*, 669 F.2d at 623.  Here, the request for information came in a Notice of Violation & Intent to Sue Letter, indicating that, although Defendants were not yet a party to litigation, they soon would be.  (Dkt. No. 1.)  Copying and sending the SWPPP at the time of Plaintiff's request would therefore have benefitted Defendants, because they eventually had to do it anyway.  For all of these reasons, the Court finds that the General Permit cannot be reasonably construed as even *implicitly* requiring the requestor of a SWPPP to either pay or offer to pay the cost of copying the SWPPP in its written request for that SWPPP.

Defendants also argue that they were not required to produce the SWPPP in effect on May 12, 2020 (i.e., the November 2018 SWPPP), because it was available from the New York State DEC at the time Plaintiff made the request.  This argument also fails.  As previously stated, Defendants did not even bother to inform Plaintiff that the SWPPP in effect was the November 2018 SWPPP.  Nor did Defendants bother to inform Plaintiff of their issuance of their July 2020

SWPPP.  Although Plaintiff presumably could have obtained a copy of Defendants' November 2018 SWPPP from the DEC (and later their July 2020 SWPPP), Plaintiff could not have known to do so without some response from Defendants (which Plaintiff did not receive).  Moreover, the General Permit required permit holders to provide a copy of the SWPPP to a requestor within 14 days of the request—without any express exception for instances in which the requestor could have obtained it from the DEC.  (Dkt. No. 47, Attach. 3.)

Having said all of that, the Court finds more merit to Defendants' third argument, that Plaintiff did not notify Defendants of their failure to provide a copy of the requested SWPPP 60 days before filing the Complaint.  Granted, Plaintiff's Notice Letter notified Defendants that any failure to make a copy of the relevant SWPPP available to Plaintiff within 14 days of their receipt of the request would violate the General Permit.  (Dkt. No. 1, at 63, n.75 [stating, "Note that under Part III.C.2 of the General Permit, the owner or operator of a facility 'must make a copy of the SWPPP available to the public within 14 days of receipt of a written request.'"].)  Furthermore, Defendants admit to receiving the Notice Letter and not complying with the request contained in it.  (Dkt. No. 19, at ¶ 7; Dkt. No. 54, Attach. 3, at ¶ 6.)  Finally, Plaintiff filed its Complaint more than 60 days after the expiration of the 14-day deadline for the SWPPP.

However, generally, a letter cannot provide notice of a violation that has not yet occurred.  *See Ellis v. Bradbury*, 13-C-1266, 2014 WL 1569271, at *11 (N.D. Cal. Apr. 18, 2014) ("[T]he Notice Letter could not have provided the requisite notice as the violation had not yet occurred.  Under such circumstances, allowing these claims to proceed would run counter to the purpose of the notice requirement . . . ."); *cf. Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 830 F. Supp. 1549, 1558 (D. N.J. 1993) ("One cannot notice what has not yet

occurred.  But neither the Supreme Court's decisions nor the statute requires that the citizen-plaintiff file a second notice-letter listing the post-complaint violations, and then wait the statutory minimum sixty days before filing a second, or amended, complaint as to the new, post-complaint violations, where those violations are of the type already noticed before suit and continuing thereafter.").  Of course, here, when Plaintiff sent its Notice Letter of May 12, 2020 (requesting that Defendants produce the SWPPP then in effect within 14 days of receiving the request), Defendants obviously had not yet failed to produce that SWPPP.  As a result, although few if any genuine disputes of material fact may exist with regard to it, an issue remains that the Court is unable to resolve based on the current briefing of Plaintiffs' cross-motion: whether Plaintiff's request of May 12, 2020, for the SWPPP then-in effect (pursuant to Part III.C.2. of the General Permit) constituted an adequate notice of violation (for failing to comply with that request) under 33 U.S.C. § 1365(b)(1)(A) and/or 40 C.F.R. § 135.3(a).

The Court notes that authority exists for the point of law that, if the mandatory 60-days notice required by 33 U.S.C. § 1365(b)(1)(A) was untimely with regard to Plaintiff's Eighth Claim, that defect could be jurisdictional in nature.  *See Compare Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989) ("In light of our literal interpretation of the statutory requirement, we need not determine whether § 6972(b) is jurisdictional in the strict sense of the term [as opposed to being procedural].") *with Nat. Resources Defense Council, Inc. v. Callaway*, 524 F.2d 79, 83-85 (2d Cir. 1975) (finding that the district court had jurisdiction to hear citizen groups' claimed violation of the Clean Water Act even though the action was commenced less than 60 days after plaintiffs gave notice of the alleged violation, in contravention of 33 U.S.C. § 1365).[11]

---

[11]     The Court notes that Defendants asserted this defect for the first time in their opposition

For all of these reasons, the Court denies without prejudice Plaintiff's cross-motion for summary judgment on its Eighth Claim.

### D.     Whether Defendants' "Castiglione Affirmation" Should Be Stricken

After carefully considering the matter, the Court answers this question in the negative for each of three reasons.

First, the Court has already found that grounds exist to deny Defendants' motion to dismiss for lack of subject-matter jurisdiction and/or motion for judgment on the pleadings, regardless of whether or not the Court considers Defendants' "Castiglione Affirmation." As a result, Plaintiff's motion to strike is moot.

Second, even if Fed. R. Civ. P. 56(c)(4) were to govern the first argument asserted in this motion (which regards the use of an affirmation not based on personal knowledge in support of not a motion for summary judgment but a motion to dismiss for lack of subject-matter jurisdiction and/or motion for judgment on the pleadings),[12] that rule (which of course applies to attorney declarations)[13] may be enforced by "any . . . appropriate order." Fed. R. Civ. P. 56(c). Generally, courts in this Circuit have expressed a preference for "'declin[ing] to consider those

---

to Plaintiff's cross-motion for summary judgment. (Dkt. No. 54, at 29-30.) To the extent the defect is procedural, because Defendants did not assert it in their memorandum-in chief in support of their motion for judgment on the pleadings, the Court cannot base a dismissal of it for failure to state a claim now. (Dkt. No. 47, Attach. 1, at 24-28.) To the extent this defect is jurisdictional, although Defendants did not assert such a jurisdictional defect in their motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 47, Attach. 1, at 23-24), the Court has a duty to *sua sponte* inquire as to it now pursuant to Fed. R. Civ. P. 12(h)(3).

[12]     Alternative grounds for this motion might be Fed. R. Evid. 602 and Local Rule 7.1(b).

[13]     *See Trustees of Loc. 8A-28A Welfare Fund v. Am. Grp. Administrators*, 14-CV-1088, 2017 WL 3700899, at *1 (E.D.N.Y. Aug. 25, 2017) (discussing the legal standards governing motions to strike attorney affidavits for lack of personal knowledge).

portions of an affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible,'" instead of striking them.  *Trustees*, 2017 WL 3700899 at *3, (quoting *Doe v. Nat'l Bd. of Podiatric Med. Exam'rs*, 03-CV-4034, 2004 WL 912599, at *4 (S.D.N.Y. Apr. 29, 2004) (collecting cases)).  This permits courts to "'resolve parties' claims on the merits, rather than to dispose of them on procedural default.'"  *Id.* (quoting *Hughes v. Lebron*, No. 14-CV-9479, 2016 WL 5107030, at *5 n.5 (S.D.N.Y. Sept. 19, 2016)).  As a result, to the extent that statements in Attorney Castiglione's Affirmation are not based on personal knowledge or are otherwise inadmissible, the Court has simply disregarded them.

Third, and finally, while the Court certainly finds merit to the second argument asserted in this motion (which regards a violation of two aspects of Local Rule 7.1(b)), again, the Court has exercised its discretion to simply disregard the offending portions of Attorney Castiglione's Affirmation.  Attorney Castiglione is, however, respectfully advised to re-read Local Rule 7.1(b) and Fed. R. Evid. 602, before filing any future motions.

For these reasons, Plaintiff's motion to strike the Castiglione Affirmation is denied.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss for lack of subject-matter jurisdiction and in the alternative motion for judgment on the pleadings (Dkt. No. 47) is **DENIED**; and it is further

**ORDERED** that Plaintiff's cross-motion for partial summary judgment on the Eighth Cause of Action (Dkt. No. 48) is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiff's motion to strike (Dkt. No. 49, Attach. 1) is **DENIED**.

Dated:  December 20, 2022
         Syracuse, New York

Glenn T. Suddaby
U.S. District Judge