**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

────────────────────────────

RIVERKEEPER, INC.,

                                        Plaintiff,                    1:20-CV-01025
                    v.                                               (GTS/CFH)


COEYMANS RECYCLING CENTER LLC,
COEYMANS RECYCLING CENTER II, LLC,

                                        Defendants.


────────────────────────────

**APPEARANCES:**                         **OF COUNSEL:**

Super Law Group, LLC                     EDAN ROTENBERG, ESQ.
222 Broadway, 22nd Floor                 JULIA KATHRYN MUENCH, ESQ.
New York, New York 10038
Attorneys for plaintiff

Young, Sommer Law Firm                   JOSEPH F. CASTIGLIONE, ESQ.
Executive Woods                          DEAN S. SOMMER, ESQ.
5 Palisades Drive
Albany, New York 12205
Attorneys for defendants

### MEMORANDUM-DECISION & ORDER

Presently before the Court is plaintiff Riverkeeper, Inc.'s motion for joinder of

Carver Laraway and motion to amend the complaint.[1]  See Dkt. No. 73.  In response,

defendants Coeymans Recycling Center LLC, and Coeymans Recycling Center II, LLC

("collectively "CRC") opposed plaintiff's motion and cross-moved for summary judgment.

─────────────────────

[1]  Pursuant to the Court's order modifying the Uniform Pretrial Scheduling Order, amended pleadings and joinder of parties was due by May 26, 2023.  See Dkt. No. 68.  Plaintiff filed this motion on May 26, 2023.

See Dkt. No. 74.  The Court granted plaintiff's cross-motion to stay its deadline to respond to the cross-motion for summary judgment until the completion of discovery.[2]  See Dkt. Nos. 76, 77.  Plaintiff filed a reply to its motion for joinder and to amend the complaint.  See Dkt. No. 79.

## I. **Legal Standards**

### A. **Motion to Amend**

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15(a)(2),

> leave to amend a complaint should be freely given in the absence of any apparent or declared reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.

Yennard v. Herkimer BOCES, 241 F. Supp. 3d 346, 361 (N.D.N.Y. 2017), amended on other grounds and superseded by 2017 WL 11317859 (N.D.N.Y. Mar. 27, 2017) (citing Foman v. Davis, 371 U.S. 178 (1962)).

### B. **Joinder**

Fed. R. Civ. P. 20(a)(2) states:

> (2) Defendants.  Persons . . . may be joined in one action as defendants if (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

As this Court has set forth:

> "In assessing whether the requirements of Rule 20(a) are met, courts must accept the factual allegations in a plaintiff's complaint as true." Deskovic v. City of Peekskill, 673 F.Supp.2d 154, 159 (S.D.N.Y. 2009). The plaintiffs bear the burden of demonstrating that joinder is warranted under Rule 20.

---

[2]  Therefore, in reviewing CRC's submission, the undersigned will consider only those portions of the response specific to the motion to amend, and not those exclusively relevant to the "cross motion" for summary judgment.

Id. "The requirements of [Rule] 20(a) are to be interpreted liberally to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding." Viada v. Osaka Health Spa, Inc., 235 F.R.D. 55, 61 (S.D.N.Y. 2006) (internal quotation marks and citation omitted). A determination on the question of joinder of parties lies within the broad discretion of the Court. Puricelli v. CNA Ins. Co., 185 F.R.D. 139, 142 (N.D.N.Y. 1999).

Pejovic v. State Univ. of New York at Albany, No. 1:17-CV-1092 (TJM/DJS), 2018 WL 4228423, at *2 (N.D.N.Y. Sept. 5, 2018).  Further,

[t]he policy underlying Rule 20 is to promote case efficiency. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) (". . . the impulse [under the rule] is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). In this regard, Rule 20 can, and should be, read in conformity with Rule 1, and its overriding dictate to secure the just, speedy, and cost-effective determination of every action. FED. R. CIV. P. 1. Therefore, assuming that the proposed joinder satisfies the two requirements of Rule 20(a), and absent some other compelling reason, joinder should be allowed.

Id. at *3.[3]

## II. **Arguments**[4]

### A. **Joinder**

---

[3]  Although courts are to conduct a fundamental fairness analysis where the matter of joinder would destroy diversity jurisdiction and warrant remand, it is not clear that such analysis is required where, as here, there is no issue with diversity jurisdiction.  See Knowyourmeme.com Network v. Nizri, No. 20-CV-9869 (GBD/JLC), 2021 WL 3855490, at *6 (S.D.N.Y. Aug. 30, 2021), report and recommendation adopted, No. 20 CIV 9869 (GBD/JLC), 2021 WL 4441523 (S.D.N.Y. Sept. 28, 2021), aff'd sub nom. KnowYourMeme.com Network, Inc. v. Nizri, No. 22-1322, 2023 WL 6619165 (2d Cir. Oct. 11, 2023) (quoting Hudson EFT, LLC v. Westchester Surplus Lines Ins. Co., No. 20-CV-8603 (PAE), 2020 WL 6712203, at *4 (S.D.N.Y. Nov. 16, 2020) ("[E]ven where the Rule 20(a)(2) requirements are met, "diversity-destroying joinder is appropriate 'only when consistent with principles of fundamental fairness as appraised using the following factors: (1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of multiple litigation; and (4) plaintiff's motivation for the amendment.'"). However, the Court, in making this determination, has still considered these factors, supra, for the purpose of a full and thorough review of the issue.

[4]  Familiarity with the underlying claims in this action is presumed, and will not be repeated here unless directly relevant to the instant discussion.  For further detail in that matter, reference is made to plaintiff's complaint, and the "relevant facts' section of plaintiff's memorandum of law, and those portions of CRC's "statement of fact" that are absent of argument, in support of its motion to amend the complaint.  See Dkt. Nos. 1, 73-1 at 4-5, 74-7 at 6-7.

Addressing first the motion to rejoin Mr. Laraway, plaintiff provides that it "originally filed this lawsuit against Carver Laraway as the corporate officer responsible for Clean Water Act compliance at the Industrial Park." Dkt. No. 73-1 at 5. Mr. Laraway was served with a summons and complaint. See id. at 4 (citing Dkt. Nos. 2-1, 7). Plaintiff notes that counsel for defendants appeared for all parties and filed a joint answer for all parties, including for Mr. Laraway. See id. Plaintiff provides that ten days after defendants appeared, it "agreed to voluntarily dismiss – without prejudice – Mr. Laraway, in the interest of advancing settlement negotiations." Id. at 5 (citing Dkt. No. 22). Settlement attempts, made until January 2022, were ultimately unsuccessful. See id.

Plaintiff avers that Mr. Laraway is a "responsible corporate officer" under the Clean Water Act. See Dkt. No. 73-1 at 5. Plaintiff contends that joinder should be permitted because the violations of the Clean Water Act alleged in the complaint apply equally to Mr. Laraway. See id. at 5-6. Further, plaintiff contends that Mr. Laraway would face no prejudice because he was properly noticed and served with the complaint as required by the Clean Water Act and Fed. R. Civ. P.; he "had an opportunity to respond to the complaint"; "his attorneys have remained active participants in this matter throughout the pendency of this case"; and plaintiff filed this motion "in accordance with the Scheduling Order," the discovery deadline was six months away and dispositive motions deadline eight months away at the time the motion was filed; and trial had not been calendared." See id. at 6. In requesting to re-join Mr. Carver, plaintiff asserts that its claims against him "arise from the same set of occurrences alleged against the corporate Defendants, and many questions of law and fact will be

common to all of the named Defendants in this action."  Id.   Plaintiff argues that Mr. Laraway would not suffer prejudice from joinder because he was originally a part of the case and was aware that he could be re-joined.  See id. at 7.

CRC argues that plaintiff's "proposed claims are meritless and Plaintiff fails to make factual allegations to support 'responsible corporate officer' liability to justify rejoining Mr. Carver individually."  Dkt. No. 74-7 at 5.  More specifically, it contends that plaintiff's allegations against Mr. Laraway are "bare bones" and "fail to show direct oversight and control of actions that constitute violations of the CWA [Clean Water Act] or 2018 MGSP [Multi-Sector General Permit] to justify joining him individually."  Id. at 13.  CRC argues that the only allegations proposed against Mr. Laraway, despite receiving discovery and conducting site visits, "are basically limited to signing administrative paperwork for CRC."  Id. at 14.  CRC contends that plaintiff alleges only that Mr. Laraway "'signed administrative consent orders[,]'[] 'is copied on communications between the DEC and [CRC][,]'"[] 'is designated as the emergency contact [in the Park's SWPPPs[5][,]' signs the certification in the SWPPPs, and signed discharge Monitoring Reports[]."  Id.   Defendant contends that joinder must be denied because plaintiff has not shown "any of the required factual allegations showing [Mr. Laraway's] direct involvement in illegal discharges or violations as is required to support the responsible corporate officer theory of liability."  See id. at 14.  CRC further argues that "[s]igning corporate papers on behalf of a corporation in a corporate capacity or receiving emails in a corporate capacity is not the governing standard for 'responsible corporate officer.'"  Id.  Otherwise, CRC argues, "every corporate officer" would be

---

[5]  CRC uses this abbreviation for Storm Water Pollution Prevention Plan.  See Dkt. No. 74-7 at 5.

"liable by default, which is clearly not contemplated by the New York Law or the CWA 'responsible officer' standard." Id. Defendant further appears to argue the information plaintiff presents as reasons to permit Mr. Laraway's joinder "was known by the Plaintiff at the time it agreed to discontinue its claims against Mr. Laraway in December 2020[,]" but contends that the July 2020 SWPPP identified CRC employee John Regan as "SWPP Contact (Compliance Manager" and Compliance Manager" of the "'Stormwater Pollution Prevention Team.'" Id.   CRC also contends Mr. Laraway was not named in these roles in the September 2020, July-August 2021, and May 2023 SWPPP.  See id.

## B. **Motion to Amend**

Plaintiff contends that its proposed amendments are "narrow," "adding a net total of six paragraphs to the complaint." Dkt. No. 73-1 at 7.  Plaintiff provides that the amendments "add[] details to clarify Riverkeeper's allegations regarding Carver Laraway's responsibilities at the Industrial Park" and "updates certain allegations," such as a new DEC permit number and an increase in "the maximum daily penalties that can be assessed for violations of the Clean Water Act[.]" Id.

Plaintiff argues that the CRC defendants would not suffer prejudice from joinder of Mr. Laraway "as they were already well aware that Carver Laraway was and could be party to this action." Dkt. No. 73-1 at 7.  Further, plaintiff contends that the proposed amendments "do not substantially expand" Riverkeeper's claims "and are presented in accordance with the scheduling order," eliminating concerns of undue delay, dilatory motive, or bad faith. See id.  Further, plaintiff notes that this is its first request to amend. See id.

6

CRC argues that the motion to amend must be denied because the proposed amendments are "deficient" and "lack merit." See Dkt. No. 74-7 at 17. It contends that the original complaint's first cause of action "was factually and legally defunct and without merit[.]" Id. at 16. Further, CRC contends that plaintiff's proposed amended complaint must be denied insofar as it introduces "new claims" and "attempt[s] to impose "retroactive[]" liability, pointing to Riverkeeper's incorporation of the" reissued General Permit (the 2023 MSGP),[6] removal of references to 23.9 acres, and adjusted statutory penalty values. Id. at 16, 21. More specifically, CRC argues that, at the time plaintiff filed its original complaint, which alleged that there were unpermitted outfalls outside of the 23.9-acre area covered by the 2018 MSGP, the July 2020 SWPPP and Site Plan was in effect which "show[ed] 51.8 acres covered and all identified outfalls being within that 51.8 acres." Id. at 22. CRC argues that "the reference to the 23.9 acres SPDES coverage" renders plaintiff's original complaint "legally defunct," and plaintiff's proposed amended complaint removes that reference, arguing instead that defendants discharged, and continue to discharge, stormwater from multiple outfalls at the Industrial Park without a National Pollutant Discharge Elimination System ("NPDES") Permit.[7] Id. CRC contends this makes plaintiff's first cause of action a new claim.

As for the "retroactive[]" liability, CRC contends that plaintiff "is seeking to amend its legal theories by including the 2023 MSGP (i.e., 'General Permit') as governing standards to retroactively determine if alleged actions/omissions from 2020 and

---

[6]  Parties use the acronym "MSGP" to refer to the Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity. See Dkt. No. 79 at 3 n.3; Dkt. No. 1; Dkt. No. 73-2.

[7]  Plaintiff provides that the NPDES permit is "issued pursuant to CWA § 402." Dkt. No. 79 at 4 n.4.

otherwise before the 2023 MSGP was effective in March 2023 constitute violations under the 2023 standards." Dkt. No. 74-4 at 21. CRC argues that plaintiff is seeking to have conduct that plaintiff originally identified as violative of the 2018 MSGP be considered violative of the 2023 MSGP, along with the increased penalties, "despite the fact that the alleged matters in the Complaint occurred well before March 8, 2023, when the 2023 MSGP became effective." Id. at 12.

CRC also argues that, with the amendments, plaintiff failed to provide CRC with a 60-day notice as 33 U.S.C. § 1365 and the EPA's regulations require. See Dkt. No. 74-7 at 18-19. Specifically, CRC avers that it did not receive the required notice for "new issues raised as to alleged acts/omission[s] allegedly violating the new 2023 MSGP, including as to the revised SWPPP for the Park and the new storm water control upgrades/work installed by RC after September 2020, and failed to provide the 60-day notice as to its entirely modified First Cause of action." Id. at 19. It also argues that it did not receive the required notice for plaintiff's "entirely modified First Cause of Action." Id. CCRC contends that the May 2020 notice it did receive failed to "'identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, . . . the location of the alleged violation, the date or dates of such violation' for the 2023 MSGP." Id. at 21. It further argues that the notice it did receive did not "notify the DEC, EPA or CRC that its subsequent storm water controls and efforts reflected in the July 2020, September 2020, July and August 2021, and May 2023 SWPPP were in violation of the 2023 MSGP." Id. Instead, the notice identified only the 2018 MSGP "and the Plaintiff cannot unilaterally file new legal standards— including seeking increased penalties allowed under the 2023 MSGP, without the

required 60-day notice to allow the agency to review of [sic] new storm water controls under the new 2023 MSGP." Id.  CRC argues that case law requires "strict compliance' with the 60-day pre-suit notice provisions of CWA 1365(b)(1)(A) 'is a mandatory, not optional condition precedent for suit which this Court may not disregard.'" Id. at 19 (quoting Newburgh v. Sarna, 690 F. Supp. 2d 136, 152-153 (S.D.N.Y. 2010)) (additional citation omitted).

Regarding joinder of Mr. Laraway, CRC contends that plaintiff failed to demonstrate his "direct involvement in illegal discharges of violations as is required to support 'responsible corporate officer.'" Dkt. No. 74-7 at 23.  CRC argues that for the responsible corporate office theory, "cases generally mandate that a corporate officer must be shown to be responsible for or have control over work that results in the alleged violations of the CWA." Id. at 25.  CRC contends that signing of administrative paperwork is not sufficient for responsible corporate officer liability.  See id. at 27. Further, CRC contends that "SWPPPs from July 2020 through May 2023 identify employees and consultants as being the Park's stormwater control compliance manager and compliance team, not Mr. Laraway." Id.  CRC avers that plaintiff "'had the July 2020 SWPPP and that exact information when they agreed to stipulate Mr. Laraway out of the case on 12/21/20[.]'" Id.

Further, CRC argues, similar to its argument before the Court on its motion to dismiss/for judgment on the pleadings, that plaintiff's proposed amended complaint must be denied because the Eighth Cause of Action alleges, as it did in the original complaint, that CRC "violated the MSGP because it did not provide Plaintiff with a copy of the SWPPP when requested by Plaintiff on May 12, 2022, was not the subject of a

60-day notice letter when it became an actual alleged violation.  Rather, it was improperly raised for the first time as an alleged violation in the Complaint."  Dkt. No. 74-7 at 19.

In reply, plaintiff contends that CRC improperly relies solely on futility to argue against its proposed amendments.  Dkt. No. 79 at 3.  Further, plaintiff criticizes CRC for "cit[ing] wrong laws and ignor[ing] the ample evidence that Mr. Laraway exercises direct control over the illegal conduct of the corporate defendants."  Id.  Plaintiff argues the fact that "during the pendency of this case the General Permit has expired and been reissued . . . [d]oes not change Riverkeeper's claims because the new and old permits are 'substantively identical as relevant to Riverkeeper's allegations.'"  Id. at 5 (citing Dkt. No. 73-1 at 7).

Plaintiff argues that "[i]n 2020, Defendants were in violation of the General Permit then in effect; in 2023, Defendants remain in continuing violation of the reissued General Permit (the 2023 MSGP)."  Dkt. No. 79 at 5.  Plaintiff contends that the "reissuance of the General Permit clearly does nothing to affect Riverkeeper's other foundational allegation: that Defendants discharge industrial stormwater without permit coverage, in violations of CWA Sections 301(a) and 402(p)."  Id. at 5 n.5.  Plaintiff argues that the 2023 MSGP permit is "functionally identical to the prior version," "something that CRC does not dispute."  Id. at 6.  Next, plaintiff argues that the change "from 23.9 acres to 51.8 acres" covered by the permit "does not alter Riverkeeper's claims that Defendants discharge pollution from unpermitted outfalls and that Defendants violate various provisions of their NPDES permits."  Id. at 7.   Plaintiff contends that the original and proposed amended complaint both contend that the

permit "fails to cover stormwater discharges for the vast majority of the Industrial Park. That allegation is true whether the acerage covered is 23.9 (9.6% of the Park) or 51.1 (20.7% of the Park)." Dkt. No. 79 at 8 (internal citation omitted).  Plaintiff further asserts that defendant was "legally required" to provide it with a copy of its July 2020 SWPPP, but failed to do so. See id. at 8.  Had CRC done so, plaintiff contends, it would have been able to reflect that in its original complaint. See id.

As to the proposed amended complaint including an "increased statutory penalty," plaintiff argues that the "statutory penalty has increased regardless of whether the complaint is amended" because the law[8] permits "federal agencies to periodically increase civil penalties to account for inflation[,]" and that the EPA "implements those adjustments as to the Clean Water Act." Dkt. No. 79 at 8-9.  Thus, plaintiff argues that this proposed amendment "has no affect on this action other than to accurately reflect the law and facts known by Riverkeeper to be true." Id. at 9.

In response to CRC's arguments about joinder, plaintiff argues that responsible corporate officers need only have the "authority" to "exercise control over the corporation's activity" even if the person does not actually exercise the authority.  Dkt. No. 79 at 9.  Next, plaintiff argues that CRC's cites to "corporate veil piercing principles, New York State common law, and a case analyzing the Rivers and Harbors Act of 1899" are an attempt to "obfuscate" as these laws are not "applicable." Id.  Instead, plaintiff argues, it only need demonstrate that Mr. Laraway was in a "'position[] of authority'" at a "'polluting company.'" Id. at 10 (quoting Humboldt Baykeeper v. Simpson Timber Co., No. C 06-04188 CRB, 2006 U.S. Dist. Lexis 91667, at *10 (N.D. Cal. Dec.

---

[8]  Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101-410, 104 Stat. 890.  See Dkt. No. 79 at 9.

8, 2006).  However, even if "direct, individual involvement" were required, plaintiff

argues that the original and proposed amended complaint demonstrate "Mr. Laraway's

control of the development and design of the Park, control of the corporate Defendants,

and participation in Park operations[.]"  Dkt. No. 79 at 10-11.  Plaintiff further points to

the fact that the certifications Mr. Laraway signed were done so "under penalty of law."

See id. at 11.  Further, plaintiff highlights that "the General Permit requires that any

person signing such a certification on behalf of a corporation must be a 'responsible

corporate officer.'"  Id. at 11 n.9. (quoting 2018 MSGP Part III.C; 2013 MSGP Part III.C).

Thus, plaintiff proposes, "[i]f Mr. Laraway is not a 'responsible corporate officer,' his

signature constitutes a violation of the General Permit."  Id. at 12.  Addressing CRC's

argument that "their employees and consultants – not their President, Mr. Laraway [] . . .

should bear ultimate responsibility for ensuring compliance[,]" plaintiff argues that the

Supreme Court has "long rejected this argument."  Dkt. No. 79 at 12 (quoting United

States v. Iverson, 162 F.3d 1015, 1024-24 (9th Cir. 1998) (quoting United States v. Park,

421 U.S. 658, 668 (1975)).[9]

III.  **Discussion**

A.  **Joinder of Carver Laraway**

In reviewing whether to permit joinder, the Court will proceed with its review with

the following in mind.  "In assessing whether the requirements of Rule 20(a) are met,

courts must accept the factual allegations in a plaintiff's complaint as true."  Deskovic,

673 F.Supp. 2d at 159.  Further, "joinder of claims, parties and remedies is strongly

---

[9]  In quoting United States v. Iverson, plaintiff notes that Iverson was "applying Park to 'responsible corporate officer' doctrine under the CWA."  Dkt. No. 79 at 12.

encouraged[,]" and "the impulse is toward the broadest possible scope of action consistent with fairness to the parties." United Mine Workers v. Gibbs, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Permissive joinder must comport with principles of fundamental fairness.[10]

The Court notes that CRC does not appear to dispute that joinder is permissible under Rule 20(a)(2). Instead, it presents a merits-based argument, contending that the allegations against Mr. Laraway "fail to show direct oversight and control over actions that constitute violations of the CWA or 2018 MSGP to justify joining him individually." Dkt. No. 74-7 at 13.

As for the first requirement of Rule 20(a)(2), plaintiff has not alleged that Mr. Laraway and the corporate defendants are jointly, severally, or alternatively liable. Instead, plaintiff contends that the claims against Mr. Laraway "arise from the same set of occurrences [as] alleged against the corporate Defendants, and many questions of law and fact will be common to all of the named Defendants in this action[.]" dkt. no. 73-1 at 6; see FED. R. CIV. P. 20(a)(2)(A). The Court agrees as is plain that the claims it seeks to bring against Mr. Laraway arise from the same transaction(s) or occurrence(s).

The Court concludes that plaintiff has also satisfied the second requirement because there will likely be questions of law and fact common between Mr. Laraway and the corporate defendants. Indeed, plaintiff argues that "the very same alleged

---

[10] The Court observes that there is no issue with considerations of "destruction" of diversity jurisdiction necessitating a remand to state court. In such cases where remand is needed, a court is to consider any delay in seeking to amend, resulting prejudice to the defendant, the likelihood of multiple litigation, and the plaintiff's motivation in seeking to amend. See, e.g., Dinardi v. Ethicon, Inc., 145 F.R.D. 294, 297 (N.D.N.Y.1993). Given that diversity jurisdiction and remand is not a concern in this case, it does not appear this Court is mandated to formally consider all of these factors. However, in light of the "fundamental fairness" underlying permissive joinder, the Court has taken these factors into consideration.

Clean Water Act violations presented as to the corporate Defendants also apply to the corporate officer responsible for ensuring they complied with the law: Carver Laraway." Dkt. No. 73-1 at 6; See FED. R. CIV. P. 20(a)(2)(B).

In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." McGrath, 2021 WL 791537, at *5 (citing Viada v. Osaka Health Spa, Inc., 235 F.R.D. 55, 61 (S.D.N.Y. 2006)).  Thus, CRC's arguments regarding the sufficiency of plaintiff's arguments regarding the corporate officer liability does not direct a different result as it does not show that the claims against Mr. Laraway do not arise from the same transaction(s) or occurrence(s) or that there exist common questions of law or fact between the claims against the CRC defendants and the proposed claims against Mr. Laraway.

Although joinder will likely cause some delay in the final adjudication of this case, "the Court is not persuaded that discovery is at such an 'advanced stage' that joinder

> . . . would present an *unreasonable* delay."  Roll On Express, Inc. v. Travelers Indem. Co. of Connecticut, No. 09-CV-213RLM, 2009 WL 1940731, at *4 (E.D.N.Y. July 2, 2009).  While the potential for additional discovery alone is not sufficient to constitute prejudice, see Gursky, 139 F.R.D. at 283 (noting that "[t]he need to conduct additional discovery is standard fare when pleadings are amended"), joinder should not be permitted where adding defendants would open a "Pandora's box" of discovery.  See Barr Rubber Prods. Co. v. Sun Rubber Co., 425 F.2d 1114, 1127 (2d Cir.1970) (case had been pending for four-and-one-half years); accord Losco, 150 F.Supp.2d at 565.

Roll On Express, Inc., 2009 WL 1940731, at *4. Here, it is almost certain that additional discovery will be necessary due to re-joinder of Mr. Laraway.  However, CRC has presented no arguments to support that the additional discovery would be akin to "open[ing] a Pandora's box."  Id. (quoting Barr Rubber Prods. Co., 425 F.2d at 1127).

Further, as plaintiff notes, the request for joinder was timely filed under the scheduling order.  See dkt. no. 73-1 at 6.  Plaintiff contends that settlement negotiations fizzled by January 2022, and plaintiff filed this motion for joinder in May 2023.  Although there is some delay between those dates, it is not a substantial period of time, especially when considering that the time for joinder in the scheduling order had not yet passed.  CRC does not present an argument to support a claim that there has been a substantial delay.  Thus, the delay is not unreasonable.

As for prejudice, plaintiff notes that Mr. Laraway is not substantially prejudiced because he received notice under the Clean Water Act and when he was served with the original complaint.  Likewise, the CRC defendants received the same notice. Further, as plaintiff notes, Mr. Laraway's counsel is otherwise involved in the case by representing the corporate defendants; thus, his representation will be fully apprised as to the status and claims in this case.  The Court agrees with these arguments as to prejudice and concludes that there is no substantial prejudice against the CRC defendants from joinder.

Accordingly, the Court, in its discretion, determines that joinder of Mr. Laraway is proper under Rule 20(a)(2).  Therefore, plaintiff's motion to join Carver Laraway is granted.


### B.  **Motion to Amend**

As indicated, plaintiff seeks to amend largely to: (1) add details about a new General Permit, effective March 8, 2023; (2) add details about Mr. Laraway's alleged involvement; (3) reflect an increase in the per-day violation amount for violations of the

Clean Water Act occurring after a certain date; and (4) note that CRC sought coverage

for 23.9 acres prior to receipt of Riverkeeper's letter, removing some references to CRC

discharging stormwater from outside of the covered 23.9 acres, and instead alleging,

generally, that defendants discharge stormwater without an NPDES permit.  See Dkt.

Nos. 73-1; 73-3.


### 1.  Updated Permit

CRC asks the Court to deny the motion to amend as futile, in part, insofar as it

seeks to include the 2023 MSGP.   See Dkt. No. 74-4 at 21-23.  CRC argues that

plaintiff is seeking to hold CRC in violation of the 2023 MSGP for conduct that occurred

before the effective date of that permit.  See id.  Plaintiff argues, "[i]n 2020, [d]efendants

were in violation of the General Permit then in effect; in 2023, Defendants remain in

continuing violation of the reissued General Permit (the 2023 MSGP).  Riverkeeper's

simple acknowledgement that the permit was reissued does not somehow expand

Riverkeeper's claim for relief."  Dkt. No. 79 at 5.

The Court agrees with the arguments presented in plaintiff's briefing, including

the cases cited therein such that plaintiff's updates to the proposed amended complaint

to reflect the updated permit does not render it a fully new cause of action.  See Dkt.

No. 79 at 5-6 (citing Riverkeeper, Inc. v. TCI of NY, LLC, No. 1:20-CV-1023 (MAD/DJS),

2021 WL 860578, at *8 (N.D.N.Y. Mar. 8, 2021) (citing cases that demonstrate that the

"issuance of a new permit does not render a plaintiff's claims moot.").  Moreover, the

undersigned's understanding of the proposed amended complaint is not that plaintiff is

alleging that conduct that occurred before the March 2023, effective date of the 2023

MSGP is a violation of that not-yet-in-effect permit, but that "ongoing violations" that continued into and occurred after the 2023 MSGP became effective also violate the 2023 MSGP.  Id. at 6.  In sum, undersigned determines that updating the proposed amended complaint to reflect coverage under the 2023 MSGP does not render plaintiff's claims futile.

### 2. **Removal of 23.9 Acres References**

Plaintiff acknowledges that its original complaint alleged that defendants were discharging stormwater outside of the 23.9 acres permitted under the General Permit.  It was not until after it filed its complaint that it learned that CRC, "after receiving Riverkeeper's notice of intent to sue . . . prepared a new SWPPP (the July 2020 SWPP) and submitted a revised permit application to expand the acreage covered to 51.8 acres."  Thus, plaintiff asserts it is merely "updat[ing] the facts alleged to reflect facts known."  Dkt. No. 79 at 7.  Plaintiff contends that the discovery it had engaged in at the time of the filing of this motion indicated that, as argued in the proposed amended pleading, CRC was "discharging stormwater associated with industrial activity that contains pollutants" from areas not covered by a NPDES permit.  See id.

CRC contends that plaintiff is attempting, with its amended complaint, to argue that alleged violations defendants may have committed as of the filing date of the original complaint "somehow constituted a violation of the later adopted 2023 MSGP," Dkt. No. 74-7 at 18, including its higher penalties.  CRC argues that, at the time plaintiff filed the original complaint, the industrial park was "clearly being covered by the 2018 MSGP based upon the July 2020 SWPPP (and subsequent SWPPPs)."  Id.

To the extent CRC argues that plaintiff's first cause of action invalid (even as it exists in the original complaint) due to the lack of 60-day notice as required under the CWA, the Court rejects this argument, in part, for the reasons the Court discussed in the December 22, 2023, Decision & Order.  Dkt. No. 60 at 18.  First, as this Court there noted, plaintiff – due to no bad faith on its part – did not have access to the July 2020 SWPPP at the time it filed its original complaint in September 2020.  See id.  In seeking to amend its complaint to remove the reference to the 23.9 acres, plaintiff is seeking to remove a limitation that was imposed because plaintiff was unaware of the July 2020 SWPPP or subsequent SWPPP at the time it filed its original complaint.  The Court is not convinced that this alteration renders plaintiff's first cause of action futile.[11]   As this Court noted in the December 22, 2023, Decision & Order, plaintiff alleged in its original complaint[12] that CRC's violations of the Clean Water Act were "continuous" and "ongoing."  Id. at 20. The Court further noted that plaintiff is "not required to issue a new Notice of Intent to Sue Letter for each new allegation in the Complaint provided that the original letter contains the substance of those allegations[.]"  Id.  Plaintiff indicates in its proposed amended complaint that CRC was discharging water without a permit – i.e., outside of areas covered by a permit.  Dkt. No. 73-3 at 31.  Although plaintiff's proposed amended complaint removes specific reference to discharging water outside of the 23.9 acres covered by the permit then in effect, the Court cannot conclude at this time that plaintiff is changing the underlying claim.  Accordingly, the Court determines that plaintiff's proposed amended complaint, to the extent it seeks to remove the reference

---

[11]   CRC argues only that the proposed amendment is "deficient" and "lacks merit," citing case law on futility.  See Dkt. No. 74-7 at 17.  It does not make any explicit arguments on delay or prejudice.
[12]   Plaintiff repeats this allegation in the proposed amended pleading.  See Dkt. No. 73-3 at 1, 31, 33, 35-37, 39, 42.

to 23.9 acres of NPDES permit coverage and instead referring generally to discharging the stormwater without a permit, is not futile.

### 2. **Notice under Clean Water Act (33 U.S.C. § 1365)**

CRC argues that the motion to amend must be denied because the 60-day notice letter failed to provide notice as required under the Clean Water Act for (1) "the entirely modified first cause of action," and (2) plaintiff's proposed eighth cause of action[13] that CRC violated the MSGP for failing to provide plaintiff with a copy of the SWPPP when it was requested in May 2020 because this claim was not part of a 60-day notice letter, which violates the General Permit and 33 U.S.C. § 1365.  See Dkt. No. 74-7 at 19.  This Court held in its December 20, 2022, Decision & Order, when addressing CRC's argument that plaintiffs were "precluded, under the Clean Water Act, from raising new issues about salt storage, a potential settlement agreement, Discharge Monitoring Reports, the Defendants' 2021 SWPPP removing 11.8 acres from coverage, and general questions from Plaintiff's consultant in the Declarations of Edan Rotenberg, Christian Falk, and Barbara Heinzen," that "[p]laintiffs are not required to issue a new Notice of Intent to Sue for each new allegation in the Complaint provided that the original Letter contains the substance of those allegations (as it does here)."  Dkt. No. 60 at 20 (citing Riverkeeper, Inc. v. TCI of NY, LLC, 20-CV-1023, 2021 WL 860578, at *11 (N.D.N.Y. Mar. 8, 2021)).

---

[13] This is a claim raised in both the original complaint and proposed amended complaint.  The only alteration to the proposed eighth cause of action is changing the language to reflect that CRC has since responded to the request, stating instead that the violation occurred because it had not responded at the time of the filing of the original complaint.  Compare Dkt. No. 1 at 41 with Dkt. No. 73-3 at 42.

In denying CRC's motion to dismiss/motion for judgment on the pleadings, the Court acknowledged that it found "more merit" to CRC's argument, repeated here, that "Plaintiff did not notify Defendants of their failure to provide a copy of the requested SWPPP 60 days before filing the Complaint" in violation of the Clean Water Act's 60-day notice requirement.  Dkt. No. 60 at 24.   The Court elaborated:

> when Plaintiff sent its Notice Letter of May 20, 2020 (requesting that Defendants produce the SWPPP then in effect within 14 days of receiving the request), Defendants obviously had not yet failed to produce that SWPPP.  As a result, although few if any genuine disputes of material fact may exist with regard to it, an issue remains that the Court is unable to resolve based on the current briefing of Plaintiffs' cross-motion: whether Plaintiff's request of May 12, 2020, for the SWPPP then-in effect . . . constituted adequate notice of violation (for failing to comply with that request) under 33 U.S.C. 1365(b)(1)(A) and/or 40 C.F.R. § 135.3(a).

Id. at 25.  However, the Court denied without prejudice plaintiff's cross-motion for summary judgment on its Eighth cause of action.  See id. at 25-26.

As to the issue CRC raises again here – that plaintiff's failure to provide notice of the 60-day notice on its argument that CRC's failure to provide a copy of the SWPPP within 14 days from its request amounted to a violation of the Clean Water Act – that request is denied for the same reasons the Court denied it in its December 22, 2022, Decision & Order.  See Dkt. No. 60.   Plaintiff's arguments in the amended pleading regarding CRC's failure to provide the SWPPP in violation of the Clean Water Act is indistinguishable from the original complaint.  However, the parties' briefing on the notice issue is no more robust than that reviewed in the Court's December 20, 2022, Decision & Order and shines no more light on this issue such that the Court can determine that it would not survive a motion to dismiss.

Insofar as CRC is also arguing that the motion to amend the complaint must be denied because CRC did not have 60-day notice of plaintiff's claim that it was distributing water outside of the 23.9 acre area, as required by the Clean Water Act, the Court declines to deny the motion to amend on notice grounds. Although plaintiff removed many of the specific references to the 23.9 acres, plaintiff contended that the violations were ongoing and continuous, and plaintiff did not have access to the updated SWPPP at the time it filed its original complaint. Thus, it did not have the ability to modify the argument to the specifics of the most current SWPPP or permit.

Accordingly, the Court cannot, based on the information before it, conclude that this claim is futile and declines to deny plaintiff's motion to amend on the basis of CRC's argument specific to notice of the proposed amended complaint's eighth cause of action or the removal of the 23.9 acres reference.


### 3. **Maximum Statutory penalty**

Plaintiff argues that "the statutory penalty has increased regardless of whether the complaint is amended" because of increases allowed for "violations that occurred on or after November 2, 2015, where penalties are assessed on or after January 6, 2023. Dkt. No. 79 at 8-9. With this argument, the Court agrees. Thus, the proposed amendment to reflect statutory penalty increases is not futile. To the extent plaintiff contends that violations were ongoing and continuous, for alleged violations occurring after the statutory penalty increased, it would appear within reason for those violations to be associated with the updated penalty.

Accordingly, plaintiff's motion to amend its complaint is granted in its entirety.

IV. **Conclusion**

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's motion for joinder and motion to amend, Dkt. No. 73, is **GRANTED** in its entirety; and it is further

**ORDERED**, that, within five (5) days of the filing date of this Memorandum-Decision & Order, plaintiff must file a signed copy of the amended complaint, which will serve as the operative pleading in this action; and it is further

**ORDERED**, that the Clerk serve this Memorandum-Decision & Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: February 26, 2024
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge