**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

────────────────────────────────

RIVERKEEPER, INC.,

                              Plaintiff,              1:20-CV-01025
            v.                                        (GTS/CFH)


COEYMANS RECYCLING CENTER LLC,
COEYMANS RECYCLING CENTER II, LLC,

                              Defendants.


────────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

Super Law Group, LLC                    EDAN ROTENBERG, ESQ.
222 Broadway, 22nd Floor                JULIA KATHRYN MUENCH, ESQ.
New York, New York 10038
Attorneys for plaintiff

Young, Sommer Law Firm                  JOSEPH F. CASTIGLIONE, ESQ.
Executive Woods                         DEAN S. SOMMER, ESQ.
5 Palisades Drive
Albany, New York 12205
Attorneys for defendants

## MEMORANDUM-DECISION & ORDER[1]

Presently before the Court is defendants Coeymans Recycling Center LLC and

Coeymans Recycling Center II, LLC,'s (hereafter, collectively, "CRC") Motion to Compel

disclosure pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt.

─────────────────────

[1] The undersigned respectfully requests of all parties that any and all future filings to include the Westlaw citation (for unpublished cases) or the reporter citation (for published cases), rather than exclusively the Lexis citation.

No. 97.  Plaintiff Riverkeeper ("plaintiff") opposed.  <u>See</u> Dkt. No. 107.  CRC replied.[2] <u>See</u> Dkt. No. 114.

## I.  **Legal Standard**

### A.  **Motion to Compel Discovery**

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") Rule 26(b)(1) states, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .  Information within this scope of discovery need not be admissible in evidence in order to be discoverable." FED. R. CIV. P. 26(b)(1). "Under Rule 37, following a good-faith effort to meet and confer, upon to all parties notice," "a party may move for an order compelling disclosure or discovery."  FED. R. CIV. P. 37(a).  "'Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'"  <u>Harris v. Bronx Parent Hous. Network, Inc.</u>, No. 18-CV-11681, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (quoting <u>United States v. Sanders</u>, 211 F.3d 711, 720 (2d Cir. 2000)).

A district court has broad latitude to determine the scope of discovery and to manage the discovery process.'"  <u>Tromblee v. The State of New York, et al.</u>, No. 1:19-CV-638(BKS/CFH), 2022 WL 2818222, at *2 (N.D.N.Y. July 19, 2022) (quoting <u>EM Ltd. v. Republic of Argentina</u>, 695 F.3d 201, 207 (2d Cir. 2012) (additional citation omitted)).

---

[2] Northern District of New York Local Rule 7.1(a)(2) provides that a party must seek leave of the Court to file a reply in a nondispositive motion and advises that "[p]ermission to fil a reply does not exist simply because CM/ECF generates a deadline for a reply on a non-dispositive motion."  N.D.N.Y. L.R. 7.1(a)(2). Further, "when leave of the court is granted, reply briefs may not exceed 10 pages in length."  CRC did not seek leave of the Court to file the reply.  <u>Id.</u>  The Court recognizes that it set a deadline for a reply; thus, it will be deemed as having granted such leave.  <u>See</u> Dkt. No. 105.  However, exceeds the page limitations.  Exclusive of the caption and table of contents, is 16 pages in length.  <u>See</u> Dkt. No. 144. Thus, CRC has violated the local rules.  Although the Court, in its discretion, declines to strike the reply or limit review to the first ten pages, CRC is advised that on any future nondispositive motion, if leave is granted to file a reply, such reply must not be greater than ten pages in length.  Any future violation of this rule will result in any page beyond the tenth to be considered a nullity.

"Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'" Id. (quoting Harris v. Bronx Parent Hous. Network, Inc., No. 18-CV-11681, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (additional citation omitted)).

## B. Attorney-Client Privilege

The attorney-client privilege "enable[s] attorneys to give informed legal advice to clients" and "protects communications between a client and its attorney that are intended to be, and in fact were, kept confidential." Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015). This Court has held that communications are deemed confidential if:

> (1) . . . legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communication relates to that purpose, (4) made in confidence, (5) by the client, and (6) are at his or her insistence permanently protected, (7) from disclosure by the client or the legal advisor, (8) except if the protection is waived.

Trudeau v. New York State Consumer Protection Bd., 237 F.R.D. 325, 335-36 (N.D.N.Y. 2006) (citing United States v. Int'l Bd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997)) and (In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 (2d Cir. 1984)); see also Mejia, 655 F.3d at 132. The privilege protects the attorney's advice to the client and the information communicated by the client that provides a basis for giving advice. See Upjohn Co., 449 U.S. at 390, 101 S.Ct. 677; In re Six Grand Jury Witnesses, 979 F.2d 939, 943-44 (2d Cir. 1992); Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 554 (S.D.N.Y. 2013). "But since the privilege stands in derogation of the public's right to every man's evidence, . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000). The burden of proving the existence of the privilege rests with the party asserting the privilege. See Mejia, 655 F.3d at 132; In re Grand Jury Subpoena Dated July 6, 2005, 256 F. App'x 379, 382 (2d Cir. 2007) (summary order). Thus, "[t]he party asserting the privilege must establish the essential elements of the privilege." United States v. Constr. Prod. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996) (citations omitted). "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd 29 F. Supp. 3d 142 (E.D.N.Y. 2014) (citing Scholtisek v. Eldre Corp., 441 F. Supp. 2d 459, 462 (W.D.N.Y. 2006) (additional citations omitted)).

Farrell v. United States Olympic & Paralym[p]ic Comm., No. 1:20-CV-01178 (FJS/CFH), 2023 WL 4033290, at *5–6 (N.D.N.Y. June 15, 2023)  (quoting Nat'l Rifle Ass'n of Am. v. Cuomo, 332 F.R.D. 420, 437 (N.D.N.Y. 2019)).  "The attorney-client privilege is generally waived 'by voluntary disclosure of the [privileged] communication to another party.'" Id. at *6 (quoting Loguidice v. McTiernan, No. 1:14-CV-1323 (TJM/CFH), 2018 WL 4011584, at *5 (N.D.N.Y. Aug. 22, 2018)).

"It is . . . well established that the party invoking a privilege bears the burden of establishing its applicability to the case at hand." In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003).

### C. **Attorney Work Product**

As this Court has set forth:

> The attorney work product doctrine "shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995) (quoting Fed. R. Civ. P. 26(b)(3)); accord Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, 171 F. Supp. 3d 136, 141 (S.D.N.Y. 2016). Although a document "'need not be prepared primarily or exclusively to assist at trial in order to be prepared 'in anticipation of litigation . . . . , more than a remote possibility of litigation must be shown." United States ex rel. Rubar v. Hayner Hoyt Corp., No. 5:14-CV-830 (GLS/CFH), 2018 WL 5811427, at *3 (N.D.N.Y. Nov. 5, 2018) (internal citations and quotation marks omitted).

Farrell, 2023 WL 4033290, at *6.  "In order 'to assert privilege under the attorney work product doctrine, [a party] must be able to show that [a] document[ ][was] prepared (1) in anticipation of litigation (2) by a party or its representative and (3) not in the ordinary course of business.'"  ICM Controls Corp. v. Honeywell Int'l, Inc., No. 5:12-CV91766 (LEK/ATB), 2020 WL 1819658, at *2 (N.D.N.Y. Apr. 10, 2020) (quoting Carpenter v. Churchville Greene Homeowner's Ass'n, No. 09-CV-6552T, 2011 WL

4

4711961, at *8 (W.D.N.Y. Sept. 29, 2011); FED. R. CIV. P. 26(b)(3) and citing U.S. v.

Construction Products Research, Inc., 73 F.3d at 473) (internal quotation marks

omitted).  Moreover,

> "The attorney-client privilege and the work product rule serve different
> objectives." Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 553
> (S.D.N.Y. 2013) (quoting Adlman, 134 F.3d at 1200 n.4). "The work
> product doctrine is distinct from and broader than the attorney-client
> privilege." United States v. Nobles, 422 U.S. 225, 238 n.11 (1975) (citing
> Hickman v. Taylor, 329 U.S. 495, 508 (1947)); see generally Spectrum
> Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 380, 581 N.E.2d 1055,
> 1061 (1991) ("The prospect of litigation may be relevant to the subject of
> work product and trial preparation materials, but the attorney-client
> privilege is not tied to the contemplation of litigation. Legal advice is often
> sought, and rendered, precisely to avoid litigation, or facilitate compliance
> with the law, or simply to guide a client's course of conduct.") (internal
> citation omitted).

Farrell, 2023 WL 4033290, at *7.  "The party asserting the work-product privilege bears

the 'heavy burden of establishing its applicability.'"  United States ex rel. Rubar, 2018

WL 5811427, at *2 (quoting In re Grand Jury Subpoena Dated July 6, 2005, 510 F. 3d

180, 183 (2d Cir. 2007)).

> However, "[o]nce a party establishes that its document is protected by the
> work-product privilege, the burden shifts to the party seeking discovery to
> prove that discovery is warranted." NL Industries, Inc. v. ACF Indust. LLC,
> No. 10-CV-89W, 2015 WL 4066884, at *5 (W.D.N.Y. July 2, 2015). "Even
> where the applicability of the work product doctrine has been established,
> factual material may be ordered produced 'upon a showing of substantial
> need and inability to obtain the equivalent without undue hardship.'"
> Garnier v. Illinois Tool Works, Inc., No. 04-CV-1825 (NGG)(KAM), 2006
> WL 1211201, at *2 (E.D.N.Y. May 4, 2006) (quoting Upjohn Co. v. United
> States, 449 U.S. 383, 400 (1981)) (quoting In re Omeprazole Patent Litig.,
> No. M-21-81, 2005 WL 818821, at *9 (S.D.N.Y. Feb. 18, 2005)); In re
> Grand Jury Proceedings, 219 F.3d 175, 190-191 (2d Cir. 2000) ("A party
> seeking discovery of attorney work-product must show "substantial need,"
> for fact work-product. As for work-product that shows 'mental impressions,
> conclusions, opinions, or legal theories of an attorney, . . . at a minimum
> such material is to be protected unless a highly persuasive showing [of
> need] is made.") (internal citations and quotation marks omitted).
> However, "opinion work product" "enjoys 'near absolute immunity.'"  Foti v.

City of Jamestown Bd. of Public Utilities, 10CV575A, 2014 WL 3842376, at *3 (W.D.N.Y. Aug. 5, 2014). "[T]he privilege derived from the work product doctrine is not absolute[,] . . . it may be waived.' " Foti, 2014 WL 384376, at *3 (quoting United States v. Nobles, 422 U.S. 225, 238-39) (1975). "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd, 29 F. Supp.3d 142 (E.D.N.Y. 2014) (citing Scholtisek v. Eldre Corp., 441 F. Supp. 2d 459, 462 (W.D.N.Y. 2006) (additional citations omitted)).

United States ex rel. Rubar, 2018 WL 5811427, at *2.


## II.  **Arguments**

### A.  **Background**

Plaintiff withholds, on the bases of attorney-client privilege, attorney-work product, and material prepared in anticipation of litigation, 75 documents/communications items.  See Dkt. No. 97-5.  Plaintiff also redacted portions of three e-mail communications involving Ms. Heinzen.  See Dkt. No. 97-4.  These communications were redacted on various grounds.  The first e-mail[3] was redacted on the basis of attorney-client privilege, the second on the bases of attorney-work product and "personal information (non-responsive)," and the third e-mail on the bases of attorney work product and "personal information (non-responsive)."  Id.

### B.  **Defendants' Arguments**

---

[3]   The redaction log provides that the author of log entry R1 is Edan Rotenberg, the recipient is Barbara Heinzen, and "copied" on the e-mail are Christian Falk, Ben Pierce, Julie Muench, Richard Webster, Victoria Leung, Todd Ommen, and Makayla Loeb.  Dkt. No. 97-4 at 2.  For redaction log entry R2, the authors are listed as Victoria Leung and Barbara Heinzen and the recipient is Eric Remillard.  See id.  For redaction log R3, the authors are listed as Victoria Leung and Barbara Heinzen and the recipient is Eric Remillard.  See id.

CRC argues[4] that plaintiff is improperly asserting the attorney-client and attorney-work product privileges over communications and documents involving a nonparty, Barbara Heinzen.  See Dkt. No. 97-13 at 6-14.  CRC asserts that Ms. Heinzen is not a client of the Super Law Group – the firm representing plaintiff – or of plaintiff's in-house counsel.  See id. at 9.  CRC further argues that she is not an employee, officer, or owner of Riverkeeper, and instead "identifies herself as being associated with the 'Clean Air Coalition of Greater Ravena-Coeymans', with Riverkeeper Inc. identifying itself as a separate and distinct entity in that matter."  Id. at 9, 11.  CRC provides that Ms. Heinzen "does not appear to be a legal member of the Plaintiff under the New York State Not-For-Profit Corporation Law."  Id. at 11.  CRC contends that Ms. Heinzen is a "member" of plaintiff Riverkeeper, but observes that plaintiff's website states that anyone can become a "member" by making a financial donation, but there is no mention of any membership benefits that "remotely involve[] ownership or control over Plaintiff or its operations, and no unilateral decision-making authority for Plaintiff's operations."  Id. at 13.  CRC also observes that Ms. Heinzen signed correspondence with the New York State Department of Environmental Conservation on behalf of the Clean Air Coalition, with someone else signing on behalf of Riverkeeper.  See id. at 14.  Because Ms. Heinzen "is clearly only a donor to Plaintiff," as she was not identified as a client in the

---

[4]   CRC also sought to compel Riverkeeper to produce the "names and contact information of alleged witnesses that were identifying or otherwise observed alleged events raised by Riverkeeper by its attorneys, The Super Law Group, LLC and its letter dated January 19, 2022 concerning trucks traveling with salt and alleged washing of spilled salt in roadways at the Industrial Park."  Dkt. No. 97-1.  However, in their reply, CRC "withdraws that portion of the Motion to Compel that was seeking names/contact information specifically related to an alleged salt truck incident as raised in the letter from The Super Law Group, LLC dated January 19, 2022," contending that plaintiff's opposition papers identify "the identity of the single alleged witness to the alleged salt truck events . . . and Plaintiff's counsel stating under oath that there are no other witnesses to the alleged event" "resolve[s] the matter."  Dkt. No. 114 at 6-7.  Thus, the Court accepts the withdrawal of this issue, and this Memorandum-Decision and Order will focus only on the matters relating to Ms. Barbara Heinzen.

retainer agreement, nor was she ever identified as an officer, owner, director, or employee of plaintiff, CRC argues that the attorney-client and work-product privileges do not apply to Ms. Heinzen.  Id.

## C.  **Plaintiff's Arguments**

Plaintiff first argues that Ms. Heinzen is a client representative of Riverkeeper, and, thus, her communications are protected by the attorney-client privilege.  See Dkt. No. 107 at 13.  Plaintiff contends that Ms. Heinzen is "a particularly important member" of Riverkeeper insofar as she

> is the representative of the Riverkeeper membership who provided an affidavit to establish her individual standing, in opposition to Defendants' motion to dismiss, and who is prepared to testify to her individuals standing at trial, so that Riverkeeper can establish associational standing to bring a suit in federal court on behalf of its members.

Id. at 14.  Plaintiff contends that only a member, like Ms. Heinzen, can be the client's representative to Riverkeeper's attorneys and to the Court in this Capacity."  Id.  Plaintiff avers that Ms. Heinzen's "participation as a representative of the membership and her agreement to communicate with Riverkeeper's counsel on standing matters is foundational to this action."  Id. at 14-15.  Plaintiff asserts that Ms. Heinzen has provided counsel with "information needed by Riverkeeper's attorneys to prosecute this action; has been an active participant in the development of Riverkeeper's investigation and legal strategy; and has played a central role, along with Riverkeeper's staff, in the organization's decision making in this case."  Id. at 15.

Plaintiff points to case law that it contends supports the idea that communications of "paid and unpaid organizational affiliates" with attorneys are protected "where communications involve non-employees that are intimately involved in litigation –

especially where the non-employee possesses important information needed by the attorney to represent the organization effectively."  Dkt. No. 107 at 16.  Plaintiff contends that Ms. Heinzen is a "key member of the litigation team at all stages of this matter and has been included on communications intended and kept confidential"; thus, she is "'an insider' for the purpose of the attorney-client privilege."  Id. at 17.

Plaintiff alternatively argues that Ms. Heinzen's communications with counsel are otherwise protected by the common-interest rule because she and Riverkeeper "share[] a common legal goal[,]" and she "worked with Riverkeeper to formulate a common legal strategy[.]"  Dkt. No. 107 at 17.  Plaintiff points to Ms. Heinzen's "active roles in the litigation as a standing witness, investigator, advisor, and local liaison for Riverkeeper."  Id. at 18.

Next, plaintiff proposes that Ms. Heinzen is an agent or consultant of plaintiff.  See Dkt. No. 107 at 18.  Plaintiff contends that she is a "necessary party" in obtaining legal advice insofar as that she served a "specialized and indispensable purpose."  Id. at 19.  Specifically, Ms. Heinzen "possesses a unique and detailed understanding of site specific facts and history that informs Riverkeeper's understanding of the legal merits of this case"; possesses a necessary perspective, as a local resident and advocate for the Coeymans Creek-Hannacroix watershed, on the outcomes and impacts of potential remedies for Defendants' pollution"; and plaintiff considers Ms. Heinzen's views "to be an important input" when "formulating its legal strategy and settlement position."  Id.

Plaintiff next asserts that "[m]ost of the communications involving Ms. Heinzen are also protected under the work product doctrine" as they were prepared in anticipation of litigation.  Dkt. No. 107 at 19.  First, plaintiff contends that Ms. Heinzen is

a "fact investigator"; thus, her investigations, done "at the direction of counsel and in her capacity as a member of Riverkeeper," are covered by the work product privilege.  Id. at 21.  Plaintiff contends that Ms. Heinzen also "recruited" a drone operator "to assist in a factual investigation that proved certain of Defendants' representations made in settlement negotiations were false, and Super Law Group later retained that drone operator.  See id.  Plaintiff notes that Ms. Heinzen "recruited" Mr. Remillard to observe and report on salt transport at the industrial park after Super Law Group asked her to do this and she was unavailable.  Id.   Plaintiff again points out that Ms. Heinzen has agreed to testify as to associational standing.  See id.  Thus, plaintiff avers, that Ms. Heinzen's communications are prepared in anticipation of litigation because "she has served as Riverkeeper's representative in litigation and acted at the explicit direction of Riverkeeper's counsel as part of Riverkeeper's litigation team."  Id.  Second, plaintiff urges the Court to follow "Montesa and similar cases" that apply work-product protections to "volunteer 'consultants' and 'investigators' relied upon in developing factual background for a case."  Id. at 22.  Plaintiff also appears to argue, independently from the attorney-client privilege argument, that documents involving Ms. Heinzen can be properly withheld as prepared in anticipation of litigation.  See id. at 19; Dkt. No. 97-5.

Lastly, plaintiff contends that the motion should be rejected pursuant to the Local Rules because CRC failed to meet and confer, resulting in many factual errors and matters placed before the Court that could have been "narrow[ed] or eliminate[d]."  Dkt. No. 107 at 25.  Plaintiff avers that Riverkeeper failed to "fully explain the legal basis or their factual concerns underlying their objection."  Id. at 25-26.  Plaintiff argues that CRC

"made little to no effort" to "investigate" or "reach out" to Riverkeeper about their concerns about "the claims that Barbara Heinzen was a proper member of Riverkeeper, a witness, or an investigator."  Id.  Plaintiff contends that its understanding of CRC's objections to plaintiff's claims of privilege with respect to Ms. Heinzen, prior to the filing of CRC's instant motion, was "based only on the erroneous legal argument that attorney-client privilege applies only to individual clients and officers or employees of corporations[.]"  Id. at 27.  Plaintiff further argues that CRC "did not provide a basis to dispute" plaintiff's claim of attorney work product privilege over communications with Ms. Heinzen before filing this motion.  Id.  Plaintiff points out the following "errors" in CRC's motion (1) that Ms. Heinzen is not a fact witness or legal member of Riverkeeper; (2) claiming that Riverkeeper is attempting to assert a privilege over Riverkeeper's communications with all of its members, rather than just Ms. Heinzen.  Id. at 27-29.

Plaintiff requests attorney's fees associated with opposing this motion, pursuant to Fed. R. Civ. P. 37(a)(5)(b), contending that it was not substantially justified because, as relevant here, plaintiff's assertion of privilege is "wholly justified under the law," whereas CRC "make no substantially justified argument otherwise" and "repeatedly mischaracterize Riverkeeper's assertion of privilege in making their motion." Dkt. No. 107 at 29-30.

In reply, CRC reiterates its argument that neither plaintiff's counsel in this litigation nor its in-house counsel "assert that Ms. Heinzen is an actual client of theirs and no one has produced any attorney-client retainer or agreement otherwise demonstrating that Ms. Heinzen is under an attorney-client relationship with any Plaintiff

associated lawyer related to this matter." Dkt. No. 114 at 7-9.  CRC further denounces

plaintiff's failure to provide "factual information" to demonstrate that Ms. Heinzen has

"any control or direction" over this action or over Riverkeeper, and, thus, is not a client

or client representative.  Id. at 7-8.  As to plaintiff's argument that Ms. Heinzen is an

agent or consultant to Riverkeeper, CRC argues that plaintiff did not produce

"documentation" to support Ms. Heinzen being "actually retained as a consultant nor

that she possesses any formal education or experience in any particular field regarding

the issues raised in Plaintiff's Complaint."  Id. at 7, 12-13.  CRC contends that plaintiff's

filings suggest her involvement is based upon her "alleged personal knowledge about

CRC and its operations," which CRC decries as "speculative."  Id. at 7.  CRC also

contends that, despite plaintiff asserting that Ms. Heinzen is a fact witness, (1) the

complaint is "clearly based upon publicly available documents and CRC documents . . .

, not factual testimony from Ms. Heinzen"; and

(2) she "cannot be a fact witness to alleged storm water operations at the Park or

alleged violations as she is not an office [sic] or employee of CRC and does not work at

the Park nor has legal access to the Park to observe Park operations.  Any information

she may have is from reading documents or from observations from outside the Park.

No affidavit is offered . . . from Ms. Heinzen to demonstrate what Park operations she

has personal knowledge of or what her factual knowledge may be[.]"  Id. at 19-20.

        To the extent plaintiff argues that Ms. Heinzen is a client representative of

Riverkeeper, CRC argues that her status as a "donor member" or that she was relied

upon to demonstrate standing in this case "ignore[s] controlling law as to the standards

for creating an attorney-client relationship[.]"  Dkt. No. 114 at 10.  Addressing plaintiff's

argument that the common interest rule applies, CRC contends that plaintiff "mischaracterizes" this rule, as it is "sophisticated enough," "knowledgeable enough," and "experienced enough to bring this Clean Water Act Citizen's Suit and articulate its factual and legal claims without Ms. Heinzen." Id. at 13, 14-15 (citing Bulgari v. Bulgari, 649 F. Supp. 3d 8, 12 (S.D.N.Y. 2023)).  CRC argues that Ms. Heinzen "is not shown to be providing any actual factual information to support Riverkeeper's allegations in the Complaint," rather, is "only a fact witness and used for standing purposes." Id. at 15. Although, CRC argues, Ms. Heinzen may be "useful and convenient," case law requires more. Id.

As for attorney work product, CRC similarly contends that that this doctrine does not apply to material shared with Ms. Heinzen because there is no "document or evidence from Riverkeeper" to show Ms. Heinzen "actually entering into any formal agency agreement with Riverkeeper." Dkt. No. 114 at 16.  CRC also disputes plaintiff's description of Ms. Heinzen as a "fact investigator," because plaintiff states only that Ms. Heinzen "gave Riverkeeper names of a possible drone operator that was formally retained by The Super Law Group, LLC, and talked to another individual to obtain some information that was given to Ms. Heinzen from looking at the Industrial Park from the road outside of the park." Id.  Absent proof that plaintiff "creat[ed] a legal relationship for an agency as to Heinzen," CRC argues plaintiff has not demonstrated that she is an agent, and the protections do not apply. See id.  Regarding material prepared in anticipation of litigation, CRC similarly contends that plaintiff did not meet its burden of proving privilege with respect to e-mails involving Ms. Heinzen. See dkt. no. 114 at 18.

Finally, CRC rejects plaintiff's contention that CRC did not meet-and-confer or fully explain their concerns and grounds for objecting to the privilege claims involving Ms. Heinzen.  See Dkt. No. 114 at 18.  CRC also contends that plaintiff cherry picks statements from its papers in contending that CRC's motion is factually inaccurate.  See id. at 19.  CRC avers that plaintiff attempts to shift its burden to defendants.  See id. Finally, it contends that Ms. Heinzen's ability to "cast a ballot for board of directors on an annual basis" does not make plaintiff anything beyond a "donor-member," as "one of likely thousands of donors" with such rights, and "has no other membership rights that would give her control or direction over Riverkeeper as a corporation for purposes of justifying any claim for attorney-client privilege."  Id.

### III.  Discussion
#### A. Client Representative

As a threshold matter, insofar as plaintiff cites to case law about unincorporated associations, the Court agrees with CRC that such case law is irrelevant, as Riverkeeper does not contend that it is an unincorporated association nor explain how such rationale applies.  See Dkt. No. 107 at 15; dkt. no. 114 at 11.

Plaintiff argues that Ms. Heinzen, as "client representative," should be covered by the attorney-client privilege.  Dkt. No. 107 at 14-17.  The Court disagrees.  Plaintiff asserts that plaintiff is a "particularly important" member of Riverkeeper insofar as she provided an affidavit "to establish her individual standing" and is "prepared to testify" as to that matter at trial.  Id. at 14.  Plaintiff further points to Ms. Heinzen's role in the litigation by being an "active participant in the development of Riverkeeper's investigation and legal strategy," and "played a central role, along with Riverkeeper's

staff, in the organization's decision making in this case." Id.  Plaintiff contends that Ms. Heinzen has provided information needed by Riverkeeper's attorneys to prosecute this action; has been an active participant in the development of Riverkeeper's investigation and legal strategy; and has played a central role, along with Riverkeeper's staff, in the organizations decision making in this case." Id. at 15 (citing Leung Decl. [dkt. no. 107-5], Rotenberg Decl. [dkt. no. 107-3], Muench Decl. [dkt. no. 107-1]).

The Court has closely reviewed these declarations.  Mr. Rotenberg's declaration contends that Riverkeeper "expressed its desire" that the Super Law Group "work closely with Ms. Heinzen, as she was a local community member and a Riverkeeper member knowledgeable about the environmental concerns surrounding development of the Port of Coeymans and Coeymans Industrial Park."  Dkt. No. 107-2 at 2 ¶5.  Mr. Rotenberg further declares that Ms. Heinzen "was the principal Riverkeeper contact on the ground" during her May 2019 "reconnaissance site visit of the area surrounding Coeymans Industrial Park."  Id. at 2 ¶7.  Mr. Rotenberg states that Ms. Heinzen was "included in all discussions, factual, legal, and strategic because her knowledge of the site was important for us to effectively represent Riverkeeper." Id.  Mr. Rotenberg further contends that the "first correspondence" between Riverkeeper and the Super Law Group "included information provided by Barbara Heinzen[.]" Dkt. No. 107-4 at 1 ¶4.  Mr. Rotenberg provides that Ms. Heinzen "has been treated as a member of Riverkeeper's litigation team from the very first stages of the investigation," insofar as she "completed tasks at the direction of the legal team varying from arranging the details of the initial reconnaissance visit, to providing up-to-date observations of the Park and surrounding area, to liaising with local witnesses on behalf of the legal team."

Id. at 2-3 ¶ 8.  Mr. Rotenberg states further that Ms. Heinzen has "attended periodic calls and acted as one of Riverkeeper's representatives in connection with the litigation, providing input on factual issues in legal briefs and assisting Riverkeeper to formulate its litigation and settlement positions."  Id. at 3 ¶9.

Mr. Rotenberg next declares that Riverkeeper intends to have Ms. Heinzen testify on behalf of Riverkeeper on issues of standing and "to offer her personal observations of site history and current conditions."  Dkt. No. 107-4 at 2-3 ¶8.  Mr. Rotenberg contends that his law firm's "representation of Riverkeeper includes preparing its witnesses for deposition and testimony, as well as defending those depositions and testimonies.  Super Law Group will do that for Ms. Heinzen and any other Riverkeeper witness in this case."  Id. at 3 ¶11.  Further, he contends that Ms. Heinzen communicated with plaintiff's counsel "in manner intended to create and maintain confidentiality."  Id.; see also dkt. no. 107-4 at 3 ¶ 10.

Ms. Leung, a Staff Attorney at Riverkeeper, Inc., and "lead in-house counsel" provides, that she is seeking to assert the attorney-client privilege over "communications between Riverkeeper's legal team and . . . Barbara Heinzen, as well as over communications between Ms. Heinzen and people that she contacted under the direction of Riverkeeper's legal team in order to advance the litigation."  Dkt. No. 107-5 at 1-2, ¶¶ 1-2, 5.  Ms. Leung asserts that Ms. Heinzen is a "member of Riverkeeper with voting rights to elect Riverkeeper Directors."  Id. at 2 ¶6.  Ms. Leung further describes Ms. Heinzen as "a local liaison, researcher, point of contact with other witnesses" who "generally assit[ed] Riverkeeper's attorneys in prosecuting this action," and "provide[d] input and a local member's perspective on settlement efforts."  Id.

Ms. Leung contends that Ms. Heinzen has "extensive familiarity with the site's history, the site's current conditions, and the impacts of Defendants'' pollution on the local ecosystem." Dkt. No. 107-5 at 3. Ms. Leung describes Ms. Heinzen as having an "unusual" "level of interest in the case," "routinely request[ing] updates from the team." Id. It is due to Ms. Heinzen's "extensive knowledge and interest," that Riverkeeper's attorneys decided to "consult[] with and include[]" Ms. Heinzen "in the investigation and relied on her help to advance the legal team's investigation." Id.

Nothing about plaintiff's description of Ms. Heinzen and her role in this case, including the statements within the attorney declarations, has demonstrated that Ms. Heinzen is a "client representative" such that the attorney-client privilege should apply to all her communications with counsel for Riverkeeper or in-house counsel. An "unusual" level of interest, regularly seeking updates from the legal team, having a passion and interest in the impacts of the alleged pollution on the local ecosystem, and a desire for plaintiff to be victorious in this litigation, does not put Ms. Heinzen at any heightened status under legal precedent. Dkt. No. 107-5 at 3. Although Ms. Heinzen's assistance may be convenient, cost-cutting, beneficial, or helpful to counsel, plaintiff does not explain how, if at all, Ms. Heinzen's knowledge or interest amounts to specialized knowledge or skills that none of the staff or officers of Riverkeeper possess. Indeed, although Ms. Heinzen arranged a site visit, put counsel in contact with witnesses, shared knowledge about the industrial park, and shared her perspective as a member of the local community, plaintiff does not argue or suggest no other member of Riverkeeper could have made such arrangements or observations or that the tasks she completed to assist Riverkeeper or the litigation were essential for he communication

between Riverkeeper and counsel or unique.  It appears that Ms. Heinzen offered a helpful hand by providing practical assistance and making arrangements, and offering input as a local resident and Riverkeeper member with a passion for the subject, and perhaps her assistance resulted in cost saving and convenience.[5]  As CRC points out, if Ms. Heinzen's "knowledge" of the industrial park, its "history," and "current conditions," and is presumably information gathered from public viewpoints and information from public documents.  Plaintiff does not explain how or why this knowledge is unique to Ms. Heinzen.  Plaintiff does not detail any specialized education, experience, or knowledge Ms. Heinzen has beyond having a heightened level of interest and passion in the subject matter.

That Ms. Heinzen's membership, through a contribution of $50 or more, gives her voting rights for electing the "Directors of the Board at Riverkeeper's Annual Membership Meeting," does not require a contrary result.  Dkt. No. 107-5 at 2 ¶9.  Riverkeeper provides that such rights are offered to anyone who donates $50 or more to Riverkeeper.  See id.; Dkt. No. 107-6 at 2 (stating that membership is "open to all persons over the age of eighteen interested in advancing the purposes of the Corporation" and that membership "will continue for the year for which membership dues will have been paid").  Thus, being a member with voting rights is neither a limited or unique role.  Accordingly, Ms. Heinzen's status as an active member of Riverkeeper with voting rights, alone, does not tip the scales in favor of Ms. Heinzen being a "client representative" of Riverkeeper entitled to an attachment of the attorney-client privilege.

---

[5] To the extent Mr. Rotenberg's and Ms. Leung's declarations refers to preparing witnesses for trial and depositions, such comment is little more than a red herring because plaintiff is not offering Ms. Heinzen as a witness in opposition to this motion, but, rather, the client itself or a representation thereof.  Dkt. Nos. 107-5 at 4-5 ¶22.

Ultimately, that Ms. Heinzen is an involved, motivated, or active member of Riverkeeper and the community and is passionate about the underlying environmental matters of the case – even if she is the <u>most</u> interested, passionate and/or involved member, dkt. no. 107-5 at 4 ¶19 – does not demonstrate that she is a client/client representative.  Plaintiff does not contend that no staff or officer of Riverkeeper (or any other "member" of Riverkeeper) would lack such knowledge or be unable to make such determinations about settlement or strategy.  Accordingly, plaintiff has failed to demonstrate that Ms. Heinzen is the client representative such that the attorney-client privilege applies to her communications with counsel.

B. **"Agent of Riverkeeper to facilitate attorney-client communications"**[6]

Plaintiff similarly – and at points, nearly indistinguishably to the above argument – contends that, if the Court finds Ms. Heinzen is not a client representative, she should be found to be an agent of Riverkeeper.  <u>See</u> Dkt. No. 107 at 18-19.  Insofar as plaintiff argues that Ms. Heinzen is an agent, consultant, or "organizational affiliate," the Court agrees that the cases plaintiff cites are not on point for the reasons set forth in CRC's reply.  Dkt. No. 107 at 14-17; Dkt. No. 114 at 12-15.  Although Ms. Heinzen may be helpful to Riverkeeper and its counsel, plaintiff has failed to show she has truly specialized knowledge.  Further, in many of the cases plaintiff cites – as CRC highlights – the "consultant" is not comparable to the role plaintiff alleges that Ms. Heinzen filled.  For example, in a string cite including otherwise out-of-circuit cases, plaintiff includes a citation to <u>NXIVM Corp. v. O'Hara</u>, 241 F.R.D. 109, 139 (N.D.N.Y. 2007), as an example of a privilege not being waived when attorney-client privileged matters were disclosed to

---

[6] Dkt. No, 107 at 8.

an "unpaid volunteer consultant."[7]  Dkt. No. 107 at 16. However, this case is factually

distinguishable.  In NXIVM Corp. v. O'Hara, 241 F.R.D. 109, 139 (N.D.N.Y. 2007), the

Court observed that the individual in question was described by the plaintiff organization

as a "full time, unpaid volunteer."  However, the Court observed that the individual held

a "lofty role, advised on "all aspects of its business," was "privy to all of the matters

including litigation, that NXIVM's employers and agents would know, and would be

consulted regularly about them," and is "more than a volunteer or titular advisor of

NXIVM, he is the supreme authority of all things NXIVM, "not some mere or informal

advisor,' but "the quintessential insider of this business on every aspect confronting it."

Id. at 139.  Ms. Heinzen role within Riverkeeper is not comparable to the role described

of the "full time, unpaid volunteer" in NXIVM Corp. v. O'Hara.

Plaintiff cites several other cases, contending that they show that

communications with "paid or unpaid organizational affiliates where communications

involve non-employees that are intimately involved in litigation" are privileged.  Dkt. No.

107 at 16-30.  However, there are also significant distinctions between the consultants

highlighted in these cases and Ms. Heinzen.  The cases note that the the organizations

were relying on the consultant for specialized knowledge.  Although this Court would not

go so far as to saying an individual such as Ms. Heinzen could never serve as a

consultant, plaintiff has not demonstrated that she was engaged in such capacity, that

she was "completely intertwined" with Riverkeeper's legal strategies – indeed, they have

mentioned only that she served as a representation of Riverkeeper's members for

purpose of proving standing.  Dkt. No. 107 at 16 (quoting FTC v. GlaxoSmithKline, 294

---

[7]  In this case, the question was waiver of the attorney-client and attorney work product privilege.  See
NXIVM Corp., 241 F.R.D. at 139.

F.3d 141, 148 (D.C. Cir. 2002)).  Riverkeeper has not shown that serving as a standing witness renders one a consultant for purposes of the attorney-client privilege.

Next, plaintiff cites Bulgari v. Bulgari to support its argument that, as a "necessary agent" of plaintiff, Ms. Heinzen's presence in attorney-client conversations does not waive the privilege.  Dkt. No. 107 at 18.  There, the Court assessed whether the plaintiff's use of a consultant breached the attorney-client privilege.  In so assessing, the Court observed that "what matters is whether [the consultant] was necessary to facilitate the advice of counsel provided to [the plaintiff] in connection with the trust issues and whether she maintained a reasonable expectation of confidentiality with [the consultant] being included in the discussions."  Bulgari v. Bulgari, 649 F. Supp. 3d 8, 12 (S.D.N.Y. 2023); see also id. at 11 (quoting United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999)) ("In [United States v. ]Kovel, [296 F.2d 918, 922 (2d Cir. 1961)] the Second Circuit 'recognized that the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client.'"); Dkt. No. 107 at 18-19.

In the cases on which Bulgari relies, the common thread is that the third party was a necessary conduit through which legal advice needed to be delivered in order to be effectively communicated to the plaintiff or for matters to be effectively communicated from the plaintiff to the attorney.  See Bulgari, 649 F. Supp.3d at 12 (citing cases).[8]  Similarly, although plaintiff cites Montesa largely for her arguments

---

[8]  The Bulgari court cites the following cases:
    Stroh v. General Motors Corp, See, e.g., Oxyn Telecommunications, 2003 WL 660848 at
    * 3 (privilege preserved where business executive and attorney from third-party corporate
    entity helped "maximize the effectiveness of [the parties'] attorney-client communications"

relating to attorney work product, dkt. no. 107 at 22, that case is perhaps more instructive for its review of whether the attorney-client privilege should apply to communications with nonparties.  In reviewing whether various persons could be considered an "agent" or "consultant' of counsel, and protected by the attorney-client privilege, the Montesa court noted, that, although not required, "courts have looked to contemporaneous documentary proof, such as retainer agreements and billing statements, or the absence thereof, in determining the nature of the third party's engagement with counsel."  Montesa, 2016 WL 3476431, at *5 (citing United States v. Aldman, 68 F.2d 1495, 1500 (2d Cir. 1995)).

The Montesa court rejected an argument that communications between counsel for plaintiff and a third-party, Michael Castelluccio, were protected by the attorney-client privilege, determining there was no assertion that he "has been engaged as a consultant or investigator for Plaintiffs' counsel, or that Mr. Castelluccio is in any way engaged as an agent of counsel."  Montesa, 2016 WL 3476431, at *5.  The court similarly rejected several claims relating to applying attorney-client privilege to third

---

and whose presence was "intended and expected to enhance communications" across two different cultures); Stroh v. General Motors Corp., 213 A.D.2d 267, 268, 623 N.Y.S.2d 873, 874 (1st Dep't 1995) (privilege preserved where daughter selected law firm for injured mother, drove her to the law office, and "put her sufficiently at ease to communicate effectively with counsel" about "what was probably the most traumatic experience of her life"); St. Louis v. Hrustich, 35 Misc.3d 1232(A), 953 N.Y.S.2d 554, 554, 2012 N.Y. Slip Op. 50982(U), 2012 WL 1958898, at *2 (Sup. Ct. Albany Cty. May 30, 2012) (unreported disposition) (privilege preserved where plaintiff's fiancé initially contacted attorney on plaintiff's behalf at a time when plaintiff was in great pain and could not care for herself, and later communicated with attorney alone or with plaintiff present on multiple occasions); Matter of Sosnow, 16 Misc.3d 1106(A), 841 N.Y.S.2d 826, 826, 2007 N.Y. Slip Op. 51316(U), 2007 WL 1893622, at *2 (Sup. Ct. Nassau Cty. June 21, 2007) (unreported disposition) (privilege preserved where husband of co-executrix participated in attorney-client discussions with estate counsel and was, as alleged, "familiar with the decedent's business enterprises and was thus able to provide information and advice to the executrix with respect to the instant claim").
Bulgari, 649 F. Supp.3d at 12

parties that the plaintiff actually claimed to be consultants because none of the "expertise" the plaintiff associated with the third parties involved "improve[ing] [sic] the comprehension of the communications between" the law firm and the plaintiff"; rather, "review of the contested communications in camera confirms that the role of these consultants/investigators has been to obtain and provide information about Defendant District and its board members that [the] Plaintiff . . . did not already have." Id. at *6. Thus, although the Montesa court's review of the communications between counsel and third parties made clear "that the third parties were assisting with the provision of legal advice and services,"

> their advice is based on their access to information about Defendant District, and not based on their interpretation of information communicated from Plaintiff White or other plaintiffs in the Montesa action. In some instances, the third parties provided information from FOIL, requests, which is a clear example of collecting information not obtainable from the client, a function to which the privilege does not attach. See United States Postal Service, 852 F. Supp. at 161-62. These communications are outside of the bounds of an attorney-client communication.

Montesa, 2016 WL 3476431, at *6.  The Court further concluded that the "[p]laintiffs have not met their burden of demonstrating that these third parties were investigating matters by seeking information from clients, or providing consultative advice based on information provided by clients."  Id.  Finally, the Court rejected plaintiff's argument that certain of the third parties were consultants because "Plaintiffs have failed to establish that these consultants worked under the supervision of counsel."  Id. at *6.  "Plaintiffs' counsel does not even assert that they had any sort of formal agreement with these third parties in which they would directly supervise their investigative or consultative functions."  Id.

By contrast, the <u>Montesa</u> court found otherwise where a third party was formally retained "to obtain information from various Plaintiffs in order to respond to interrogatories" and the plaintiffs provided proof of that engagement.  <u>Montesa</u>, 2016 WL 3456431, at *7 ("It is clear from these documents that Ms. Anderson was retained as an agent of counsel, who served as a go-between for AFJ and the myriad of Plaintiffs in this litigation, and whose communications were intended to remain confidential. As such, the attorney-client privilege protects the communications between Ms. Anderson and Plaintiff White over which Plaintiffs have claimed the privilege.").

Thus, the <u>Bulgari</u> and <u>Montesa</u> cases plaintiff cites actually provide that the relevant inquiry in determining whether a third party was acting as an agent of counsel for purposes of determining whether the attorney-client privilege applies is whether the third party was obtaining information from a client, thus, whether they were facilitating attorney-client communications, and when there is proof offered of a formal engagement of that third-party by the law firm.  <u>See Darling v. Papa John's Int'l, Inc.</u>, 16 Civ. 3592 (CS) (JCM), 2018 WL 557915, at *4 (S.D.N.Y. Jan. 24, 2018) ("The Second Circuit has clarified that the Kovel decision 'recognized that the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client.' [U.S. v.] Ackert, 169 F.3d [136,] 139-40 [2d Cir. 1999]. 'On the other hand, where an attorney seeks out a third party in order to obtain information that his client does not have, the third party's role is 'not as a translator or interpreter of client communications, [and] the principle of Kovel does not shield his discussions with [the attorney].'"  <u>Montesa</u>, 2016 WL 3476431, at *5)").

Although plaintiff asserts that Ms. Heinzen has specialized knowledge, it has not presented convincing proof of such knowledge such that her participation is necessary for effective communication between Riverkeeper and counsel.  Instead, plaintiff provides generalizations that demonstrate, at most, that Ms. Heinzen has been helpful to the litigation, but not that her assistance is unique or essential for communication between plaintiff and counsel.  See Dkt. No. 107 at 15 (stating that Ms. Heinzen "has provided information needed by Riverkeeper's attorneys to prosecute this action; has been an active participant in the development of Riverkeeper's investigation and legal strategy; and has played a central role, along with Riverkeeper's staff, in the organizations decision making in this case.").

Further, plaintiff provides no such proof of formal engagement of Ms. Heinzen. The assistance Ms. Heinzen provided to counsel for Riverkeeper was decidedly not to serve as a go-between for counsel and Riverkeeper to facilitate communications between the firm and the organization.  Rather, Ms. Heinzen's role, as described by plaintiff, is closer to those third parties who "collected information not obtainable from the client," to which Montesa held the privilege does not attach.  2016 WL 3476431, at *6.

In sum, the Court finds that plaintiff has failed to demonstrate that Ms. Heinzen is a client/client representative, agent, or consultant of Riverkeeper or its counsel; thus, it has not demonstrated applicability of the attorney-client privilege on this ground.

### C.  **Common Interest Rule**

Plaintiff alternatively contends that, should the Court conclude that it fails to demonstrate that Ms. Heinzen is a client representative or agent or consultant of Riverkeeper, the common interest rule shields Ms. Heinzen's communications with counsel from disclosure because she shares "a common legal goal and has worked with Riverkeeper to formulate a common legal strategy . . . ." See Dkt. No. 107 at 17.  More specifically, plaintiff contends that Ms. Heinzen has served "active roles" as "standing witness, investigator, advisor, and local liaison for Riverkeeper," and "cooperated" with Riverkeeper "in formulating a common legal strategy." Id. at 18.  Thus, plaintiff asserts, because plaintiff and Ms. Heinzen "have significant overlapping interest in the outcome of this litigation, share a clear and distinct 'common legal goal,' and have been in close coordination throughout this litigation," the common interest rule should apply.  Id.

The Court agrees with CRC that plaintiff has failed to demonstrate that the common interest rule applies to counsel's communications with Ms. Heinzen.  As this Court has repeatedly set forth:

> The joint defense agreement, or common-interest rule, is an extension of the attorney-client privilege which "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir.1989). The Second Circuit adheres to a strict interpretation of the common-interest rule such that "[o]nly those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected." Id.; see United States v. Weissman, 1996 WL 737042, at *9 (S.D.N.Y. Dec[.] 26, 1996) ("[T]he Second Circuit . . . is unwilling to infer a joint defense agreement from the simple circumstance of a general purpose meeting held to discuss matters of common interest.").

United States v. Salvagno, 306 F. Supp. 2d 258, 271 (N.D.N.Y. 2004).  Further,

> The party asserting the joint defense agreement always bears the burden of demonstrating its existence by establishing each element of the

attorney client privilege. <u>See</u> <u>id.</u> A claim resting on the common-interest rule requires a showing "'that the communication in question was given in confidence and that the client reasonably understood it to be so given.'" <u>United States v. Weissman</u>, 195 F.3d 96, 99 (2d Cir.1999) (quoting <u>Schwimmer</u>, 892 F.2d at 244).

<u>Salvagno</u>, 306 F. Supp. 2d at 271 (N.D.N.Y. 2004).

Here, plaintiff fails to show the applicability of the common interest/joint defense agreement to the instant matter.

In order for the common-interest privilege to apply, "'[t]here must be a substantial showing by parties attempting to invoke the protections of the privilege of the need for a common defense [as opposed to the mere existence of a] common problem.'" <u>Id.</u> (quoting <u>Finkelman v. Klaus</u>, 2007 WL 4303538, at *4 (N.Y.Sup.Ct. Nov. 28, 2007)) (bracketing in original).

<u>Fine v. ESPN, Inc.</u>, No. 5:12-CV-0836 (LEK/DEP), 2015 WL 3447690, at *12 (N.D.N.Y. May 28, 2015).

Plaintiff's argument essentially suggests that the common interest rule should apply to anyone who shares with a party a strong desire for a particular outcome of a lawsuit and has been involved in the litigation.  However, precedent is clear that is not the intent of the common interest or joint-defense privilege.  <u>See, e.g.</u>, <u>Fine</u>, 2015 WL 3447690, at *12 (citing <u>Egiazaryan v. Zalmayev</u>, 290 F.R.D. 421, 434 (S.D.N.Y. 2013) (finding that "a 'personal or business oriented' interest shared with another party is insufficient" to establish that the common-interest privilege applies").  "The common interest rule does not apply merely because two parties share the same attorney or because one party has an interest in a litigation involving another party.  Rather '[t]here must be a substantial showing by parties attempting to invoke the protections of the privilege of the need for a common defense as opposed to the mere existence of a common problem.'"  <u>Egiazaryan</u>, 290 F.R.D. at 434 (internal citation omitted).  Indeed,

rather than an inclusive and sweeping doctrine, that rule is narrowly interpreted.   "The intent behind this rule is "to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter[.]'"  Globalrock Networks, Inc. v. MCI Commc'ns Servs., Inc., No. 1:09-CV-1284 (MAD/RFT), 2012 WL 13028650, at *2 (N.D.N.Y. May 7, 2012) (internal citation omitted).  Such logic does not apply to the factual circumstances here.  Thus, the common-interest doctrine also called the joint defense rule, does not appear apply where one individual is not a party to this lawsuit or, to this Court's knowledge, any related lawsuits.  Egiazaryan, 290 F.R.D. at 434 ("BGR is not a party to any of [plaintiff] Egiazaryan's various lawsuits and thus has no need to develop a common litigation strategy in defending those lawsuits.  Indeed, it makes no suggestion that it had a need to do so.").

In sum, as this Court has concluded that plaintiff has not proven any valid basis to apply the attorney-client privilege in connection with communications with Ms. Heinzen, CRC's motion to compel is granted with respect to all communications withheld on that basis in connection with Ms. Heinzen.


D.  **Attorney Work-Product**

As a threshold matter, plaintiff's privilege log claims that some documents were prepared in anticipation of litigation, and makes such claims of privilege independently from claims that documents are protected attorney work product.  See, e.g., Dkt. No. 97-5 (log nos. 45, 48-49, 60-75); Dkt. No. 107-19.[9]  Although plaintiff notes a distinction

---

[9]  These log entries only privilege asserted is "material prepared in anticipation of litigation."  Dkt. No. 97-5.

in its privilege log and appears to attempt to separate out arguments through the headings in its brief, it offers no support for this distinction.  See Dkt. No. 107 at 19 (section "B" heading description and), 21 (subsection "B.1" heading description); Compare Dkt. No. 107 at 19-24 with Dkt. No. 97-5.  Indeed, within its brief, plaintiff argues that "[m]ost of the communications involving Ms. Heinzen are also protected under the work product doctrine" as they were prepared in anticipation of litigation.  Dkt. No. 107 at 19.  Plaintiff offers no support to show that material prepared in anticipation of litigation, without a demonstration that the document was also prepared by a party or its representative and not prepared in the ordinary course of business, is entitled to attorney work product protections.  See, e.g., Obeid v. Mack, No. 14 CIV 6498 (LTS/HBP), 2016 WL 7176653, at *4 (S.D.N.Y. Dec. 9, 2016) (quoting DeAngelis v. Corzine, 11 Civ. 7866 (VM)(JCF), 12 MD 2338, 2015 WL 585628 at *4 (S.D.N.Y. Feb. 9, 2015)).  Accordingly, to the extent plaintiff seeks to withhold documents solely upon the claim that it is material prepared in anticipation of litigation, without also claiming attorney work product privilege, CRC's motion to compel with respect to documents withheld as material prepared in anticipation of litigation is granted.[10]

The Court will next assess plaintiff's claims of attorney work product.  First, plaintiff contends that the withheld documents are material prepared in anticipation or protected by the attorney work product privilege because Ms. Heinzen is a "fact investigator"; thus, her investigations, done "at the direction of counsel and in her

---

[10]  Although it is reason enough alone to deny these claims of privilege for having no basis in the law, the Court also notes that the Court is entirely unable to assess whether such documents were, in fact, prepared in anticipation of litigation as the documents were not provided to the Court for in camera review.  The Court will not, however, direct plaintiff to provide such documents for an in camera review because of its finding that plaintiff has failed to show any basis for withholding documents prepared in anticipation of litigation alone.

capacity as a member of Riverkeeper," are covered protected.  Dkt. No. 107 at 21.

Plaintiff contends that Ms. Heinzen "recruited" a drone operator "to assist in a factual

investigation that proved certain of Defendants' representations made in settlement

negotiations were false, and Super Law Group later retained that drone operator.  See

id.  Plaintiff notes that Ms. Heinzen "recruited" Mr. Remillard to observe and report on

salt transport at the industrial park after Super Law Group asked her to do this and she

was unavailable.  Id.  Plaintiff again further points out that Ms. Heinzen has agreed to

testify as to associational standing.  See id.  Thus, plaintiff avers, that Ms. Heinzen's

communications are prepared in anticipation of litigation and should be deemed

protected attorney work product because "she has served as Riverkeeper's

representative in litigation and acted at the explicit direction of Riverkeeper's counsel as

part of Riverkeeper's litigation team."  Id.  Plaintiff contends that Ms. Heinzen worked

under the direction and supervision of counsel and argues that is reason for the Court to

consider materials claimed as attorney work product to be protected by that privilege.

See id. at 22.

Plaintiff urges the Court to follow "Montesa and similar cases" that apply attorney

work-product protections to "volunteer 'consultants' and 'investigators' relied upon in

developing factual background for a case."  Dkt. No. 107 at 22.  As noted, CRC

opposes any documents being withheld as protected attorney work product because

plaintiff has failed to show "any document or evidence from Riverkeeper as actually

entering into any formal agency agreement with [Ms. Heinzen]."[11]  Dkt. No. 114 at 16.

---

[11]  Here, CRC says "Riverkeeper."  Dkt. No. 114 at 16.  However, the Court considers this second mention of Riverkeeper to be a scrivener's error and it is clear that CRC intended to say Ms. Heinzen. See id.

Absent such agency or consultancy relationship, CRC argues that any documents involving Ms. Heinzen would not be protected attorney work product.[12]

Plaintiff again relies heavily on <u>Montesa</u> to argue that this Court should conclude that the work product privilege applies to documents exchanged between counsel for plaintiff and Ms. Heinzen.  As relevant here, in <u>Montesa</u>, the plaintiff argued that various individuals were "volunteer" consultants who had "specialized knowledge and experience with the [defendant] School District so as to well serve Plaintiff's counsel in the investigation and litigation against members of the School Board and District administration."  2016 WL 3476341, at *2 (internal quotation marks omitted).  To wit, the <u>Montesa</u> Court found that the work product privilege applied to an e-mail from a third party which included information the third party received from a FOIL request that was to be used in the litigation.  <u>See Montesa</u>, 2016 WL 3476431, at *11.  The Court differentiated the factors that are considered when determining whether materials created by third parties could fall within the work product privilege of Rule 26(b)(3) from those it considered when assessing application of the attorney-client privilege.  <u>Id.</u> at *10-11.  The Court recognized that there exists "little guidance as to the requirements

---

[12]  CRC discusses <u>Montesa</u> at some length in its reply when addressing plaintiff's arguments specific to attorney work product.  However, in so citing, CRC includes the portion of the <u>Montesa</u> opinion that reviewed the attorney-client privilege, not the portion that reviewed whether materials were protected attorney work product.  <u>See</u> Dkt. No. 114 at 17.  As noted herein, the two privileges have different standards.  Thus, the Montesa court's rationale for applying/not applying the attorney-client privilege is not relevant to whether or not to find the work product privilege applies, and vice versa.  Indeed, although CRC cites portions of <u>Montesa</u> discussing the presence of a third party destroying privilege, it discusses the destruction of the attorney-client privilege.  Indeed, the presence of a third party is not necessarily fatal in determining whether a document is protected by the work-product privilege. <u>See Falise v. American Tobacco Co.</u>, 193 F.R.D. 73, 80 (E.D.N.Y.2000) (quoting <u>In re Pfizer Inc. Sec. Litig.</u>, No. 90 Civ. 1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993)) ("Unlike the attorney-client privilege, the work-product privilege is not necessarily waived by disclosure to any third party; rather, 'the courts generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." ).

for holding the title of agent or consultant" as relevant to Rule 26(b)(3).  Id. at *10.  It observed that other courts have considered "whether the third party worked directly with and under the supervision of counsel and was responsible for such tasks as coordinating the gathering of evidence and identifying and contacting witnesses[.]"  Id. at *10.

Although the Court held that the attorney-client privilege did <u>not</u> apply to communications with third party Peggy Hatton, the Court, following in camera review of the communications, applied the work product privilege to certain of the communications, noting that the individual was recruited to assist in the action, and that the e-mails she sent were shared with counsel in furtherance of the litigation.  See Montesa, 2016 WL 3476431, at *6, *11.[13]  The Court similarly found that the work product privilege protected from disclosure e-mails third party Antonio Luciano[14] sent to counsel and the plaintiff that included "filings from another case against the Defendant [school] District," where counsel alleged that the individual was "engaged as a consultant in furtherance of the Montesa action."  Id. at *12.  The court noted that the third party, Mr. Luciano, was included on the plaintiff's list of consultants, and obtained

---

[13]   Although the Court found written communications between counsel and Ms. Hatton and Mr. Luciano to be protected attorney work-product, it also held that the attorney-client privilege did not apply to communications between Ms. Hatton and counsel and Mr. Luciano and counsel because, although "[i]t is clear from [counsel]'s affirmation that the third parties were assisting with the provision of legal advice and services, however, it appears from [counsel]'s affirmation that their advice is based on their access to information about Defendant District, and not based on their interpretation of information communicated from Plaintiff . . . or other plaintiffs in the Montesa action."  The Court held that the third parties' role was "collecting information not obtainable from the client, a function to which the privilege does not attach."  Id. at *6; Compare Montesa, 2016 WL 3476431, at *6 with Montesa, 2016 WL 3476431, at *12.  Further, the Court rejected application of the attorney-client privilege to communications with these third parties because the plaintiffs "failed to establish that these consultants worked under the supervision of counsel" where "[p]laintiffs' counsel does not even assert that they had any sort of formal agreement with these third parties in which they would directly supervise their investigative or consultative functions."  Id.
[14]   The Court had found that communications with Mr. Luciano were not, however, protected by the attorney-client privilege.  See Montesa, 2016 WL 3476431, at *6.

several documents through a FOIL request and shared those documents with plaintiff's counsel.  Id. at *12.[15]  The court further held, by contrast, that individuals who plaintiff described as members of the community who were "vocal" in bringing the "failures of the school Board and District Administrators to the attention of the public," and who provided the plaintiff's counsel with "critical advice and information," were not "'enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparing for litigation.'"  Id. at *13 (quoting Costabile v. Westchester, New York, 254 F.R.D. 160, 164 (S.D.N.Y. 2008)).  The Court observed that the plaintiff did not demonstrate that those members of the public worked directly with and under the supervision of counsel; rather, the individuals appeared "to have been engaged in their own advocacy work, without oversight from Plaintiff's counsel and, therefore, are not agents or consultants of counsel for purposes of Rule 26(b)(3)."  Id. at *13. The Montesa court concluded that, for work product privilege to apply to the third-party documents, the material must have been created for the litigation in question, not for the benefit of the third party or their "own pending or anticipated litigation."  Id. at *10.  Additionally, the Court found that, in determining whether the work product privilege applied, the Court "must consider what qualifications an individual must hold in order to be a consultant or agent permitted to create work product under Rule 26(b)(3).  Id. at *10.

The Court declines to find that Ms. Heinzen is a party representative or agent or consultant of plaintiff/plaintiff's counsel for purposes of the attorney work product

---

[15]   By contrast, where there had been no assertion made by counsel that a third party, Michael Castelluccio, was engaged as a consultant or investigator or an agent of counsel, and the content of the e-mail involved a separate litigation, the Court found it was the "work product of a non-party, created in anticipation of a separate litigation," and, thus, not protected attorney work product.  Montesa, 2016 WL 3476431, *13.

privilege for all of the reasons detailed supra when discussing application of the attorney-client privilege.  Indeed, Ms. Heinzen has not been shown to be a party representative, agent, consultant of plaintiff/plaintiff's counsel.  Plaintiff has provided no evidence of its claims that Ms. Heinzen was directly supervised by counsel.  Although plaintiff submits affirmations from Ms. Leung, Mr. Rotenberg, and Ms. Muench contending that Ms. Heinzen worked at their request and under their supervision, dkt. nos. 107-1, 107-4, 107-5, they fail to explain the details surrounding their level of supervision over Ms. Heinzen beyond Mr. Rotenberg providing that Ms. Heinzen "completed tasks at the direction of the legal team," and "agreed to provide a declaration" and testify at trial in relation to standing.  Dkt. No.107-4 at 2-3.[16]  Plaintiff does not contend that they entered into a retainer agreement with Ms. Heinzen.  Indeed, Ms. Muench's declaration indicates that Ms. Heinzen was included on many communications, both before the case was filed and after, "[b]ecause Ms. Heinzen's specialized knowledge and sustained interest were of value to Riverkeeper and its legal team," not because they retained her as a consultant or arranged for her involvement in any formal capacity.  Dkt. No. 107-1 at 8.  Similarly, Ms. Leung's declaration states that they included Ms. Heinzen "in discussions of litigation strategy and settlement efforts," not because she was retained a consultant, but because of her high "level of involvement and interest" and because they considered her views "to be an important input."  Dkt. No. 107-5 at 4 ¶19.

---

[16] Although plaintiff provides Ms. Heinzen's level of involvement – arranging a site visit, finding a drone operator, "recruit[ing]" Mr. Remillard to observe an event in the industrial park when she was unavailable, and agreeing to testify on standing, dkt. no. 107 at 21, this involvement this does not explain counsel's level and degree of supervision.

Insofar as <u>Montesa</u> applies the work product privilege to communications with certain third parties who provided minimal assistance to the plaintiff, 2016 WL 3476431, at, *9-*11, this Court declines to follow that approach in this case.  Although this Court recognizes that the standard differs between applying attorney-client privilege and work product privilege, the <u>Montesa</u> court, although recognizing that the attorney-client privilege still requires that the document be written by the client or his or her representative, fails to explain why the third parties were suddenly representatives or agents of the client when they were not agents or representatives for purposes of the attorney-client privilege.  However, even if that rationale were clearly explained, the Court would still decline to apply it here.  <u>See</u> <u>In Re Six Grand Jury Witnesses</u>, 979 F.2d 939, 933 (2d Cir. 1992) (finding that the work product doctrine is "to be applied in a common sense way in light of reason and experience as determined on a case-by-case basis) (citation omitted).

Further, beyond describing Ms. Heinzen as someone with significant knowledge about the industrial park and a strong personal interest in the subject matter and outcome of the litigation, there is no basis upon which to conclude that documents Ms. Heinzen had the "qualifications . . . to be a consultant or agent permitted to create work product under Rule 26(b)(3)."  <u>Montesa</u>, 2016 WL 3476431, at *10.

The Court recognizes that "communications from non-parties to counsel for parties in a lawsuit generally do not qualify as attorney work product," <u>Carpenter v. Churchville Greene Homeowner's Ass'n</u>, No. 09-CV-6552T, 2011 WL 4711961, at *10 (W.D.N.Y. Sept. 29, 2011), <u>report and recommendation adopted sub nom.</u> <u>Carpenter v. Churchville Greene Homeowner's Ass'n, Inc.</u>, No. 09-CV-6552, 2011 WL 6012539

(W.D.N.Y. Dec. 1, 2011), but that some courts have held, "[t]o the extent that the [communications] reflect counsel's [litigation] strategy . . ., they would constitute attorney work product"). Id. (citing and quoting Ricoh Co., Ltd. v. Aeroflex Inc., 219 F.R.D. 66, 69 (S.D.N.Y. 2003)). Here, however, with respect to the documents at issue, plaintiff makes no such claim that the documents in question would reveal counsel's litigation strategy. See Dkt. Nos. 107; 107-1.[17] Accordingly, the Court grants CRC's motion to compel for all documents claimed to be privileged on the basis of "material prepared in anticipation of litigation" and on the basis of attorney work product.[18]


IV. **Conclusion**

Wherefore, for the reasons granted herein, it is hereby:

**ORDERED**, that defendants' motion to compel, dkt. no. 97, is **GRANTED**; and it is further

---

[17]  To the extent plaintiff contends in its opposition papers that defendants did not meet and confer because defendants did not make clear to plaintiff all bases on which they objected to plaintiff's claim of privilege with respect to Ms. Heinzen, the Court disagrees. It appears to the court, instead, that parties have simply differing views on why Ms. Heinzen was or was not a client/client representative/agent, not that CRC did not communicate that it objected to Ms. Heinzen and why. See Dkt. No. 107-1 at 5-7 ¶¶ 26-33.

[18]  The Court observes that plaintiff has not submitted the documents withheld as attorney work product to the Court for review. See generally Safeco Ins. Co. of Am. v. M.E.S., Inc., No. 09-CV-3312 ARR/VMS, 2013 WL 1680684, at *4 (E.D.N.Y. Apr. 17, 2013) (collecting cases to show that in camera review is a standard consideration in assessing whether work product privilege applies). The privilege log contains extremely minimal descriptions of the document and does not explain with any degree of particularity why each specific document is entitled to be privilege accorded to protected attorney work product. Indeed, it is not entirely clear who authored the documents.  Further, to determine whether the documents should be entitled to be withheld as attorney work product, it must be determined whether the materials were prepared in anticipation of litigation, rather than in the "ordinary course of business" or documents that "would have been created in essentially similar form irrespective of the litigation." Aldman, 134 F.3d at 1202. However, because the Court has found that plaintiff has failed to demonstrate that Ms. Heinzen is a party or party's representative, it need not reach whether the materials were prepared in anticipation of litigation. Thus, it need not compel plaintiff to submit such documents for in camera review. The Court is also unaware if any of the documents are being claimed as opinion work product, though, because that claim is not made, the Court must assume such is not claimed. Regardless, the Court also need not make such assessment because it has concluded that the attorney work product privilege does not apply to third-party Ms. Heinzen's work product.

**ORDERED**, that within fourteen (14) days from the filing date of this Memorandum-Decision & Order, plaintiff is to produce to defendants, copies of all documents withheld as privileged on the bases of attorney-client privilege, attorney work-product, and material prepared in anticipation of litigation, or redacted (as specified in the redaction log) in connection with Ms. Heinzen.[19]

**IT IS SO ORDERED.**

Dated: March 11, 2024
          Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[19] Because plaintiff has set forth no argument addressing the non-responsive/"personal information" designation on some of the entries, and has not provided such documents for in camera review on those grounds, it has failed to meet its burden with respect to any claim of privilege on the basis of non-responsive/personal information. See Dkt. No. 97-5. Thus, the Court's holding applies equally to any material also withheld in the privilege log on this ground.