**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━

RIVERKEEPER, INC.,

                               Plaintiff,                  1:20-CV-01025

        v.                                         (GTS/CFH)

COEYMANS RECYCLING CENTER LLC,
COEYMANS RECYCLING CENTER II, LLC,
CARVER LARAWAY,

                               Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPEARANCES:**                             **OF COUNSEL:**

Super Law Group, LLC                 EDAN ROTENBERG, ESQ.
222 Broadway, 22nd Floor             JULIA KATHRYN MUENCH, ESQ.
New York, New York 10038
Attorneys for plaintiff

Young, Sommer Law Firm             JOSEPH F. CASTIGLIONE, ESQ.
Executive Woods                       DEAN S. SOMMER, ESQ.
5 Palisades Drive
Albany, New York 12205
Attorneys for defendants

## MEMORANDUM-DECISION & ORDER

       Presently before the Court is plaintiff Riverkeeper's motion to compel discovery, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37(a) and Northern District of New York Local Rules 7.1, 26.2, and 37.1. <u>See</u> Dkt. No. 98. Defendants Coeymans Recycling Center LLC, and Coeymans Recycling Center II, LLC (collectively "CRC" or "defendants") opposed. <u>See</u> Dkt. No. 106. Plaintiff replied. <u>See</u> Dkt. No. 113. For the reasons that follow, plaintiff's motion to compel is granted in part and denied in part.

## I. **Legal Standard**

### A. **Motion to Compel Discovery**

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") Rule 26(b)(1) states, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .  Information within this scope of discovery need not be admissible in evidence in order to be discoverable." FED. R. CIV. P. 26(b)(1). "Under Rule 37, following a good-faith effort to meet and confer, upon to all parties notice," "a party may move for an order compelling disclosure or discovery."  FED. R. CIV. P. 37(a).

A district court has broad latitude to determine the scope of discovery and to manage the discovery process.'"  Tromblee v. The State of New York, et al., No. 1:19-CV-638 (BKS/CFH), 2022 WL 2818222, at *2 (N.D.N.Y. July 19, 2022) (quoting EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012) (additional citation omitted)). This discretion includes imposition of "limitations or conditions on discovery . . . [and] extends to granting or denying motions to compel or for protective orders on just terms." Jenny Yoo Collection, Inc. v. David's Bridal, Inc., No. 18-CV-9926 (PGG/BCM), 2019 WL 6841966, at *2 (S.D.N.Y. Dec. 16, 2019) (internal citation and quotation marks omitted); Russell v. Scott, No. 5:20-CV-184-GWC-KJD, 2022 WL 3084339, at *3 (D. Vt. Aug. 3, 2022) (quoting Jenkins v. Miller, No. 2:12-cv-184, 2021 WL 1115928, at *1 (D. Vt. Mar. 24, 2021) ("'the district court has broad discretion to limit [the requested] discovery in a prudential and proportionate way.'")).

"[I]t is the discovering party who 'has the burden of demonstrating that the information sought is relevant to the subject matter of the pending action.'"  Russell,

2022 WL 3084339, at *3 (quoting <u>United States v. Int'l Bus. Machines Corp.</u>, 66 F.R.D. 215, 218 (S.D.N.Y. 1974) and citing <u>Citizens Union of City of New York v. Att'y Gen. of New York</u>, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). "The party opposing discovery on the grounds of relevancy also has a burden: to demonstrate that 'the requested documents either do not come within the broad scope of relevance defined pursuant to [Rule] 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure.'" <u>Id.</u> (quoting <u>Du Grenier v. Encompass Ins. Co.</u>, 2:16-cv-281 2018 WL 4692354, at *4 (quoting <u>Go v. Rockefeller Univ.</u>, 280 F.R.D. 165, 176 (S.D.N.Y. 2012)). "Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'"  <u>Id.</u> (quoting <u>Harris v. Bronx Parent Hous. Network, Inc.</u>, No. 18-CV-11681, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (additional citation omitted)).


## II.  **Arguments**

### A.  **Plaintiff's Arguments**

As a threshold issue, plaintiff contends that its first set of interrogatories contains four interrogatories; thus, the Court must reject defendants' objection to the total number of interrogatories and compel defendants to respond.  <u>See</u> Dkt. No. 98-1 at 24. Next, plaintiff seeks the Court to compel defendants to produce (1) documents created prior to 2018 relating to Clean Water Act and MSGP compliance, and construction permit compliance documents prior to 2020; (2) information relating to defendants' tenants; (3) information relating to defendants' finances and costs relating to calculating civil penalties; (4) documents relating to the physical condition of the industrial park,

stormwater controls, and non-stormwater liquids; (5) documents relating to compliance with the construction permit, New York State Department of Environmental Conservation ("NYSDEC") State Pollutant Discharge Elimination System ("SPDES") Multi Sector General Permit for Stormwater Discharges Associated with Industrial Activity ("MSGP"), water quality standards, and salt management; and (6) documents related to communications with government agencies. See generally Dkt. No. 98-1. Next, plaintiff argues that defendants must be compelled to provide information about their search tactics and methodologies due to gaps in production. See id. Plaintiff also seeks costs and expenses associated with filing this motion. See id. at 26-27.

More specifically, plaintiff argues that the discovery it seeks is relevant to prove its "causes of action and/or remedies." Dkt. No. 98-1 at 10. Plaintiff opines that it must prove the number of violations it alleges defendants to have committed as well as "the number of days during which each violation persisted." Id. Addressing first its requests relating to evidence about defendants' financial condition, plaintiff argues that such information is necessary because the Court must consider, pursuant to the Clean Water Act, the economic benefit – if any – that defendants derived from the alleged violation. See id. at 10, 18. Plaintiff contends that courts have "consistently ruled that a defendant's financial condition is relevant to the issue of civil penalties under the Act and have granted motions to compel tax returns and other financial information[.]" Id. at 18. Plaintiff contends that it consulted with an economist to "identify appropriate discovery requests." Id.

Addressing its requests for materials from before 2018, plaintiff argues that "[a]side from two MSGP SWPPPs[1], Defendants have refused to produce any MSGP compliance documentation prior to 2018" and "any construction Permit compliance documentation (including Construction SWPPPs) prior to 2020."  Dkt. No. 98-1 at 11. Plaintiff contends that defendants improperly object by arguing that plaintiff must first "offer 'proof of violations' before Defendants are obligated to respond to Riverkeeper's discovery requests."  Id.  Plaintiff asserts that because it commenced this action on September 1, 2020, and the Clean Water Act's statute of limitations is "at least five-years plus sixty-days prior to the filing of the complaint," it may seek "documents and information relevant to Defendants' compliance (or lack of compliance) with the Clean Water Act dating back to at least July 3, 2015."  Id. at 12.  Plaintiff further contends that "documents created prior to July 3, 2015, may be relevant to proving violations that occurred after that date."  Id.[2]

Plaintiff next argues that it requires discovery about defendants' history of noncompliance because, in determining an appropriate penalty, "conduct that occurred prior to 2015, i.e.[,] conduct too old to be prosecuted in this action, may nonetheless be relevant and competent evidence necessary establish [sic] Defendants' history of violations."  Dkt. No. 98-1 at 14.  Thus, plaintiff provides that its second request for documents "was not categorically temporally limited by a general instruction," as was its first request for production, but its second request for production was limited "by more narrowly tailoring the specific requests themselves to identify specific documents

---

[1] SWPPP stands for Industrial Stormwater Pollution Prevention Plans.

[2]  Plaintiff provides that its First Request for Production, "Instruction M, thus limited the scope of those requests (unless otherwise stated) to the period beginning May 8, 2015 – narrowly requesting documents created up to two months prior to the statute of limitations period."  Dkt. No. 98-1 at 12.

requested." Id. at 15.  Plaintiff proffers, even if this Court rejects its argument that

documents created prior to the statute of limitations are not relevant to assessing

penalties, "such documents are also required to understand present conditions at the

Industrial Park." Id.  Plaintiff provides that its expert witness requires review of "all

Construction SWPPPs ever implemented at the Industrial Park, so that she might piece

together the history and fate of stormwater at the Park" because there is "the absence

of critical pieces of information (particularly regarding subsurface conveyance of

stormwater)." Id.

Next, plaintiff contends that defendants have improperly refused to produce

documents and information relating to its tenants at the industrial park.  See Dkt. No.

98-1 at 16.  Plaintiff contends that defendants may be liable for their tenants' violations

of the Clean Water Act because defendants are legally responsible for the tenants'

stormwater discharges that "commingle and are discharged in ways that violate

defendants' coverage under the MSGP." Id.  Plaintiff further argues that information

about "tenant operations at the Park, tenant leases, and the identity of and contact

information for tenant operators and managers" is relevant and proportionate to

plaintiff's claims. Id. at 17.  Plaintiff provides further that defendants' response of

"point[ing] to information available in Defendants' MSGP and SWPPPs" is "wholly

inadequate, as it is incomplete (failing to identify all tenants) and inconsistent with

observations made at the Industrial Park during site visits." Id.

On the interrogatory number issue, plaintiff argues that defendants "wholly

objected to responding to the Second Interrogatories" based on its argument that the

"four numbered interrogatories [contained in the first set of interrogatories] constituted

more than 25 interrogatories when counting sub-parts." Dkt. No. 98-2 at 12; Dkt. No. 98-1 at 23. Plaintiff argues that defendants never identified the number of interrogatories they believe the first set of interrogatories contains. See Dkt. No. 98-1 at 23. Regarding interrogatory number 1, plaintiff contends that it "could not clearly inquire as to the persons with knowledge of subject matter without listing the subject matter at issue, nor could the list of subject matters have any context without the primary question." Id. at 24. Plaintiff further argues that, although the subject matter of interrogatory number 1 "is set forth as a list of closely related issues, these are singular interrogatories." Id. Plaintiff also provides, "[t]he same is true as to First Interrogatory No. 2, regarding the custodiams of documents." Id. "As for First Interrogatory Nos. 3 and 4, there can be no doubt that these are singular interrogatories" because interrogatory number 3 "is completely confined to identifying tenants" and interrogatory number 4 "is a nine-word sentence that contains no commas, parentheses, semi-colons, or other indications of sub-clauses, let alone any subparts." Id. at 24.

Plaintiff further requests this Court compel defendants to respond to the second set of interrogatories, but that if the Court does find that plaintiff included greater than 25 interrogatories in its first set of interrogatories, it be granted leave to "serve 21 additional interrogatories (inclusive of the Second Interrogatories)" and for an order directing defendants to respond to the second set of interrogatories. Dkt. No. 98-1 at 24-25

As for plaintiff's request regarding defendants' search methodology, it contends that it "believes that relevant and responsive documents exist in Defendant's [sic] possession, custody, or control, and have not been produced." Dkt. No. 98-1 at 25.

It alleges that there are significant omissions and other gaps in defendants' production that defendants have not explained.  See id.  Plaintiff further argues that defendants' production omits certain documents Riverkeeper received from various agencies in response to FOIL/FOIA requests, which it contends "suggests that Defendants have not conducted adequate searches for relevant documents.  See id.  Finally, it argues that knowledge of defendants' search methodology is warranted because plaintiff located within defendants' production specific records that defendants initially argued were unable to be located.  See id.

### B. **Defendants' Arguments**

### 1. **Attorney Affirmation**

As a threshold issue, defendants' submissions are both violative of this Court's local rules and difficult to follow.  Unlike the typical attorney affirmation or declaration, "which simply attaches and identifies exhibits for the Court," [defense counsel's declaration] consists of factual assertions and legal arguments regarding Defendants' proffered arguments."  Altman v. Inc. Vill. of Lynbrook, No. CV-184984 (SJF/AKT), 2020 WL 4587751, at *7 (E.D.N.Y. Mar. 31, 2020), report and recommendation adopted, No. 18-CV-4984 (SJF/AKT), 2020 WL 2507368 (E.D.N.Y. May 15, 2020).  In Altman, the Eastern District of New York rejected the declaration from counsel for plaintiff after concluding it was:

> entirely argumentative and even contains cross citations to Plaintiff's own memorandum of law to elaborate on the positions taken.  Plaintiffs' memorandum likewise refers the Court back to the Snead Declaration. In addition, neither the [attorney for plaintiff's] Declaration nor Plaintiffs' memorandum contain a background section and refer the Court to the Altman Affidavit attached as a counterstatement to Defendants' recitation of the facts. Thus, Plaintiffs' counsel would have the Court flip-flop between the [attorney for the plaintiff's] Declaration, Plaintiffs' memorandum, and the

> Altman Affidavit to understand the full picture of Plaintiffs' argument. This type of declaration is improper and inadmissible.

Altman, 2020 WL 4587751, at *7.

Defendants' attorney affirmation is clearly violative of Local Rule 7.1(b) and Fed. R. Evid. 602.  See Dkt. No. 106-1 at ¶¶ 73, 96-100, 123-28; Ellsworth v. Wachtel, 1:11-CV-0381 (LEK/CFH), 2013 WL 130342, at *1 n.1 (N.D.N.Y. Jan. 11, 2013) (citing Oneida Indian Nation v. Cnty. of Oneida, 802 F.Supp.2d 395, 425 n.24 (N.D.N.Y.2011)). Defendants include legal argument within their attorney's affirmation, much of this legal argument is either absent from the memorandum of law or discussed within the memorandum of law in a truncated fashion, with references to the affirmation.  See Dkt. Nos. 106, 106-1.

In addition to the clear violations of the Local Rules, the Court finds similar deficiencies in Mr. Castiglione's declaration and memorandum of law to that discussed in Altman.  See Altman 2020 WL 4587752, at *7.  Much like in Altman, the organization of these documents places a significant burden on the Court insofar as defendants expect the Court to flip-flop between the memorandum of law and attorney affirmation in attempt to cobble together defendants' legal arguments.  See Dkt. No. 106 at 27 ("As explained in the JFC Aff. . ."), 28 (directing the Court to ¶¶63-73 of JFC affidavit "for the facts of that issue [search methodology]; directing the Court to ¶¶ 30-33, 74-166 and exhibits D and E "for a "factual history" of the discovery defendants which defendants argue "demonstrates Plaintiff's failure to articulate a factual basis for ignoring  the documents" defendants produced; directing the Court to ¶¶ 74-116 of JFC affidavit in arguing that plaintiff is "either speculating about the existence of documents," requesting documents that defendants are not required to create or maintain, or documents that

are not "required to be generated . . . in terms of [defendants'] coverage under the MSGP or GP-Construction."; Dkt. No. 106 at 20 (" . . . as documented in the JFC Aff. ¶¶117-121 . . . .", "As explained in the JFC Aff. . . ." [citing ¶120]); Dkt. No. 106-1 at 28 ("As reflected in the JFC Aff. ¶¶ 74-116 . . . .); dkt. no. 106-1 at 17 ¶42 (". . . as further explained in the CRC's accompanying memorandum of law."); id. at 24 ¶67 (same), id. at 26 ¶72, id. at 27 ¶78, id. at 30 ¶89, id. at 31¶91; id. at 32 ¶¶96, 100.  The Court, therefore, rejects the Castiglione affirmation in its entirety and declines to consider it. See Altman, 2020 WL 4587751, at *7 (declining to consider attorney affirmation in its entirety as violative of the Court's Local Rules about including legal argument and containing cross-referencing between the two documents); see also Duttweiler v. Eagle Janitorial, Inc., 05-CV-0886 (GTS/GHL), 2009 WL 5171834, at *3 (N.D.N.Y. Dec. 22, 2009) (striking attorney affidavit counsel because it was not based on personal knowledge and contained legal argument) aff'd Dutweiller v. Upstate Bldg. Maintenance Companies, Inc., 407 F. App'x 552 (2d Cir. 2011)).

As plaintiff points out, the Court has already cautioned defense counsel against this practice.  See Dkt. No. 60 at 72; see also Dkt. No. 113 at 12 n.3.  Defense counsel chose to include in defendants' memorandum of law an extensive recitation of the complaint, procedural history of the case, and arguments that were before the Court on the motion to dismiss.  In the undersigned's opinion, this may not have been the wisest use of the page limits;[3] indeed, the argument section of the memorandum of law does

---

[3]  Defendants provide that the "Recitation concerning the allegations in the Complaint, the Park's July 2020 SWPPP and related SWPPPs, the CWA standards for MSGP and GP-Construction, and the legal scope of permissible issues in a CWA Citizen's Suit, are all directly relevant to Plaintiff's Motion to Compel as they collectively establish the scope of legal issues that govern the Park's MSGP and GP-Construction operations and compliance, and the legal standards that must be met by the Plaintiff in their CWA Citizen's Suit, for purposes of determining what is relevant and appropriate discovery at issue in this lawsuit."  Dkt. No. 106 at 21-22.

not begin until page 24 of 30.  See Dkt. No. 106 at 24.  Regardless, defendants made this choice, and the Local and Federal Rules cannot be subverted by submitting a 42-page attorney affirmation containing the legal arguments – or expansion of legal arguments – that could not fit into the 25 pages allowed in the memorandum of law. See N.D.N.Y. L.R. 7.1(b); FED. R. EVID. 602.  Should defense counsel repeat this conduct of including legal arguments within the attorney affirmation, the undersigned will consider the application or recommendation of sanctions.  The Court expects, as it does of all practitioners who come before it, that parties will maintain strict compliance with all applicable Local and Federal rules.

### 2.  **Merits**

Addressing plaintiff's requests for tenant information, defendants contend that it objected because it already "provided a number of documents concerning information regarding its tenants and operations over time, through the various SWPPP's [sic] provided from 2015 to May 2013."  Dkt. No. 106 at 27.  Defendants urge the Court to deny these requests as "duplicative information in an apparent effort to contact and confirm CRC's information directly with the tenants, apparently because they do not trust CRC and information provided."  Id. at 23, 27.  Defendants further argue that plaintiff has not shown that the information they provided "is not correct."  Id. at 27. Further, defendants reiterate their original objection that providing the tenant information "would unnecessarily interfere with its business relations with tenants and otherwise was not relevant as the allegations in the Complaint (and 60-day notice) focused on CRC's control and operations at the Park, [versus] separately identifying operations by tenants as alleged violations of the CWA or any SWPPP."  Id.

Next, defendants state that the MSGP and "GP-Construction" both have a five-year retention policy.  See Dkt. No. 106 at 17-19.  Thus, it appears that CRC contends that it is not required to retain these documents; though, defendants do not explicitly argue that they do not have access to these documents.  See Dkt. Nos. 106.

With regard to the search methodology, defendants contend that "[t]he information requested is clearly irrelevant and CRC has engaged in good faith discovery production, and the examples raised by Plaintiff are remote and irrelevant and otherwise fail to show any harm to Plaintiff."  Dkt. No. 106 at 28.

Regarding the requests for defendants' financial information, defendants contend that the analysis the Court requires in assessing penalties "is based upon each individual, specific violation demonstrated by a plaintiff."  Dkt. No. 106 at 29.  Defendants contend that plaintiff's broad requests have assumed essentially all violations alleged and all allegations are true and justify basically all of CRC's financial records."  Id.  Defendants argue that plaintiff's requests have "not been narrowly tailored for individual actual violations in accordance with what is required for a Court to consider for penalties for individual violations at issue under the CWA."  Id. at 23.  Defendants also assert that "Plaintiff should narrow its requests by identifying specific violations, so CRC can inquire as to impacts related to each specific individual violation demonstrated [sic] Plaintiff."  Id. at 29.  Defendants opine that plaintiff "is ignoring its burden that it's required to show the violation, for the Court then [sic] consider economic information specifically tailored to each singular violation."  Id.  Defendants accuse plaintiff of a "significantly overbroad fishing expedition tasked to Ms. Falk" because it contends that Ms. Falk "admitted that the task assigned to her by Riverkeeper was to

conduct a comprehensive review and analysis about the Park's compliance with stormwater issues over time, starting from 2013 to present, to determine in her opinion when there was compliance and when there were violations." Id. at 23.  Defendants further contend that plaintiff's requests relating to its finances are "more broad than what is provided for under 33 USC § 1319(d)[.]" Id. at 24.

As for the number of interrogatories, defendants do not include specific arguments in their memorandum of law[4] about the number of interrogatories they believe plaintiff includes.  However, it is clear that defendants believe plaintiff has served greater than 25 interrogatories in total.  See Dkt. Nos. 98-1 at 23, 98-2 at 12¶56; 98-4 at 3 ¶8.

Addressing "[p]laintiff's request for more CRC compliance or violation records," defendants point to its attorney affirmation and exhibits – defendants' responses to plaintiff's requests for the production of documents and a document entitled "Documents provided by CRC to Plaintiff through Discovery" – for "the factual history of the significant amount of information provided by CRC relevant to the request and otherwise demonstrates Plaintiff's failure to articulate a factual basis for ignoring the documents actually provided by CRC that are related to those issues."  Dkt. No. 106 at 28.

Defendants further contend that "a citizen like Plaintiff in a CWA Citizen's Suit cannot pursue claims for alleged violations that were previously identified and subject to enforcement by the DEC, as the state agency charged with enforcing the CWA and NPDES program in New York State."  Dkt. No. 106 at 20.  Defendants also contend that

---

[4]  As stated, the Court will not be considering the defendants' attorney affirmation due to its failure to abide by the Local and Federal Rules, despite defense counsel being cautioned previously.

discovery matters relating to prior orders on consent with the DEC are not relevant because such matters are "not actionable" because administrative enforcement proceedings are "excluded from a CWA Citizen's Suit under 33 USC 1913(g)(6)(A)." Id. at 23-24.

Defendants appear to contend that plaintiff must prove violations of the CWA prior to obtaining discovery on matters that would have occurred prior to the filing of the complaint or prior to the five-year plus sixty-day statute of limitations, and state that CWA citizen's suits are prospective.  Dkt. No. 106 at 19-20.  Defendants provides further that the statute of limitations on such claims are five years plus sixty days from the "date of the event at issue." Id. at 20.  Defendants contend that plaintiff "must show specific violations existing as of September 1, 2020, that are continuous, before prior violations are relevant for the prior 5-year limitations period." Id.  Thus, it appears thatdefendants are arguing that the Court reject plaintiff's request for documents as early as 2013 because (1) documents outside of the 5-year and 60-day statute of limitations are not relevant and not addressing violations existing at the time of the filing of the complaint, and (2) such documents are not relevant to prospective relief.  See id. Defendants argue that plaintiff must be able to prove that continuous violations of the CWA existed as of September 1, 2020, "before prior violations are relevant for the prior 5-year limitations period." Id.  Thus, it appears that defendants contend that for plaintiff to be able to access discovery relating to potential violations occurring before September 1, 2020, it first must prove the existence of continuous violations as of September 1, 2020.  See id.

14

Defendants also appear to argue that this Court's denial of defendants' motion to dismiss does not entitle plaintiff to discovery because this Court "acknowledged that CRC's motion to dismiss was based on lack of standing, therefore implicating lack of subject matter jurisdiction, as well as due to Plaintiff's allegations in the Complaint failing to consider the July 2020 SWPPP." Dkt. No. 106 at 20.  Thus, defendants appear to contend that the Court did not deny its claims regarding standing, but concluded only that "the ultimate question as premature at the pleadings stage." Id. Defendants contend, "as to discovery, there is a burden for Plaintiff to establish a factual basis for its discovery requests versus seeking evidence to determine if it has a claim or not." Id.

## C. **Plaintiff's Reply**

In reply, plaintiff first addresses defendants' arguments that plaintiff "can only seek discovery on some issues after first proving liability on others."  Dkt. No. 113 at 5. Plaintiff contends, because "[t]his Court did not phase or bifurcate discovery," it is entitled to discovery of "all of the evidence needed to carry its burden of proof – for liability, remedy, and penalties, on all of its claims – now." Id. at 6.   Plaintiff contends that this Court already "determined that Riverkeeper's claims survive Defendants' motions for judgment on the pleadings and to dismiss for lack of subject matter jurisdiction," which are standards "'identical to that of a Rule 12(b)(6) motion or failure to state a claim.'" Id.  Plaintiff argues, "[c]laims that survive a Rule 12(b)(5) motion are sufficiently plausible, on their face, to allow the plaintiff full use of discovery to obtain relevant information." Id.

15

Responding to defendants' arguments on the tenants issue, plaintiff contends that defendants conceded that they are responsible for tenants' operations where those tenants do not have separate permit coverage.  See Dkt. No. 113 at 7.  Plaintiff contends that its claims allege that defendants' "discharge polluted stormwater from the Industrial Park – "including tenanted portions – in violation of that permit and the Clean Water Act."  Id.  Plaintiff reiterates its argument that stormwater from defendants' operations commingles with its tenants' and is discharged in violation of defendants' permit "and that some tenant activities are not permitted at all."  Id.  Thus, discovery regarding the tenants, plaintiff argues, is relevant for such claims.  See id.

Addressing defendants' proportionality arguments as to the tenant requests, plaintiff contends that the only discovery defendants produced relating to tenants "is merely a box in the corner of a one-page map that includes the names of some tenants and what Defendants believe to be their industrial activities."  Dkt. No. 113 at 7.  Plaintiff asserts that the document fails to "identify all tenants and is inconsistent with observations that Riverkeeper made during its site visits at the Park."  Id. at 8.  Plaintiff provides further that defendants did not provide any "information in response to requests for tenants' compliance documents (if in Defendants' possession), tenant leases, the identify and contact information of tenant operators and managers, or when tenants began their respective industrial activities at the Industrial Park."  Id.  Plaintiff also contends that the requests for tenant information would not interfere with tenant relations; rather, "[t]he alternative – obtaining this information directly from tenants by serving non-party subpoenas – would burden the tenants, impose costs on the parties, and could lead to motion practice by non-party tenants."  Id.

Addressing "MSGP compliance records prior to 2018 or documents related to the Construction Permit prior to 2020[,]" plaintiff argues that defendants "admit the relevance of these documents or, at least, that they immediately become relevant once Riverkeeper proves liability."  Dkt. No. 113 at 8.  Because, plaintiff argues, it need not prove liability prior to obtaining discovery, defendants provide no valid objection to producing these documents.  See id. at 8-9.  Plaintiff repeats its argument that its requests are proportionate because defendants' production thus far is inadequate.  See id. at 9.  Plaintiff provides, as an example, that in response to its requests of diagrams of the industrial park's internal sanitary and storm swearers, defendants produced a site map, but contend that this document "cannot be used for this purpose as the single-page map is impossibly overcrowded."  Id.  Plaintiff asserts that the site map was "clearly assembled from separate electronic map 'layers.'"  Id.  Thus, plaintiff opines, defendants "would face almost no burden to produce the requested records[.]"  Id.  Addressing defendants' contention that the industrial park is "'on public sewer and water," plaintiff argues that defendants "can and should provide diagrams of the pipes they built to connect those public sewers so that Riverkeeper can understand where water flows to a sewer and where it flows to local waters."  Id.   To the extent defendants are contending "that such diagrams and other documents don't exist," plaintiff argues that this claim belies the belief and suggests that defendant "have not conducted an adequate search" or amounts to "spoliation of evidence."  Id. at 10.

Addressing defendants' arguments about discovery relating to its finances, plaintiff reiterates that defendants incorrectly contend that plaintiff must prove its claims before obtaining discovery.  See Dkt. No. 113 at 10.  Plaintiff argues that defendants

make no legitimate arguments against producing the requested financial information as its argument that the requests are "overly broad" as they "make no specific argument that the requests . . . are not proportionate."  Id.

Addressing the number of interrogatories, plaintiff argues that defendants improperly divide the interrogators into subparts.  See Dkt. No. 113 at 11.  Plaintiff argues "subparts are counted as separate interrogatories only if they cannot be 'subsumed' into the primary question[,]" and plaintiff contends that its subparts can be so subsumed.  Id.  Plaintiff seeks the Court to order defendants "to answer Riverkeeper's two pending interrogatories and find that Riverkeeper served a total of six interrogatories."  Id. at 12.

Regarding the search methodology, plaintiff contends that defendants' argument that they have already produced voluminous records in discovery does not demonstrate that their searches have been adequate.  See Dkt. No. 113 at 12.  Plaintiff further urges the Court to reject defendants' "unspecified" claims of privilege.  Id. at 12.

Lastly, plaintiff seeks expenses associated with this motion.  See Dkt. No. 113 at 13. Plaintiff accuses defendants of "spending half their brief repeating their motion to dismiss – verbatim."  Dkt. No. 113 at 13.  Plaintiff states that defendants' only legal argument is that plaintiff must prove its case before it can obtain discovery is "'sanctionable conduct.'"  Id. (quoting Cal. Open Lands v. Butte Cty. Dep't of Pub. Works, No. 2:20-CV-0123, 2021 WL 4992907, at *5, 2021 U.S. Dist. Lexis 207821, at *14 (E.D. Cal. Oct. 27, 2021)).

## III.  **Discussion**

A. **Number of Interrogatories**

As noted, plaintiff argues that its first set of interrogatories contains only four interrogatories because "any subclauses that could plausibly be construed as subparts are closely related to the primary question." Dkt. No. 98-1 at 24. The Court has closely reviewed plaintiff's first set of interrogatories, along with parties' arguments, and the Court finds plaintiff's argument that its first set of interrogatories contains a total of only four interrogatories to be disingenuous. However, as will be discussed below, it declines to conclude that plaintiff served greater than 25 total interrogatories. See Dkt. No. 98-4.

This Court has recognized that determining whether interrogatories and their subparts are "'discrete separate subjects'" "can be a rather complicated and contorted maze." Bartnick v. CSX Transp., Inc., No. 1:11-CV-1120 (GLS/RFT),[5] 2012 WL 1565057, at *2 (N.D.N.Y. Apr. 27, 2012) (quoting FED. R. CIV. P. 33(a)). "Of the courts that have confronted this issue, there has developed a common denominator on how to weigh an interrogatory's subparts as independent and discrete. An interrogatory's

---

[5]  The undersigned is in agreement with Magistrate Judge Treece's expressions of frustration at parties' handling of the discovery process, which he expresses at the beginning of this decision:

> It never ceases to amaze this Court how discovery disputes have become the primary staple of federal litigation, rather than the substantive merits of the claims and the defenses, and how expected civil discourse can quickly, and unwittingly, devolve into a bountiful display of rhetorical recriminations. Unfortunately, this case is no exception, and is being consumed by the parties' fiercely held positions "over the ever-so-critical issue" as to what may constitute the permissible number of interrogatories. But for the Court's previous experiences with issues such as this, it would be unfathomable as to how, in no less than a half-dozen Letter–Briefs, the tone over this "vital" and "consequential" procedural issue could be cloaked in indelicate idioms about the boorish behavior of one's adversary while attempting to resolve a discovery disagreement. See Dkt. Nos. 20, & 22–27. It has become all too common and, yet, it serves no purpose for the Court to endure the pull and tug of the parties' inculpations and exculpations.

Bartnick v. CSX Transp., Inc., No. 1:11-CV-1120 (GLS/TRF), 2012 WL 1565057, at *1 (N.D.N.Y. Apr. 27, 2012).

subparts are to be counted as separate and discrete subparts 'if they are not logically or factually subsumed within and necessarily related to the primary question.'" Id. (quoting Madison v. Nesmith, 9:06-CV-1488 (NAM/DEP), 2008 WL 619171, at *3 (N.D.N.Y. Mar.3, 2008) (additional citations omitted).  "That is, if the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first question and not factually subsumed within and necessarily related to the primary question."  Id. (citing Madison, 2008 WL 619171, at *3).

> Indeed, for example, if a response to the first part of a two-part interrogatory is "implicit in a response to the [second] [p]art [ ] . . . [then] a complete answer to the latter [part] requires an answer to the former [part]. The two subparts are not discrete and may not be characterized as [independent interrogatories]."

Id. at *2 (quoting Sec. Ins. Co. of Hartford v. Trustmark Ins. Co., No. Civ. 3:01-CV-2198 (PCD), 2003 WL 22326563, at * 1 (D. Conn. Mar. 7, 2003) and citing Thompson v. Lantz, No. 3:04-CV-2084 (AWT), 2009 WL 3157563, at *1 (D. Conn. Sept. 25, 2009) ("A subpart is discrete and therefore regarded as a separate interrogatory when it is logically or factually independent of the questions posed by the basic interrogatory.") (additional internal citation omitted).

## 1. **Interrogatory 1**

The Court agrees with defendants insofar as they argue that interrogatory 1 in plaintiff's first set of interrogatories contains more than one interrogatory.  Although all of the questions within interrogatory 1 are seeking information on "persons knowledgeable," plaintiffs are seeking persons knowledgeable about several distinct and "factually independent" subject matters.  Thompson, 2009 WL 3157563, at *1.

Interrogatory 1 is inquiring about persons knowledgably about 9 discrete subjects: (a) persons knowledgeable about defendants' compliance with the General Permit;(b) persons knowledgeable about defendants' SWPP and related documents; (c) persons knowledgeable about any inspections, sampling, and other monitoring stormwater and stormwater pollution controls performed by defendants; (d) persons knowledgeable about defendants' lease agreement with each tenant; (e) persons knowledgeable about salt handling and salt storage at the facility; (f) persons knowledgeable about communications with the community about stormwater, dust, and salt; (g) persons knowledgeable about defendants' corporate structure; (h) persons knowledgeable about defendants' financial condition; and (i) persons knowledgeable about defendants' history of noncompliance and economic benefit derived from noncompliance.  See Dkt. No. 98-4 at 4-5.  Each question can be answered fully and completely without answering the other questions.  See Bartnick, 2012 WL 1565057, at *2.  Thus, the Court finds that interrogatory 1 is made up of 9 separate interrogatories.[6]

## 2.  **Interrogatory 2**

The Court finds similarly with respect to interrogatory 2.  Although the inquiries within interrogatory 2 seek to learn of the custodian, location, and description of various documents, they are seeking this information regarding several plainly distinct issues. Interrogatory 2 is made up of 9 interrogatories: (a) the existence, custodian location, and general description of all documents relating to defendants' compliance with the General Permit; (b) the existence, custodian location, and general description of all

---

[6]  The Court concludes that although the questions the Court above-designated as 9(f) and 9(i) contain subparts, the various subparts of questions 9(f) and 9(i) above are sufficiently subsumed within and related to each other that they qualify as one question each.

documents relating to defendants' SWPPP and related documents; (c) the existence, custodian location, and general description of all documents relating to inspections, sampling, and other monitoring stormwater and stormwater pollution controls performed by defendants; (d) the existence, custodian location, and general description of all documents relating to defendants' lease agreement with each tenant; (e) the existence, custodian location, and general description of all documents relating to salt handling and salt storage at the facility; (f) the existence, custodian location, and general description of all documents relating to communications with the community about stormwater, dust, and salt; (g) the existence, custodian location, and general description of all documents relating to defendants' corporate structure; (h) the existence, custodian location, and general description of all documents relating to defendants' financial condition; and (i) the existence, custodian location, and general description of all documents relating to defendants' history of noncompliance and economic benefit derived from noncompliance.  See Dkt. No. 98-4 at 6.

### 3. **Interrogatory 3**

The Court concludes that interrogatory number 3 is one interrogatory.  Although interrogatory 3 contains subparts, these subparts all seek information relating to defendants' tenants and tenant relationships.  See Dkt. No. 98-4 at 7.  The subparts within interrogatory 3 are closely factually and logically related to each other.  See Thompson, 2009 WL 3157563, at *1.

### 4. **Interrogatory 4**

Interrogatory 4 is one interrogatory.  Although it is made of two subparts – information about defendants' corporate structure and the identity of "affiliated persons,"

dkt. no. 98-4 at 8 – are "logically related" to each other.  <u>Bartnick</u>, 2012 WL 1565057, at *2.

### 5. **Plaintiff's Second Set of Interrogatories**

For the reasons discussed, <u>supra</u>, plaintiff's first set of interrogatories totals 20 interrogatories.  Defendants are required to respond to all interrogatories in plaintiff's first set of interrogatories.  Plaintiff seeks to compel defendants to respond to interrogatories 5 and 6 from its second set of interrogatories.  The Court has reviewed interrogatory 5 and concludes that it contains one interrogatory as the information it seeks all relate to "retain[ing] volumes of Stormwater correlating to rainstorms of various sizes."  Dkt. No. 98-6 at 4.  It is clear on the face of interrogatory number 6 that it is one interrogatory.  See Dkt. No. 98-6 at 5.   Accordingly, as plaintiff's first set of interrogatories contained 20 interrogatories, and the second set of interrogatories, to the extent plaintiff provides, contains two interrogatories, the total interrogatories is 22, and within the limits of the Fed. R. Civ. P.   Accordingly, to the extent defendants refused to respond to these interrogatories based solely on its objection that the interrogatories violate Fed. R. Civ. P. 33(a)(1), the Court rejects that claim as the interrogatories do not total greater than 25 in number.

### B. **Requests Relating to Defendants' Alleged Violations and/or efforts to comply with the Clean Water Act[7]**

Plaintiff provides, "[a]side from two MSGP SWPPPs, Defendants have refused to produce any MSGP compliance documentation prior to 2018" or "any Construction Permit compliance documentation (including any Construction SWPPPs) prior to 2020."

---

[7]  <u>See</u> Dkt. No. 98-2 at 8 ¶39.

Dkt. Nos. 98-1 at 11; 98-2 at 10.   As plaintiffs note, defendants objected to such

discovery, contending that plaintiffs must first demonstrate the viability of their claims of

CWA violations prior to entitlement of discovery.  Plaintiff contends that limiting its

production to MSGP compliance since 2018 and Construction Permit compliance since

2020 shows defendants' inability or unwillingness "to understand the scope of

Riverkeeper's allegations" because Riverkeeper "also alleged violations of the

Construction Permit and New York State water quality standards."  Id. at 21.

    Plaintiff also seeks production of documents "related to the physical conditions at

the Industrial Park, structural stormwater controls, and controls of non-stormwater

liquids []such as sanitary and industrial wastewaters, floodwaters, and fluid materials

stored at the industrial park."  Dkt. No. 98-1.  Defendants objected to the request as

overbroad.  See Dkt. No. 98-3 at 8-12; Dkt. No. 98-5 at 5-9.  They also contended that

some of the documents requested did not exist (RFP 42).  See id.

    Next, plaintiff seeks records relating to salt management, which plaintiff argues is

relevant to defendants' history of noncompliance, as is required to be assessed under

the CWA.  See Dkt. No. 98-1 at 21.  Plaintiff further seeks "documents and

correspondence related to the applicable regulatory agencies."  Id. at 22.  Plaintiff

contends that it is unclear whether defendants are "withholding any documents on the

basis of their objections" to the requests relating to communications with regulatory

agencies because, although defendants produced some documents, there have been

gaps in the production.  See id. at 22-23.

    Defendants appear to object to providing all of this discovery based on its

argument that CWA citizen suits must be prospective in nature.  Thus, it argues that

past violations are not relevant until a plaintiff demonstrates the existence of violations at the time the action is commenced.  See Dkt. No. 106; Dkt. No. 106-12 at 1-2 ("Riverkeeper's failure to articulate an actual existing violation as of 9/1/20 based upon the information provided by CRC in discovery demonstrates that there is no need for prior information because prior information is only relevant to ongoing violations as of 9/1/20.  No violation as of 9/1/20 means prior operations are not relevant under the above CWA Citizen Suit standards."); see also dkt. no. 98-3.  As noted, defendants also objected, in their response to the requests for production, that the majority of these requests were overbroad.  See Dkt. No. 98-3 at 8-12; Dkt. No. 98-5 at 5-9.

Defendants do not have the authority to unilaterally determine that plaintiff has failed to demonstrate the existence of ongoing violations of the CWA as of September 1, 2020.  At the time of the filing of this decision, the Court has not determined, as a matter of law, that no such violations exist.  Further, defendants have produced no support for its argument that plaintiffs must establish the existence of ongoing violations to obtain such discovery or that in CWA citizen suits, a court must bifurcate discovery as to damages.  Regardless of this Court's ruling on the motion to dismiss, the Court agrees with plaintiff that defendant has not shown that bifurcation is required and this Court it has not bifurcated discovery.  Accordingly, to the extent defendants have objected to providing "MSGP compliance documentation prior to 2018" or "any Construction Permit compliance documentation (including any Construction SWPPPs) prior to 2020," their objection is without force.

Defendants also argue, generally, that plaintiff "ignores" information defendants have already produced, requests duplicative information, or information that could be

obtained from other sources.  Dkt. No. 106 at 28-29.  Defendants have failed to argue these claims with specificity; thus, they have not demonstrated that plaintiff's requests are not relevant and proportional to the claims or defenses in this action.

Plaintiff has demonstrated that such documents are relevant and proportional to its claims in this case.  Defendants' opposition that plaintiff must first prove the existence of current/ongoing violations at the time plaintiff filed the complaint before plaintiff can obtain discovery about earlier potential violations is rejected.  Plaintiff's motion to compel, insofar as it seeks information relating to defendants' stormwater controls at the industrial part, including: CWA compliance MSGP compliance documentation prior to 2018" or "any Construction Permit compliance documentation (including any Construction SWPPPs) prior to 2020"; documents relating to communications with government agencies as it relates to CWA compliance and alleged noncompliance; documents relating to "compliance with New York water quality standards, and documents pertaining to salt management at the Industrial Park,"  is granted.  Dkt. No. 98-1 at 11, 22; 98-2 at 10.  To the extent defendants may contend that no further documents exist, beyond what was already produced, defendants are to submit an affidavit/declaration from defense counsel and/or a person(s) with knowledge to explain the search made and/or documents produced and explain why no further relevant documents exist.  Although defendants state that they are required, under the MSGP and GP-Construction, to retain documents for only five years, defendants have not explicitly stated that they do not have access to the documents – only that they are not required to maintain them.  See, e.g., Dkt. No. 106 at 28.  To the extent defendants no longer have relevant documents due to the five-year retention policy, defendants are

to separately submit an affirmation signed by defendants' counsel and/or from a person(s) with knowledge, as to the search efforts made, when such documents were disposed of, and other relevant information relating to that fact.

## C. **Tenant Information**

As to the request for tenant information: tenant compliance documents, tenant leases, the identity and contact information of tenant operators and managers, the Court finds that plaintiffs have demonstrated that this information, generally, is relevant to plaintiff's claims.  Plaintiffs have alleged that (1) stormwater discharges from defendants' industrial activities, its tenants' industrial activities and from "common areas" of the industrial park commingle, and are discharged in ways that violate defendants' coverage under their General Permit; (2) defendants maintain control of their tenants' industrial activities, including any stormwater runoff.  See Am. Compl. (dkt. no. 135) ¶¶ 103-107.

Although defendants provide that they produced a list of tenants contained within their SWPPPs, they did not respond to plaintiff's claims: that it was unclear whether the list included all tenants who are operating in the industrial park and when the tenants began their operations, and that site visits revealed that defendants did not disclose all of their industrial activities in their MSGP and SWPPPs.  See Dkt. No. 98-2 at 9 ¶45, Dkt. No. 106.

The Court concludes that information regarding defendants' tenants, their industrial operations, the contractual obligation – if any – of tenants to implement certain stormwater controls, is relevant.  The Court, however, concludes that the full leases are

not proportionate and relevant to plaintiff's claims.  Accordingly, the tenant issue is decided as follows: defendant is to provide to plaintiff a complete least of all tenants operating at the industrial park during the relevant time periods, a list of the industry/industries the tenants are engaged in, when the tenants began their industrial activities, where in the industrial park the tenants are located, and portions of the leases, if any, that address any stormwater compliance requirements of the tenants.  If the tenants' leases contain any stormwater compliance requirements, defendants are to produce those portions of the leases, and may redact any information within those leases not relevant to the issues of stormwater compliance.  If there exist any documents outside of the leases that obligates tenants to engage in, or requests tenants to engage in, any degree of stormwater compliance, those documents are to be produced.  If the list defendants have already provided through the SWPPPs is a full list of all tenants, and all of their current activities, defendants are to submit an affirmation from defense counsel and/or a person or persons with knowledge that states that the list already provided is a full and complete list of all tenants and all of their current industrial activities.  However, even if defendants submit such affirmation, they still will be required to produce the remainder of the tenant-related discovery this Court has ordered to provide.  The Court finds that, with the provision of this information, plaintiff has failed to demonstrate the relevance of the names of the tenant operators and managers and their contact information.  Accordingly, plaintiff's motion to compel with respect to defendants' tenant information is granted in part and denied in part as enumerated above.

## D.  **Financial Information**

At issue in this motion, plaintiff requests:

> All Documents evidencing Your financial ability to pay penalties or compliance costs.  This includes both Documents relating to Your assets, liabilities, and net worth, and Documents relating to Your income.  This includes but is not limited to: Federal income tax returns, Form 1099s, and Schedule K-1s (Form 1065); annual revenue data; statements of annual gross income and annual net income, or annual profit and loss, with any schedules; balance sheets; Documents related to any decreased or cancelled services, financial consequences, or loss of revenue to You from the coronavirus pandemic; and Documents related to money or loans received through governmental aid or relief programs during the coronavirus pandemic, including but not limited to the Paycheck Protection Program.

Dkt. No. 98-3 at 13-14 (R.F.P. no. 22).

Defendants argue that plaintiff must "narrowly tailor" its request by "identifying specific violations, so CRC can inquire as to impacts related to each specific individual violation demonstrated [sic] Plaintiff.  Plaintiff is ignoring its burden that it's required to show the violation, for the Court to then consider economic information specifically tailored to each singular violation."  Dkt. No. 106 at 29.

As discussed above, the Court rejects defendants' arguments that plaintiff must first prove violations of the CWA before being entitled to discovery on defendants' finances for purposes of assessing potential civil penalties.  Plaintiff has presented evidence of a potential economic benefit defendants received relating to alleged CWA violations.  See Dkt. No. 98-10.  Plaintiff has contended that it has consulted with an economic consultant who advised that it required the financial information requested. See Dkt. No. 98-1 at 18; Dkt. No. 98-2 at 11 ¶¶51-55.  Plaintiff further provides a declaration from its expert witness Christina Falk which provides that the expert requires "invoices or estimates regarding the cost of BMPs implemented at the Industrial Part to

date" which she needs to offer her opinion with accuracy "regarding the cost of remedies implemented in the past[.]"  Dkt. No. 98-12 at 12; Dkt. No. 98-2 at 11 ¶¶51-55. However, plaintiff did not submit anything from the economist explaining his/her rationale for why the documents requested are required in order for them to offer testimony regarding a civil penalty under the Clean Water Act.

As stated above, the Court agrees that plaintiff is not required to first prove the existence of violations by defeating summary judgment or at trial in order to be entitled to discovery on penalties.  "It is well settled that a defendant's financial condition is relevant to the issue of civil penalties under the Clean Water Act."  Friends of Maha'ulepu, Inc. v. Hawai'i Dairy Farms, LLC, No. CV 15-00205 (LEK-KJM), 2016 WL 6917283, at *4 (D. Haw. Sept. 2, 2016) (granting discovery request for some evidence regarding the defendant's financial condition in considering economic penalties even while there was a pending motion to bifurcate) (citing 33 U.S.C. § 1319(d); see also California Sportfishing Prot. All. v. Chico Scrap Metal, Inc., No. 2:10-CV-1207-GEB-AC, 2014 WL 5093398, at *6 (E.D. Cal. Oct. 9, 2014), United States v. Smithfield Foods, Inc., 972 F. Supp. 338, 353 (E.D. Va. 1997), United States v. Municipal. Auth. Of Union Township, 929 F. Supp. 800, 805 (M.D. Pa. 1996)).

Defendants state – without clarification or further argument beyond contending that it is premature – that plaintiff's request for financial information is "broad."  Dkt. No. 106 at 29.  Such objection is "broad and nonspecific and fails to establish any discrete reason why the requests should be prohibited. . . . Defendants fail to meet their burden to clarify, explain or support such objection[] on this basis.  As such, Defendants fail to meet their burden to establish that these requests should be denied based on th[is]

ground[].” Inland Empire Waterkeeper, et al. v. Columbia Steel, Inc., et al., No. 82001062FLAADSX, 2021 WL 4295138, at *3 (C.D. Cal. May 6, 2021).

After reviewing plaintiff's request and arguments, the Court finds that plaintiff has failed to demonstrate that the full breadth of requested financial information is needed to assess civil penalties; however, it has demonstrated that some discovery regarding defendants' finances/financial condition is warranted for this purpose. Accordingly, as is within its discretion, the Court limits the request as such: defendants are to produce to plaintiff defendants' federal and state tax returns for the years 2015 to 2023[8]; documentation regarding money or loans received through the government aid or relief programs, including the Paycheck Protection Program; and documentation related to decreased or cancelled services or loss of revenue relating to the COVID-19 pandemic. See Friends of Maha'ulepu, Inc. v. Hawai'i Dairy Farms, 2016 WL 6917283, at *4 (limiting request of financial information relevant to assessing penalties under the CWA to federal and state tax returns).[9] Accordingly, plaintiff's motion to compel, as it relates to plaintiff's request relating to defendants' finances/ financial condition is granted in part and denied in part as detailed above.

## G. **Search Methodology**

---

[8]  The year in which the motion to compel was filed.

[9] The Court notes that defendants did not express concern in their memorandum of law about the sensitivity of the financial information. As the question is not before the Court, the Court makes no assessment whether a protective order is necessary or proper. However, to the extent defendants seek a protective order in connection with its financial information, it is noted that "[t]his protective order shall be mutually agreeable and be consistent with [Second] Circuit law, reflecting the strong presumption in favor of maintaining public access to judicial records that are not of a type traditionally kept secret for important policy reasons." Friends of Maha'ulepu, Inc. v. Hawai'i Dairy Farms, 2016 WL 6917283, at *4. Should plaintiff seek such protective order, parties are strongly directed take every effort mutually agree to such language.

Defendants contend that information regarding its search methodology is irrelevant because defendants have "engaged in good faith discovery," the information requested is irrelevant, and plaintiff has not suffered harm.  Dkt. No. 106 at 28. However, plaintiff has provided some evidence that there exist gaps in defendants' production.  See, e.g., OnActuate Consulting Inc. v. Aeon Nexus Corp., No. 1:20-CV-508 (LEK/CFH), 2022 WL 866418, at *9 (N.D.N.Y. Mar. 23, 2022) (citing Ford v. Rensselaer Polytechnic Inst., No. 1:20-CV-470 (DNH/CFH), 2022 WL 715779, at *17 (N.D.N.Y. Mar. 10, 2022) (noting that the "appropriate remedy" would have been for the nonmoving party to "provide greater information or detail about the searches it made through deposition or declaration," but that the potential gaps in the production could be "fairly remedied by having [the nonmoving party] supplement its response to [document demands], providing details about the steps it took to search its records for responsive documents.").  Defendants' generic objection, unsupported by details about the steps they took in responding to the requests for production, does not suffice to demonstrate that plaintiff's concerns and this Court's, and are without merit.  Accordingly, plaintiff's request for this Court to compel defendants to provide their search methodology is granted.

F. **Expenses in Making Motion**

Plaintiff's request for reasonable expenses incurred in making the motion to compel discovery, including attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(5)(A), is denied.  See Dkt. No. 98-1 at 27.  First, plaintiff fails to provide the necessary legal argument or evidence required to obtain an order for fees.  Second, the Court has

considered that plaintiff, along with defendants, has equally refused to engage in good-faith negotiations, despite the Court's efforts, to resolve their many discovery issues. The Court further determined that plaintiff's arguments that its first set of interrogatories contained just four interrogatories to be without force, as well as disingenuous.  Finally, plaintiff was not fully successful in its motion to compel, as they Court has denied its requests on certain, albeit limited,[10] grounds.

### IV.  Conclusion

Wherefore, for the reasons set forth above, it is hereby

**ORDERED**, that plaintiff's motion to compel (Dkt. No. 98) is **DENIED in part** insofar as it seeks: (1) unredacted copies of tenant leases and the names and contact information of the tenant operators/managers, and (2) costs and fees associated with this motion[11]; and (3) defendants' financial information beyond the federal and state tax returns for the years 2015 to 2023[12]; documentation regarding money or loans received through the government aid or relief programs, including the Paycheck Protection Program; and documentation related to decreased or cancelled services or loss of revenue relating to the COVID-19 pandemic; and the motion to compel is otherwise **GRANTED**, as discussed herein; and it is further

---

[10]  The Court observes that had defendants filed a memorandum of law that complied with the local rules, was fully and properly-supported with argument and relevant case law, and which met their burden of proof in response to plaintiff's demonstrated arguments relating to relevance and proportionality, it is possible that the discovery granted pursuant to this Motion to Compel would have been more limited.
[11]  As noted, the request for cost and fees is denied without prejudice.
[12]  The year in which the motion to compel was filed.

**ORDERED**, that defendants are to produce the discovery materials discussed within and/or the relevant affirmations, to plaintiff within fourteen (14) days of the filing date of this Memorandum-Decision & Order.

**IT IS SO ORDERED**.

Dated: March 26, 2024
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

34