**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RIVERKEEPER, INC.,<br>Plaintiff,<br><br>v.<br><br>COEYMANS RECYCLING CENTER LLC and COEYMANS RECYCLING CENTER II LLC,<br>Defendants. | Case No. 1:20-cv-1025<br>Case No. 1:24-cv-1333<br><br>**CONSENT DECREE** |

WHEREAS, Plaintiff Riverkeeper ("Riverkeeper") is a not-for-profit environmental organization organized under the laws of the State of New York with a principal place of business in Ossining, New York.

WHEREAS, Defendant Coeymans Recycling Center LLC is a limited liability corporation under the laws of the State of New York that participates in ownership and operation of the industrial park located in the Town of Coeymans, New York, with an address of 100 Coeymans Industrial Park Road, Coeymans, NY 12045 ("Coeymans Industrial Park" or "Park").

WHEREAS, Defendant Coeymans Recycling Center II LLC is a limited liability corporation under the laws of the State of New York that participates in ownership and operation of Coeymans Industrial Park. Defendants Coeymans Recycling Center LLC and Coeymans Recycling Center II LLC are hereinafter referred to, individually and collectively, as "CRC."

WHEREAS, CRC discharges stormwater from Coeymans Industrial Park into waters of the United States, including Coeymans Creek, a navigable water of the United States that in turn discharges to the Hudson River.

WHEREAS, from at least 2013 through at least 2020, CRC acquired the parcels now associated with Coeymans Industrial Park and performed construction activities to develop those parcels for industrial uses, including but not limited to grading, paving, road construction, and warehouse construction.

WHEREAS, CRC discharged and continues to discharge stormwater associated with construction activities at Coeymans Industrial Park pursuant to authorization under the General Permit for Stormwater Discharges from Construction Activity issued by the New York State Department of Environmental Conservation ("DEC"), Permit No. GP-0-25-001 (hereinafter, and as may be amended during any time relevant hereto, the "CGP"), ID No. NYR10W424.

WHEREAS, in the course of developing Coeymans Industrial Park, CRC filled certain wetlands and streams within the Park.

WHEREAS, at Coeymans Industrial Park, CRC discharges stormwater associated with industrial activities at and/or from the Park that can be considered for coverage under the Multi-Sector General Permit for the Discharge of Stormwater Associated with Industrial Activity issued by DEC, Permit No. GP-0-23-001 (hereinafter, and as may be amended during any time relevant hereto, the "MSGP").

WHEREAS, CRC has tenants who conduct a variety of industrial operations at Coeymans Industrial Park and some of whom discharge stormwater associated with those industrial activities to the Park's stormwater and pollution controls, which are constructed, owned, and operated by CRC.

WHEREAS, for many years, CRC has primarily operated Coeymans Industrial Park with coverage under a single authorization under the MSGP, Permit ID No. NYR00F372.

WHEREAS, one of CRC's current tenants has separate authorization under the MSGP, Permit ID No. NYR00H098.

WHEREAS, Riverkeeper sent a notice of intent to sue CRC on May 8, 2020, and filed a complaint on September 1, 2020, No. 1:20-cv-1025 (N.D.N.Y.), alleging violations of the Clean Water Act ("CWA") Sections 301 and 402, 33 U.S.C. §§ 1311(a), 1342(p), by, *inter alia*, allegedly discharging polluted stormwater in violation of the terms of the CGP and MSGP, seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs.

WHEREAS, Riverkeeper sent a notice of intent to sue CRC on August 28, 2024, and filed a complaint on October 31, 2024, No. 1:24-cv-1333 (N.D.N.Y.), alleging violations of the Clean Water Act Sections 301 and 404, 33 U.S.C. §§ 1311(a), 1344(a), by, *inter alia*, allegedly discharging fill material into wetlands and streams without a permit, seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs.

WHEREAS, the Parties have conducted a comprehensive review of Clean Water Act compliance at Coeymans Industrial Park, including several site inspections and review of documentation spanning several years; have agreed to stormwater and pollution control improvements, data collection and monitoring, and restoration work to be performed; and have agreed to phased implementation of such measures, as set forth below.

WHEREAS, the Parties have conducted a comprehensive review of administrative, operational, and management measures related to Clean Water Act compliance in light of the range of tenants and industrial operations occurring at Coeymans Industrial Park and jointly developed non-binding written standard operating procedures to aid CRC in developing and implementing such measures going forward (the "Company Guidance").

WHEREAS, to resolve disputes over streams and wetlands that allegedly were filled without required authorization from the United States Army Corps of Engineers ("Army Corps"), CRC is working with the Army Corps to develop a plan to restore certain wetlands and streams ("Restoration"), to obtain after-the-fact Clean Water Act § 404 permit coverage (or enter an

administrative consent order) for certain wetlands and streams that will not be restored ("Army Corps Permit"), to conduct or fund off-site wetland restoration projects as mitigation for certain wetlands and streams that will not be restored ("Mitigation"), and to preserve certain remaining wetlands and streams within Coeymans Industrial Park ("Preservation").

WHEREAS, without any concession or admission by CRC that it has violated the Clean Water Act, or any concession or admission by Riverkeeper that CRC's implementation of the measures listed below will assure compliance with the terms and conditions of the Clean Water Act or the Park's Clean Water Act permits, Riverkeeper and CRC (collectively, the "Parties" or, individually, "Party") believe that the measures contemplated herein are reasonably calculated to achieve and/or maintain compliance with the CGP and/or MSGP, the CWA, and New York law, and agree that it is in their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and the Parties would like to avoid prolonged and costly litigation.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by CRC of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

## I. DEFINED TERMS

The defined terms set forth in the foregoing recitals are hereby incorporated into the body of this Decree and are made a part hereof. Terms used in this Decree that are defined in the Clean Water Act, its implementing regulations, and the MSGP and CGP shall have the meanings assigned to them therein, unless otherwise provided in this Decree. In addition, the following terms used in this Decree have the meaning set forth below:

1. **Effective Date.** The date upon which this Decree is entered by the Court.

2. **Termination Date.** This Decree shall terminate either (a) upon the conclusion of all Restoration Monitoring Periods and the MSGP Monitoring Period or (b) upon completion of all affirmative duties under this Decree, whichever is later (the "Termination Date"). For purposes of this provision, "affirmative duties" includes submitting any Deliverable or Payment required by this Decree and completing any Environmental Benefit Project.

3. **Term of Decree**. The period that begins on the Effective Date and ends on the Termination Date.

4. **SWPPP.** A Stormwater Pollution Prevention Plan for Coeymans Industrial Park. A "MSGP SWPPP" refers to a Stormwater Pollution Prevention Plan developed and implemented under the terms of the MSGP. The current MSGP SWPPP is attached hereto as Exhibit A. A "CGP SWPPP" refers to a Stormwater Pollution Prevention Plan developed and implemented under the terms of the CGP. The current CGP SWPPP is attached hereto as Exhibit B. The SWPPPs may be revised or amended as set forth in

Sections IV, VII, and X. An "Operative" SWPPP is the applicable SWPPP then in effect, as revised or amended in accordance with the terms of this Decree.

5. **NOI.** A "Notice of Intent" for coverage under a general permit, which is the means by which permittees apply for coverage or modify existing coverage.

6. **Discharge.** A "Discharge," as used in this Decree, is a discharge from any area of Coeymans Industrial Park to waters of the State or waters the United States, as defined under applicable law.

7. **Relevant Correspondence.** Any and all written communications pertaining to Clean Water Act compliance relating to the activities specified in that Section, excluding minor communications such as coordinating schedules.

## II. JURISDICTION AND VENUE

8. **Jurisdiction.** Riverkeeper asserts, and CRC does not contest for purposes of this Consent Decree only, that jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction), that an actual, justiciable controversy exists between Riverkeeper and CRC, and that the requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a). CRC does not admit jurisdiction or waive any defense for purposes of any other action brought in any court or tribunal.

9. **Venue.** Riverkeeper asserts, and CRC does not contest for purposes of this Consent Decree only, that venue is properly vested in this judicial district pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action are alleged to have occurred at Coeymans Industrial Park and in the Coeymans Creek and Hudson River watersheds, navigable waters of the United States, which are located within this judicial district.

10. **Consent.** For purposes of this Decree, or any action to enforce this Decree, the Parties consent to the Court's jurisdiction over this Decree and venue in this judicial district.

## III. STATEMENT OF INTENT

11. The Parties agree that it is their intent that the Parties will communicate with one another concerning the agreed actions hereunder and, thereby, avoid disputes regarding Clean Water Act compliance at Coeymans Industrial Park. Accordingly, throughout the Term of Decree, the Parties shall maintain good-faith correspondence concerning Clean Water Act compliance at the Industrial Park. The Parties may make reasonable requests for additional supporting documentation and will make good-faith efforts to provide such documentation, or the explanation for the withholding or absence of such documentation, within fourteen (14) days.

## IV. CONSTRUCTION ACTIVITIES

12. **Compliance with the CGP SWPPP.** CRC will implement the CGP SWPPP, as may be amended as set forth in Section X, at the Park in compliance with the terms of the CGP. CRC will comply with the CGP and any permit modification or CGP reissuance applicable to the Park during the Term of Decree. A failure to adhere to the CGP SWPPP or the CGP is a violation of this Decree.

13. **Structural BMP Plan.** CRC will implement the structural modifications on the schedule attached hereto as Exhibit C ("Structural BMP Plan") in accordance with the designs set forth in the Operative CGP SWPPP. CRC may, upon notice to Riverkeeper, alter the sequencing and/or deadlines for individual modifications. Extension of the ultimate deadline for completion of all modifications (April 16, 2027) by up to thirty (30) days shall be subject to approval by Riverkeeper, and any further extension of such ultimate deadline shall incur a Stipulated Additional EBP, as set forth in Section XI, and require approval of the Court.

14. **Non-Structural BMPs.** CRC will develop and implement the specific measures identified by joint agreement in Exhibit D Paragraph 1. CRC will also maintain standard operating procedures for ongoing management of stormwater compliance in the Company Guidance, the terms of which are not intended to be independently enforceable under this Decree. CRC will provide Riverkeeper with a current version of the Company Guidance and give good faith consideration to recommendations that Riverkeeper may offer for such procedures.

15. **Schedule of Compliance with the MSGP – Riverkeeper's Covenant not to Sue.** While implementing the Structural BMP Plan, CRC will comply with the MSGP SWPPP attached hereto as Exhibit A. The MSGP requires permittees to prepare and fully implement an adequate SWPPP before they are eligible for coverage. In deference to practical considerations, the Parties have developed the Structural BMP Plan. After the modifications listed in the Structural BMP Plan have been implemented, CRC will comprehensively update and revise their MSGP SWPPP to include BMPs and control measures developed and implemented in accordance with this Section (the "Revised MSGP SWPPP"). Provided that the Structural BMP Plan is implemented on schedule, Riverkeeper hereby covenants not to prosecute CRC's alleged failure to fully implement an adequate MSGP SWPPP before completion of these improvements and covenants not to challenge CRC's status under the MSGP while the Structural BMP Plan is being implemented. After the Structural BMP Plan is implemented, the Parties will follow the MSGP SWPPP Review Process set forth in Section VII.

16. **Monthly Reporting.** CRC shall provide to Riverkeeper copies of all Qualified Inspector Reports (as defined in and to the extent required under the CGP) and Relevant Correspondence with any regulatory agency (including but not limited to Army Corps and DEC) for the preceding month on or before the third business day of each month through the Term of Decree, including photographs as required herein and any notices to the owner and Trained Contractor of Responsive Actions needed pursuant to Section X. Photographs sufficient to document current conditions shall be taken of all erosion and

sediment controls in active areas, temporary stabilization areas, and new final stabilization areas; all practices that require Responsive Actions before and after Responsive Actions have been implemented; and any photographs reasonably requested by Riverkeeper from review of the prior month's reports. CRC shall provide copies of any or all Qualified Inspector Reports made pursuant to the Structural BMP Plan prior to the Effective Date within five (5) business days of the Effective Date.

17. **EMR.** If the tenant EMR has not vacated the Park within six (6) months after the Effective Date, the Parties will meet and confer in good faith to discuss additional structural BMPs and control measures to be implemented to control stormwater discharges associated with EMR's industrial activities. BMPs may include, but are not necessarily limited to, additional perimeter protections to contain scrap metal.

## V. RESTORATION OF WETLANDS AND STREAMS

18. **Restoration Area.** Each Restoration Area (Wetland M, Stream 2, and Stream 8) is identified and defined in Exhibit E.

19. **Proposed Restoration Plan.** CRC will prepare a Proposed Restoration Plan for each Restoration Area, which at CRC's option may be in the form of one plan for all Restoration Areas or separate plans for different Restoration Areas. CRC shall provide Riverkeeper with each Proposed Restoration Plan for review and comment at least thirty (30) days prior to submitting each Proposed Restoration Plan for approval by Army Corps. Each Proposed Restoration Plan must detail the following:

    a. **Plantings.** Plantings of flora appropriate for the Restoration Area's hydrology and wildlife that will compete with invasive species ("Plantings");

    b. **Management Practices.** Ongoing management practices for the Restoration Area to assure the adequacy and success of Plantings through control of deer, common reed, and other pests and invasive species ("Management Practices");

    c. **Erosion Control Practices.** Proposed erosion control practices to minimize or eliminate discharges of sediment from construction activities within the Restoration Area. The erosion control practices may be incorporated by reference from the CGP SWPPP if the CGP SWPPP has been amended to cover Restoration work.

    d. **Wildlife Management.** Proposed wildlife management measures to minimize or eliminate harm to wildlife (including but not limited to flora, fauna, and fungi) from construction within the Restoration Area.

    e. **Restoration Monitoring Plan.** Ongoing monitoring plan to evaluate post-restoration hydrology and success of Plantings within that Restoration Area (the "Restoration Monitoring Plan").

    CRC shall implement the Restoration Plan(s) as developed by CRC with and approved by Army Corps.

20. **Restoration Implementation Report.** CRC shall provide Riverkeeper one or more Restoration Implementation Reports that (alone or together) cover all Restoration Areas, prepared by a wetland ecologist or other appropriate professional. The Restoration Implementation Report for a Restoration Area will be delivered after: (a) construction activities within the Restoration Area are complete, defined by achieving final stabilization under the CGP, and (b) Planting in the Restoration Area in accordance with the Restoration Plan is complete. Delivery of a Restoration Implementation Plan shall trigger a Restoration Monitoring Period for any Restoration Area(s) covered by such Restoration Implementation Plan. The Restoration Implementation Plan shall include the following:
    a. Summary of work performed;
    b. Photographs of Plantings;
    c. Photographs of Management Practices; and
    d. Any other elements required by the Restoration Monitoring Plan.

21. **Impossibility of Performance of Paragraph 20.** In the event that Paragraph 20 is impossible to perform for any reason by December 31, 2027, including but not limited to Army Corps not issuing an Army Corps Permit that requires Restoration or otherwise approving a Restoration Plan, CRC shall give notice to Riverkeeper. Pursuant to the Dispute Resolution Procedures set forth in Section XVI, the Parties shall have sixty (60) days following such notice to negotiate alternative terms for Restoration and/or Mitigation. If such negotiations lead to an agreement, the Parties shall submit the proposed agreement for review by the United States and for entry by the Court as a supplement to this Decree, consistent with Sections XIV and XV. If such negotiations do not result in agreement, then a Party may file a motion with the Court seeking resolution of the dispute as set forth in Section XVI.

## VI. RESTORATION MONITORING PERIOD

22. **Duration.** Delivery of a Restoration Implementation Report for a Restoration Area, as described in Section V, triggers a three (3) year Restoration Monitoring Period for that Restoration Area.

23. **Compliance with Restoration Monitoring Plan.** During the Restoration Monitoring Period, CRC will implement the Restoration Monitoring Plan in compliance with any Army Corps Permit. A failure to adhere to the Restoration Monitoring Plan or any Army Corps Permit during the Restoration Monitoring Period is a violation of this Decree.

24. **Restoration Inspections.** In addition to the Site Inspection terms set forth in Section X, CRC will grant access to the applicable Restoration Area(s) to Riverkeeper's wetland consultant up to four (4) times per year during the first year, two (2) times per year during the second year, and one (1) time during the third year of the Restoration Monitoring Period for that Restoration Area. Restoration Inspections shall be noticed and performed in accordance with the terms set forth in Section X.

25. **Restoration Monitoring and Maintenance**. CRC will monitor the condition of Restoration Areas during the Restoration Monitoring Period and shall promptly take responsive actions in accordance with Section X to address issues such as failed Plantings, species predation, or other conditions that are causing or contributing to a failure of successful performance of the Restoration Plan. Responsive actions may include or require amending the Restoration Monitoring Plan as set forth in Section X.

26. **Restoration Monitoring Reports.** CRC shall provide Riverkeeper an annual Restoration Monitoring Report on or before May 1 of each year a Restoration Monitoring Period is in effect and within one (1) month of the end of the last Restoration Monitoring Period unless the Parties mutually agree to an additional Site Inspection in lieu of the Report. The Restoration Monitoring Report shall include the following:
    a. Summary of work performed pursuant to the Restoration Monitoring Plan;
    b. Evaluation of current hydrology in each Restoration Area;
    c. Photographs of Plantings;
    d. Photographs of Management Practices; and
    e. Relevant Correspondence with any regulatory agency, including but not limited to Army Corps and DEC.

## VII. REVISED MSGP SWPPP REVIEW PERIOD

27. **Revised MSGP SWPPP Implementation Report.** Upon completion of the activities required under the Structural BMP Plan, CRC shall provide Riverkeeper (a) a Revised MSGP SWPPP Implementation Report, prepared by a qualified stormwater professional, discussing implementation of the Structural BMP Plan, and (b) the Revised MSGP SWPPP. The Revised MSGP SWPPP Implementation Report shall include:
    a. A summary of all structural BMPs implemented pursuant to the Structural BMP Plan;
    b. A description of all non-structural BMPs and control measures developed and implemented pursuant to the requirements of this Decree, including but not limited to those identified in Exhibit D Paragraph 1;
    c. Photographs of all BMPs added or improved since May 5, 2026;
    d. A certification that the professional has visited the Park in the month prior to submission of the Revised MSGP SWPPP Implementation Report; and
    e. A certification that, during the professional's last visit, all BMPs and control measures described in the Revised MSGP SWPPP were in good working order and all housekeeping measures appeared to be substantially taking place in compliance with the MSGP.

28. **Revised MSGP SWPPP Inspection.** Upon receipt of the Revised MSGP SWPPP Implementation Report and Revised MSGP SWPPP, the Parties shall meet and confer to identify a mutually-agreeable date for a joint inspection of Coeymans Industrial Park (the "Revised MSGP SWPPP Inspection"). The Revised MSGP SWPPP Inspection shall be performed in accordance with the terms set forth in Section X and shall trigger the Revised MSGP SWPPP Review Process.

29. **Revised MSGP SWPPP Review Process.** The Revised MSGP SWPPP Review Process shall be completed as follows:

   a. **Riverkeeper Comments.** Within four (4) weeks of the Revised MSGP SWPPP Inspection, Riverkeeper shall deliver comments, if any, on the Revised MSGP SWPPP and its implementation at Coeymans Industrial Park.

   b. **CRC Response.** Within four (4) weeks of receiving such comments, CRC shall either (i) implement changes consistent with each comment, or (ii) explain why any suggested changes were not implemented.

   c. **Riverkeeper Rebuttal.** Within two (2) weeks of receiving CRC's response, Riverkeeper shall either (i) accept CRC's change(s) and explanation(s) and initiate Sub-Paragraph 29.e.ii, or (ii) rebut, which rebuttal must specify the bases for Riverkeeper's position that the Revised MSGP SWPPP or CRC's implementation do not comply with the MSGP.

   d. **CRC Explanation.** Within two (2) weeks of receiving a rebuttal from Riverkeeper, CRC shall either (i) implement changes consistent with each comment, or (ii) provide an explanation, with supporting documentation as needed, of how the Revised MSGP SWPPP and CRC's implementation of same complies with the MSGP.

   e. **Dispute or NOI.** Within two (2) weeks of CRC's explanation, either:
      i. Riverkeeper will initiate the Dispute Resolution Procedure pursuant to Section XVI; or
      ii. Once the parties have agreed that the MSGP SWPPP Review Process is complete, CRC will file a revised NOI with DEC and provide a copy to Riverkeeper, which delivery shall trigger the MSGP Monitoring Period.

## VIII. MSGP MONITORING PERIOD

30. **Duration.** The MSGP Monitoring Period shall be triggered with the filing of the revised NOI as set forth in Section VII, Paragraph 29, and shall end three (3) years thereafter.

31. **Compliance with Operative MSGP SWPPP and the MSGP.** During the MSGP Monitoring Period, CRC will implement the Operative MSGP SWPPP in compliance with the terms of the MSGP. CRC will comply with the MSGP and any permit modification or MSGP reissuance applicable to the Park during the MSGP Monitoring Period. A failure to adhere to the Operative MSGP SWPPP or the MSGP during the MSGP Monitoring Period is a violation of this Decree.

## IX. MONITORING, INSPECTIONS, REPORTING, AND RECORDKEEPING

32. **Applicability.** CRC agrees to perform the stormwater monitoring, inspections, and reporting described in this Section from the Effective Date until the end of the MSGP Monitoring Period.

33. **Monitoring Points.** As the Structural BMP Plan is implemented, discharge locations will be eliminated. As discharge locations are eliminated, CRC shall provide notice and photographs of such elimination to Riverkeeper. Exhibit F identifies the expected location of Monitoring Points after implementation of the Structural BMP Plan. During the MSGP Monitoring Period, the Monitoring Points shall be those identified in the Operative MSGP SWPPP, as well as any locations identified in Exhibit D Paragraph 2 if still in effect per the terms contained therein.

34. **Monitoring Frequency.** For one (1) year beginning April 1, 2027, CRC will monitor stormwater discharges from at least one Qualifying Storm Event, as defined in the MSGP, that results in discharge in each quarter. During the remaining years of the MSGP Monitoring Period, quarterly sampling shall continue, however, any Monitoring Points at which there has been no exceedance during the prior four quarters of monitoring may revert to semi-annual benchmark sampling and quarterly visually monitoring as set forth in the MSGP. CRC may report the results in reporting required by the MSGP.

35. **Monitoring Parameters.** In addition to the parameters CRC is required to monitor under the Operative MSGP SWPPP, CRC shall analyze stormwater discharges from the Monitoring Points identified in Exhibit D Paragraph 2 for the parameters identified therein pursuant to the additional terms set forth therein.

36. **Monitoring Methodology.** CRC will monitor in a manner that is consistent with the requirements set forth in the MSGP for visual monitoring and laboratory analysis of benchmark monitoring cutoff concentrations or, if applicable, numeric effluent limitations as applicable under the Operative MSGP SWPPP and the sector-specific requirements of the MSGP. At the time of execution of this Decree, there are no numeric effluent limitations applicable to activities occurring at Coeymans Industrial Park.

37. **Photographs of Monitoring and Inspections.** CRC will take photographs to adequately document routine inspections of BMPs (required by Part IV.B of the MSGP) and visual monitoring (required by Part IV.E of the MSGP).

38. **Monitoring Reports.** CRC shall provide copies of laboratory reports and photographs of visual monitoring ("Monitoring Reports") as follows:

    a. From the Effective Date until the start of the MSGP Monitoring Period, CRC shall provide Monitoring Reports promptly, not to exceed five (5) business days after receipt by CRC from an outside lab, consultant, or vendor, or, in the case of materials generated by CRC itself, not to exceed three (3) business days after such materials are generated by CRC personnel.

    b. Throughout the MSGP Monitoring Period, CRC shall provide Monitoring Reports with the Annual Stormwater Report, Paragraph 39, unless required sooner under Section X.

39. **Annual Stormwater Report.** CRC shall provide Riverkeeper an Annual Stormwater Report on or before February 28 of each year, with a final Annual Stormwater Report due within one (1) month of the end of the MSGP Monitoring Period, unless the prior Annual Report was submitted within sixty (60) days of the end of the MSGP Monitoring Period. The Annual Stormwater Report shall include the following documentation from the preceding period, unless already provided:
    a. Summary of all work performed pursuant to the CGP and MSGP Parts IV and V;
    b. All stormwater monitoring data, including but not limited to laboratory analyses of stormwater samples and storm event data;
    c. All site inspection reports, including but not limited to the Annual Comprehensive Site Inspection Report required under the MSGP;
    d. All training, site inspection, and maintenance logs for structural stormwater controls and devices (such as filters);
    e. All photographs of inspections and monitoring;
    f. Relevant Correspondence with any regulatory agency, including but not limited to the United States Environmental Protection Agency ("EPA") and DEC, and including but not limited to submissions required by the CGP or the MSGP (such as Discharge Monitoring Reports and Annual Certification Reports); and
    g. Relevant Correspondence with tenants or neighbors, which may be redacted to protect sensitive business communications.

40. **Recordkeeping.** In addition to the reporting and recordkeeping requirements of the MSGP, CRC shall maintain written documentation describing all inspections and assessments required under the MSGP or this Decree for the Term of this Decree or at least five (5) years, whichever is less.

## X. RESPONSIVE ACTIONS

41. **Applicability.** CRC agrees to perform the measures described in this Section throughout the Term of Decree.

42. **Stormwater Controls.** CRC shall maintain in good working order all BMPs and control measures currently installed or to be installed pursuant to this Decree. CRC shall provide notice to Riverkeeper of any spill reportable under MSGP Part VI.3.b, non-stormwater discharge, or unauthorized stormwater discharge promptly upon discovery, not to exceed three (3) business days after discovery.

43. **Complaints and Notices.** CRC shall provide to Riverkeeper copies of any written government or citizen complaint, notice of violation, or notice of intent to sue, formal or informal, and associated Relevant Correspondence, related to any water-quality issue—including but not limited to compliance with the Clean Water Act or state or local statute, regulation, or ordinance concerning sanitary or stormwater discharges—promptly, not to exceed three (3) business days after receipt by CRC.

44. **Government Inspections.** CRC shall provide to Riverkeeper copies of reports or other documentation of inspection by any government entity related to any water-quality issue—including but not limited to compliance with the Clean Water Act or state or

local statute, regulation, or ordinance concerning sanitary or stormwater discharges—promptly, not to exceed three (3) business days after receipt by CRC from a government entity.

45. **Reporting Exceedances, Visual Indicators, and Violations.** If the analytical results of any sample for any parameter exceeds any benchmark monitoring cutoff concentration (or numeric effluent limitation, if applicable), or if visual monitoring indicates the presence of sediment or other pollution, or if CRC identifies a violation of the MSGP, CGP, or Army Corps Permit, CRC shall report the event to Riverkeeper and provide associated documentation (including any laboratory report or photographs) within ten (10) days of discovery.

46. **Notice of Noncompliance by Riverkeeper.** For purposes of this Decree, Riverkeeper may give Notice of Noncompliance with CWA § 404 or any non-paperwork requirement of the CGP or MSGP. Such Notice is subject to CRC's right to contest the alleged Noncompliance pursuant to Section XVI. Nothing in this Paragraph limits Riverkeeper's rights under any federal, state, or local law.

47. **Responsive Action Trigger.** The following conditions constitute Responsive Action Triggers:
    a. evidence of sediment pollution during Construction Activities;
    b. evidence of failed Plantings or predation in Restoration Areas;
    c. exceedance of benchmark monitoring cutoff concentrations (or numeric effluent limitations, if applicable) in discharges from any Monitoring Point;
    d. visible indications of sediment or other pollution in visual monitoring required under the MSGP or by this Decree;
    e. evidence that stormwater discharges are causing, have the reasonable potential to cause, or are contributing to a violation of New York water quality standards;
    f. any non-stormwater discharge;
    g. any violation of CWA § 404;
    h. any non-paperwork violation of the CGP or the MSGP; or
    i. a Notice of Noncompliance by Riverkeeper, subject to CRC's right to contest.

48. **Responsive Actions.** Should any Responsive Action Trigger occur, CRC will take Responsive Actions appropriate to correct the conditions giving rise to the Responsive Action Trigger, including any corrective actions required under the CGP, MSGP, Operative SWPPPs, Army Corps Permit, or applicable Restoration Plan or Restoration Monitoring Plan. In the instance of stormwater issues related to CWA § 402, Responsive Actions may include improving BMPs and control measures (including re-evaluating structural and non-structural stormwater control measures and pollution prevention practices) and considering additional BMPs and control measures aimed at curing the Responsive Action Trigger, minimizing pollution discharges, and/or preventing recurrence. In the instance of failed Plantings or predation, Responsive Actions may include re-Planting, improving Management Practices or the Restoration Monitoring Plan, re-evaluating the current hydrology of the Restoration Area to determine whether planned conditions were achieved, or improvements to BMPs under

any Operative SWPPP. In the instance of any violation of CWA § 404, CRC shall, as soon as possible, remove the fill material at issue and propose Restoration measures consistent with Section V.

49. **Responsive Action Memo.** Within thirty (30) days of discovering a Responsive Action Trigger, CRC shall provide Riverkeeper a Responsive Action Memo containing the following information:
    a. Identification and description of the Responsive Action Trigger;
    b. Explanation of the possible cause(s) and/or source(s) of the conditions giving rise to the Responsive Action Trigger;
    c. Proposed Responsive Actions or, if already implemented, a description of Responsive Actions with supporting photographs and/or documentation; and
    d. The dates that Responsive Actions will be or were taken.

50. **Completing Responsive Actions.** CRC shall complete Responsive Action(s) within the timeframes set forth in the CGP, MSGP, or Army Corps Permit for corrective actions, as applicable to the Responsive Action Trigger, not to exceed twelve (12) weeks unless Riverkeeper concurs to an extended timeline in writing, which concurrence shall not be unreasonably withheld. If CRC seeks agency authorization for an extension to the timeframes set forth in the applicable permit, CRC shall seek Riverkeeper's concurrence to the longer proposed schedule at least three (3) business days prior to submitting such a request. Any concurrence or failure to object by Riverkeeper shall not be deemed to be an admission of the adequacy of Responsive Actions. Any such concurrence or failure to object may be a basis for CRC to contend that any later challenge by Riverkeeper is untimely or inappropriate.

51. **SWPPP, NOI, and Restoration Monitoring Plan Amendments.** If CRC amends an Operative SWPPP, NOI, Restoration Plan, or Restoration Monitoring Plan for any reason, CRC shall provide written notice to Riverkeeper within fourteen (14) days after the amendment and shall provide Riverkeeper with all documents related to such amendment (including a copy of the amended document).

    a. For amendments to the Operative MSGP SWPPP that involve changes to industrial operations, such notice shall also include, to the extent applicable, one of the following:
        i. Identification of sector-specific BMPs and control measures to be implemented and person(s) responsible for implementation; or
        ii. Copy of tenant's NOI for separate MSGP coverage and identification of person(s) responsible for inspection and maintenance of structural BMPs within the tenant's drainage area.

    b. BMPs that have been or will be installed pursuant to the CGP SWPPP attached hereto as Exhibit B or the Structural BMP Plan attached hereto as Exhibit C may not be removed without Riverkeeper's approval, which approval shall not be unreasonably withheld.

c. BMPs identified in Exhibit D Paragraph 1 may not be removed, reduced, or eliminated without Riverkeeper's approval, which approval shall not be unreasonably withheld.

52. **Site Inspections.** CRC agrees to grant site access to representatives of Riverkeeper, including consultants acting on its behalf, to inspect Coeymans Industrial Park for compliance with the Clean Water Act, including but not limited to compliance with the MSGP, CGP, any Army Corps Permit, and this Decree as follows:

a. **Frequency.** In addition to the Restoration Inspections described in Section VI and the Revised MSGP SWPPP Inspection described in Section VII, Riverkeeper and/or Riverkeeper's representatives may inspect the Park up to one (1) time per year during the Term of Decree. Should Riverkeeper provide Notice of Noncompliance, CRC will provide the opportunity for one (1) additional Site Inspection, subject, however, to CRC's right to contest the Notice of Noncompliance and, therefore, Riverkeeper's right to such additional inspection.

b. **Notice.** Riverkeeper shall provide CRC with as much notice as possible, not less than two (2) business days' notice prior to a wet weather Site Inspection or three (3) business days' notice prior to a dry weather Site Inspection.

c. **Access.** Site Inspections shall occur during normal business hours. During a Site Inspection, CRC shall allow Riverkeeper and/or its representatives access to all exterior parts of the Park, including Restoration Areas, and the Park's Operative SWPPPs, provided however that Site Inspections by Riverkeeper's wetland consultant pursuant to Section VI shall include only areas relevant to the Restoration activities. During Site Inspections, CRC shall, upon request, promptly make available copies of stormwater monitoring and inspection records and nonprivileged reports and data related to stormwater and Restoration at the Park that are required to be kept on-site by the CGP, MSGP, or Army Corps Permit.

d. **Collection.** Riverkeeper may collect samples of stormwater, surface waters, sediment, and soils. Soil samples may only be collected with hand tools for the purpose of evaluating stabilized stockpiles, current hydrological conditions, or the success of Restoration. Riverkeeper may also take photographs and/or video recording of relevant areas. If Riverkeeper's representatives collect samples, photographs, or video recording, Riverkeeper shall provide CRC with copies within fourteen (14) days of receipt.

## XI. ENVIRONMENTALLY BENEFICIAL PROJECTS

53. **Environmentally Beneficial Projects.** CRC shall complete or fund a project or projects relating to the reduction, mitigation, and/or remediation of the effects of stormwater pollution or environmental restoration of the Hudson River watershed ("Environmentally Beneficial Project or "EBP") of one million one hundred thousand

dollars ($1,100,000) ("Total EBP Value") within six (6) years of the Effective Date, as follows:

a. **Mitigation.** CRC shall provide Mitigation of a value of at least five hundred thousand dollars ($500,000), either through the purchase of wetland mitigation credits purchased through an Army Corps-approved mitigation bank or on Mitigation projects selected through the In-Kind EBP procedure set forth in Exhibit G. Any wetland mitigation credits or Mitigation projects required by the Army Corps Permit shall count towards this value.

b. **Remaining EBP Value.** The Remaining EBP Value shall be allocated to EBP work performed by CRC ("In-Kind EBP") through the process set forth in Exhibit G. The Remaining EBP Value at any given time is the Total EBP Value minus the sum of the following: (i) Mitigation pursuant to Paragraph 53.a, (ii) any Contracted EBP Value (as defined in Exhibit G), and (iii) payments to the Alternative EBP Recipient under Paragraph 53.c.

c. **Alternative EBP Recipient.** At any time, CRC may elect to pay all or part of the Remaining EBP Value to Onesquethaw-Coeymans Watershed Council or Trout Unlimited for use on EBPs (the "Alternative EBP Recipient"). On six (6) years after the Effective Date, CRC shall pay any Remaining EBP Value to the Alternative EBP Recipient.

54. **Stipulated Additional EBP.** CRC shall make payment to support additional EBPs under the following conditions:

a. **Late Deliverables.** A "Deliverable" is any plan, data, report, map, log, photograph, or other information or documentation that CRC is required to submit to Riverkeeper for review under this Decree. Should CRC fail to timely submit any such Deliverable, CRC shall make payment of one-hundred dollars ($100) for each day of such failure from the date of the missed deadline. CRC shall have a ten (10) business day period to cure any untimely Deliverable from the date Riverkeeper gives notice of such untimely Deliverable. If CRC submits the Deliverable within the cure period, no EBP is owed.

b. **Late Implementation.** Should CRC fail to timely complete implementation of the Structural BMP Plan as set forth at Exhibit C and Section IV, CRC shall make payment of one-hundred dollars ($100) per day until the Structural BMP Plan is fully implemented.

c. **Payment to EBP Recipient.** Stipulated Additional EBP payments that have come due under this Paragraph and that CRC has not yet paid as of June 30 of a given year shall be aggregated and paid by CRC in a lump sum by June 30 of each year to the Alternative EBP Recipient for use on projects relating to the reduction, mitigation, and/or remediation of the effects of stormwater pollution or environmental restoration of, or other benefit to, the Coeymans Creek or Hudson River watersheds. CRC shall concurrently notify Riverkeeper each time a payment is made and provide a copy of each check and the tracking number. None of these payments shall be disbursed to Riverkeeper.

55. **Publicity.** Any public statement made by CRC in any press release, in any oral or written material promoting CRC's environmental or charitable practices or record, or in CRC's Annual Reports that refers to CRC's Environmental Benefit Project(s) or Payment(s) under this Decree shall include the following language: "[Payment to this organization] / [Performance of this project] was made pursuant to the settlement of a Clean Water Act enforcement suit brought by Riverkeeper."

## XII. EXPENSES

56. **Litigation Fees and Costs.** CRC shall pay a sum of one million five hundred and fifty thousand dollars ($1,550,000) as full and complete satisfaction of Riverkeeper's claims for attorneys' fees and litigation costs incurred through March 31, 2026, including investigative and expert costs, as follows:

    a. **First Payment.** CRC shall make the first payment of one hundred and fifty thousand dollars ($150,000) within five (5) business days after the Effective Date.

    b. **Second Payment.** CRC shall make a second payment of one hundred and fifty thousand dollars ($150,000) within thirty (30) days after the Effective Date.

    c. **Remaining Payments.** CRC shall make ten monthly payments of one hundred and twenty-five thousand dollars ($125,000) starting sixty (60) days after the Effective Date.

    d. **Acceleration.** In the event that any payment owed by CRC under this Paragraph is not paid on or before the due date, CRC shall be deemed in default of their obligations under this Decree and all of the outstanding payment obligations under this Paragraph shall be accelerated such that they shall be immediately due and owing notwithstanding any payment schedule set forth in this Decree. In addition to a continued requirement to make the payment, CRC shall pay to Super Law Group 10% APR simple interest per day for every day that the payment is late. CRC shall have fourteen (14) days to cure a failure to make a timely payment. If CRC cures the failure and payment is received by Super Law Group during the cure period, the interest in this Paragraph shall not be added and the future payment obligations shall not be accelerated. If CRC fails to cure during the cure period, interest shall be calculated from the original payment due date and all future payments shall be accelerated, and Riverkeeper may move the Court to issue an order compelling CRC to pay the entire amount owed, including interest, and to enter judgment against CRC in that amount.

57. **Compliance Fees and Costs.** Riverkeeper will incur costs to monitor CRC's compliance with this Decree, including but not limited to costs incurred by Riverkeeper or their counsel or consultants after March 31, 2026 to negotiate and draft this Consent Decree, to conduct Site Inspections, collect or review Deliverables, participate in the Revised MSGP SWPPP Review Process, review Responsive Actions, discuss any changes to compliance requirements or the Operative SWPPPs or Restoration Plans, and similar activities. To help defray these costs, CRC agrees to reimburse Riverkeeper for its reasonable fees and costs (the "Compliance Fees and Costs"), consistent with fee

recovery standards and practices of this Court and the Clean Water Act, subject to the following.

a. **Annual Cap.** CRC shall reimburse Riverkeeper for reasonable fees and costs of up to twenty thousand dollars ($20,000) for each year starting April 1, 2026, plus (i) up to ten thousand dollars ($10,000) of reasonable fees and costs incurred in relation to Riverkeeper's review of the Revised MSGP Implementation Report and participation in the Revised MSGP SWPPP Review Process and (ii) up to fifteen thousand dollars ($15,000) of reasonable fees and costs incurred in relation to Riverkeeper's review of all (the sum of, not each) of the Restoration Implementation Report(s). If Riverkeeper gives Notice of Noncompliance, reimbursement, if any, beyond the annual cap shall be subject to the Dispute Resolution Procedures set forth in Section XVI.

b. **Compliance Oversight Fund.** Payments for Compliance Fees and Costs shall be maintained in a Compliance Oversight Fund held by Super Law Group.

    i. **Initial Payment.** CRC shall make an Initial Payment of seventy-five thousand dollars ($75,000) to the Compliance Oversight Fund within thirty (30) days of the Effective Date.

    ii. **Invoices.** Riverkeeper shall present to CRC an invoice for any Compliance Fees and Costs for which it seeks reimbursement from the Compliance Oversight Fund. CRC shall have fourteen (14) days from receipt of such invoice to object to the sum claimed. If CRC does not object, Super Law Group shall draw down the trust account to pay the proposed sum. If CRC objects, the Parties shall follow the Dispute Resolution Procedures set forth in Section XVI. No funds shall be withdrawn so long as the sum claimed remains in dispute

    iii. **Replenishment Payments.** Riverkeeper shall give notice if the Compliance Oversight Fund is withdrawn to five thousand dollars ($5,000) or less. Upon such notice, CRC shall have thirty (30) days to deliver a Replenishment Payment of twenty thousand dollars ($20,000) to replenish the Compliance Oversight Fund.

    iv. **Refund.** Any funds remaining in the Compliance Oversight Fund on the Termination Date shall be refunded to CRC.

58. **Method of Payment.** Payments made to Super Law Group shall be payable to "Super Law Group, LLC Attorney Trust - IOLA". Such payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Riverkeeper. Payments may be made by check or electronic transfer. A check shall be sent via certified mail or similar service with tracking.

## XIII. EFFECT OF DECREE

59. **Riverkeeper's Release of Liability.** Upon Court approval and entry of this Consent Decree, Riverkeeper covenants not to sue and releases CRC (including their

representatives, affiliates, assigns, agents, owners, shareholders, partners, employees, contractors, officers, attorneys, and consultants) from any and all claims, causes of action, or liability under CWA Section 505, 33 U.S.C. § 1365, (a) relating to or resulting from allegations and claims set forth in the notice letters, and (b) for any past violations of Clean Water Act provisions at Coeymans Industrial Park that were alleged or that could have been alleged in the complaints. This Paragraph does not constitute a waiver or release of any claims relating to the enforcement of this Decree.

60. **CRC's Releases of Liability.** CRC releases and discharges Riverkeeper (including its representatives, assigns, agents, employees, officers, attorneys, and consultants, including those who have held positions in the past) from any and all claims, liability, demands, penalties, costs, and causes of action of any nature arising prior to or as of the Effective Date that concern or are connected with this action.

61. **Compliance with Law.** The requirements of this Consent Decree do not relieve CRC of any other obligations required by any federal, state, or local law, regulation, permit, or other requirement. By consenting to this Decree, Riverkeeper does not warrant or aver in any manner that CRC's compliance with this Decree constitutes compliance with all federal, state, or local laws that may apply.

62. **Force Majeure.** If a Party cannot implement an action required by this Decree within the required deadline due to circumstances beyond a Party's control, despite the timely good faith efforts of the Party, the Party who is unable to perform shall notify the others in writing promptly, not to exceed three (3) business days, of the date that the inability to perform becomes apparent and shall describe the reason for the non-performance. A Force Majeure shall not include normal (that is, unexceptional) inclement weather, nor economic hardship, inability to pay, or employee negligence. The Parties agree to meet and confer in good faith concerning the non-performance and, where the Parties concur that such action could not be timely performed due to the Force Majeure event, despite the timely good faith efforts of the Party, new performance deadlines shall be established. If the Parties cannot timely agree upon such terms, the Parties shall follow the Dispute Resolution Procedure outlined in Section XVI. The Party claiming a Force Majeure shall have the burden of proving that an event is a defense to a claim of noncompliance with this Decree.

## XIV. FEDERAL REVIEW OF DECREE

63. **Review by United States.** The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this proposed Consent Decree cannot be ordered by the Court until forty-five (45) days after the receipt of a copy of the proposed Decree by the Attorney General of the United States and the Administrator of the EPA. Therefore, upon signing of the proposed Consent Decree by the Parties, Riverkeeper shall serve copies of this proposed Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

64. **Entry of Order.** After expiration of the forty-five (45) day review period provided by 33 U.S.C. § 1365(c)(3), Riverkeeper shall move, on consent of CRC, for the Court to

enter the proposed Consent Decree. If for any reason the Court should decline to approve this proposal in the form presented, including but not limited to declining to retain jurisdiction through the Term of Decree, then this agreement and consent to such order shall be null and void. The Parties agree to continue negotiations in good faith to cure any objection or concern to entry of this proposed Decree or to retention of jurisdiction raised by the Court.

## XV. MODIFICATION AND ENFORCEMENT OF DECREE

65. **Modification in Writing.** This Decree may be modified only upon written consent of the Parties and the approval of the Court, provided however that the Parties may make minor modifications upon mutual agreement, in writing, to the deadlines imposed under this Consent Decree.

66. **Continuing Jurisdiction of the Court.** This Court shall retain and shall have jurisdiction over the Parties to this Decree for the resolution of any disputes that may arise under this Decree. This Court shall also allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance, and/or resolve any dispute regarding the terms or conditions of this Decree.

## XVI. DISPUTE RESOLUTION PROCEDURE

67. **Meet and Confer Period.** Any disputes with respect to any of the provisions of this Consent Decree shall be, in the first instance, the subject of a sixty (60) day informal Meet and Confer Period between the Parties to attempt to resolve such dispute. The Meet and Confer Period shall be initiated on the date one Party provides written notice specifically stating that there is a dispute and referencing this Section. Such notice shall clearly state the matter in dispute and shall reference the appropriate Section(s) and/or Paragraph(s) of this Decree. The Parties may agree, in writing, to close or extend the sixty-day Meet and Confer Period.

68. **Motion.** If a dispute between the Parties cannot be resolved in the Meet and Confer Period, a Party may file a motion with the Court seeking resolution of the dispute. The motion shall set forth the nature of the dispute and a proposal for its resolution. The other Party shall have thirty (30) days to respond to the motion and propose an alternate resolution.

69. **Notice.** The moving Party shall provide the other Party with three (3) business days' written notice prior to initiating court proceedings to enforce this Decree.

70. **Fee Awards.** In resolving any dispute arising from this Decree, the Court may award attorneys' fees and costs consistent with the Clean Water Act and/or the Federal Rules of Civil Procedure.

71. **Remedies.** The Parties acknowledge and agree that specific performance, declaratory relief, and injunctive relief are the only appropriate remedies for any breach of this

Agreement, and under no circumstances shall monetary damages be allowed for any breach of this Agreement. EBPs, awards of fees and costs, and/or penalties payable to the U.S. Treasury are not damages.

## XVII. MISCELLANEOUS PROVISIONS

72. **Entire Agreement.** This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the Parties.

73. **Notices.** Any notice, demand, copies of documents, or other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given: (a) if delivered by courier, when actually received or refused by the addressee; (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever occurs first; or (c) if e-mailed, when acknowledged by the addressee. Each Party shall promptly notify the other Party of any change in this contact information, including but not limited to a change in representation.

| Notice for Riverkeeper shall be sent to: | Notice for CRC shall be sent to: |
| --- | --- |
| Julia Muench<br>julia@superlawgroup.com<br>and<br>Andie Altchiler<br>andie@superlawgroup.com | Josef Malik<br>General Counsel<br>Carver Companies<br>26 Corporate Cir.<br>Albany, NY 1220<br>jmalik@carvercompanies.com |
| Super Law Group, LLC<br>250 Broadway, 24th Floor<br>New York, NY 10007 | R. Todd Silliman<br>Eversheds Sutherland (US) LLP<br>600 Peachtree Street NE, Suite 5200<br>Atlanta, GA 30308<br>toddsilliman@eversheds-sutherland.com |
| Notices sent to the individuals listed above at the address listed above shall be deemed as notice to Riverkeeper. | Notices sent to the individuals listed above at the addresses listed above shall be deemed as notice to CRC. |

74. **Joint and Several Liability.** Defendants Coeymans Recycling Center LLC and Coeymans Recycling Center II LLC are jointly and severally liable for all payments and obligations required under this Decree.

75. **Successors and Assigns.** This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

76. **Transfer of Ownership.** No lease or other change in ownership or control of any portion of Coeymans Industrial Park shall relieve CRC of its obligation to implement the terms of this Decree unless (a) at least thirty (30) days prior to any transfer, CRC and the proposed transferee jointly provide notice of the proposed transfer to Riverkeeper, which notice shall include a detailed identification of the relevant area(s) of the Park, the associated structural BMPs over which the transferee is assuming responsibility, and the elements of the Decree over which the transferee is assuming responsibility; (b) the Parties move the Court to add a supplement to this Decree incorporating such transfer and adding the transferee as a Party; and (c) the Court enters such supplement.

77. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that Party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

78. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

79. **Authorization.** Each person signing this Decree certifies that they are fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party on whose behalf it is indicated that the person is signing.

80. **Counterparts.** This Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

81. **Findings.** The Parties attest and the Court, by entering this Consent Decree, finds that this agreement has been negotiated by the Parties in good faith; that settlement of this matter is in the public interest and in accordance with the Clean Water Act; and entry of this Consent Decree is fair and reasonable.

## XVIII. EXHIBITS

82. The following Exhibits are attached to this Decree and made a part hereof:

a. Exhibit A - Current MSGP SWPPP
b. Exhibit B - Current CGP SWPPP
c. Exhibit C - Structural BMP Plan
d. Exhibit D - Non-structural BMPs and Control Measures
e. Exhibit E - Restoration Areas
f. Exhibit F - Monitoring Points
g. Exhibit G - In-Kind EBP Procedure

Dated: 5/26/2026

Coeymans Industrial Park LLC

Signed by:
Josef Malik
9B0C9B44A2FE4C2...

By: Josef Malik
Title: General Counsel, Carver Companies

Dated: 5/26/2026

Coeymans Industrial Park II LLC

Signed by:
Josef Malik
9B0C9B44A2FE4C2...

By: Josef Malik
Title: General Counsel, Carver Companies

Dated: ______________________

Riverkeeper, Inc.

______________________________

By:
Title:

ENTERED and DATED this 13th day of August, 2026

Elizabeth C. Coombe
U.S. District Judge

Dated: ______________________ Coeymans Industrial Park LLC

______________________________
By:
Title:

Dated: ______________________ Coeymans Industrial Park II LLC

______________________________
By:
Title:

Dated: May 26, 2026 Riverkeeper, Inc.

______________________________
By: Larissa Liebmann
Title: Staff Attorney

ENTERED and DATED this 13th day of August, 2026

______________________________
Elizabeth C. Coombe
U.S. District Judge